**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| C.S.B. COMMODITIES, INC., a New York corporation, | **CASE NO. 08 CV 1548** |
| Plaintiff, | Judge Robert M. Dow, Jr. |
| v. | Magistrate Judge Morton Denlow |
| URBAN TREND (HK) LTD., a foreign corporation, and ROBERT KUSHNER, individually, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROBERT KUSHNER'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)**

Defendant Robert Kushner ("Kushner"), individually, moves this Court for an order dismissing the Complaint of Plaintiff C.S.B. Commodities, Inc. ("CSB") as against him individually for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## I.   INTRODUCTION

CSB sued Kushner and Urban Trend (HK) Ltd. ("Urban Trend") in retaliation for Urban Trend's refusal to make CSB its exclusive distributor in the United States of the very same product that it now accuses of infringing its unregistered trade dress. CSB brings three unfair competition counts against Kushner, including claims under (1) the Lanham Act, 15 U.S.C. § 1125(a) (false advertising/false designation of origin); (2) Illinois common law; and (3) the Illinois Deceptive Trade Practices Act ("IDTPA"), 815 ILCS § 510 *et. seq.* Each claim is based

---

[1] In a separate concurrently filed motion, Defendants Kushner and Urban Trend (HK) Ltd. move to dismiss Plaintiff's Complaint for lack of personal jurisdiction and/or improper venue.

on the same alleged infringement of CSB's unregistered trade dress in a knife holder shaped like a human figure.   An examination within the four corners of CSB's Complaint reveals that it is devoid of any factual allegations supporting individual liability against Kushner and, therefore, is defective and those claims must be dismissed.

Specifically, the Complaint is defective under Rule 12(b)(6) because it attempts to impose personal liability on Kushner based solely on the alleged infringing activity of his employer Urban Trend.  Such allegations fall far short of the "special showing" required in the Seventh Circuit to plead individual liability for the acts of a corporation.  Because CSB failed to plead that Kushner willfully, knowingly and personally participated (beyond the scope of his status and duties) in the alleged infringing activities or that he otherwise used Urban Trend as an irresponsible instrument to carry out his own deliberate infringement, CSB's Complaint against Kushner should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    STATEMENT OF FACTS

CSB's Complaint contains all of three allegations directed to Kushner, including:

- "Upon information and belief, defendant Robert Kushner ("Kushner") is an individual of unknown citizenship, believed to be residing in Hong Kong" (Plaintiff's Complaint ("Complaint") attached hereto as Exhibit 1, at ¶ 3);

- "Upon information and belief, Kushner is the individual at Urban Trend with the responsibility for selecting the products that Urban Trend manufactures and/or markets, and also stands to benefit personally from the decisions to manufacture and/or market any particular product" (Complaint, Ex. 1 at ¶ 14); and

- "Upon information and belief, Kushner was the individual at Urban Trend who made the decision to go forward with the manufacture and/or marketing of the Throwzini knife holder and thereby trade on the goodwill associated with the EX/VOODOO knife holder and the Human Figure Design"  (Complaint, Ex. 1 at ¶ 19).

Importantly, the Complaint identifies the corporate defendant, Urban Trend, and not Kushner, as the party that "is in the business of selling novelty items" (Complaint, Ex. 1 at ¶ 13),

that "manufactures and/or markets [products]" (Complaint, Ex. 1 at ¶ 14), and that "…began marketing and using in interstate commerce a knife holder called the 'Throwzini'" (Complaint, Ex. 1 at ¶ 15).

## III.    ARGUMENT

### A.    Legal Standard for Rule 12(b)(6) Motion to Dismiss.

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits.  *See Gibson v. City of* Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests whether the claimant has properly stated a claim for which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint must allege the operative facts on which each claim is based in order to withstand a motion to dismiss.  *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998).  Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), the complaint "must contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007).  While all well-pleaded factual allegations are taken as true, a court is not required to accept conclusory allegations.  *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 792 (7th Cir. 1996); *see also Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985) ("[plaintiff] must set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery").

### B.    Plaintiff Failed to State a Claim Against Kushner in His Individual Capacity.

A corporation is a legal entity that exists separate and apart from its shareholders, directors, and officers, who are not generally liable for the corporation's debts and obligations. *See Hystro Products, Inc. v. MNP Corporation*, 18 F.3d 1384, 1388-90 (7th Cir. 1994). Therefore, courts in the Seventh Circuit require that plaintiff plead facts against a corporate

3

shareholder, director, or officer ("officer") satisfying a "special showing" that the officer acted willfully and knowingly, and personally participated in the infringing activities or otherwise used an irresponsible corporation to carry out his own deliberate infringement. *See The Drink Group, Inc. v. Gulfstream Comm.*, 7 F.Supp.2d 1009, 1010 (N.D. Ill. 2002) (plaintiff's conclusory statements regarding individual officers' roles as "principal" and "driving force" behind trademark infringements, standing alone, "run afoul of Plaintiff's obligation to adumbrate a claim with some supporting facts." Plaintiff must allege that defendants were motivated by some improper personal purpose or acting outside the scope of their duties to meet the "special showing" standard) (*citing Dangler v. Imperial Mach. Co.*, 11 F.2d 945, 947 (7th Cir. 1926).[2]

*Dangler* is the seminal case on corporate officer liability in the Seventh Circuit, holding that a plaintiff must plead a "special showing" that the defendant corporate officer:

- **"personally participate[d] in the manufacture or sale of the infringing article (acts other than as an officer)"; or**

- **"…uses the corporation as an instrument to carry out his own willful and deliberate infringements"; or**

- **"…knowingly uses an irresponsible corporation with the purpose of avoiding personal liability….**

*Dangler*, 11 F.2d at 947 (emphasis added).[3]

---

[2] There are numerous other decisions from the Northern District of Illinois following this principle. *See, e.g., DEV Indus., Inc. v. Rockwell Graphics Sys., Inc.*, Case No. 91 C 7197, 1992 U.S. Dist. Lexis 6340, at *1, 3 (N.D. Ill. May 4, 1992) (**Ex. 2**) ("Personal liability for the wrongdoing of a corporation cannot be imposed upon an individual merely because that individual is an officer of the corporation"); *Cinema Concepts Theatre Serv. Co. v. Filmack Studios*, Case No. 89 C 0024, 1989 U.S. Dist. Lexis 5640, at *3-4, (N.D. Ill. May 15, 1989) (**Ex. 3**) (dismissing claims against individual officers of corporation, including president, secretary, and production manager, where there were no factual allegations to establish that either individual knowingly participated in the alleged infringement, that they supervised or influenced the infringing activity, or that either derived financial benefit from it).

[3] Although *Dangler* involved patent infringement, courts in this district have held that the same approach to holding officers personally liable for patent infringement should apply to trademark infringement. *See The Drink Group*, 7 F.Supp.2d at 1010, n. 3.

Thus, to satisfy the required "special showing" of willful and personal involvement, plaintiff must plead with supporting facts that an officer was personally involved in the infringement. *Id.* The standard is not met when the individual has done nothing beyond the scope of his duties as an officer of the corporation and the corporation "was not organized to permit [the individual defendant] to profit from infringement or hide personal liability" under a corporate shell. *FM Industries, Inc. v. Citicorp Credit Services, Inc.*, Case No. 07 C 1794, 2007 U.S. Dist. Lexis 90129, at *11-12 (N.D. Ill. Dec. 5, 2007) **(Ex. 4)**. Consequently, liability as an individual infringer will not attach merely based on one's status as an officer of a corporation that has allegedly infringed a trade dress. The officer must have "acted willfully and knowingly, and personally participated in the infringing activities." *Id.*; *see also Powder Power Tool Corp. v. Powder Actuated Tool Co.*, 230 F.2d 409, 414 (7th Cir. 1956) (reversing district court's judgment following a bench trial and dismissing claims against corporate officer defendants after finding that there was "nothing in the record to show that the defendant acted beyond the ordinary scope of his office").

      **1.**     **Plaintiff has failed to plead any allegations or facts in its complaint whatsoever that would satisfy the "special showing" requirement to hold Kushner individually liable.**

Here, the ***only*** allegations in CSB's Complaint relating to Kushner individually do not come even close to satisfying the "special showing" required by the Seventh Circuit. CSB bases individual liability against Kushner on two allegations, namely (1) "...Kushner is the individual at Urban Trend with the responsibility for selecting the products that Urban Trend manufactures and/or markets, and also stands to benefit personally from the decisions to manufacture and/or market any particular product" and (2) "Kushner was the individual at Urban Trend who made the decision to go forward with the manufacture and/or marketing of the Throwzini knife

holder… ." (*See* Complaint, Ex. 1 at ¶¶ 14 and 19). These allegations do not suggest, let alone assert that Kushner acted beyond the ordinary scope of his office nor do they allege any specific activity against him. Accordingly, CSB's Complaint falls far short of the "special showing" required to plead individual officer liability.

a. **Plaintiff has failed to plead any allegations or facts that Kushner acted beyond the scope of his status and duties as an officer of Urban Trend.**

The law is clear that the only personal participation of an individual in the manufacture or sale of an infringing article that can support the requirement of a "special showing" is when the individual "***acts other than as an officer***." *Dangler*, 11 F.2d at 947. CSB failed to plead a "special showing" that Kushner participated in the alleged infringement in an extraordinary fashion beyond the scope of his duties.

The two conclusory allegations made against Kushner are cast in his respective capacity as an officer of Urban Trend and discuss his alleged status and responsibilities. CSB failed to plead that Kushner "act[ed] other than as an officer" of Urban Trend in the "manufacture or sale of the infringing product" as required by *Dangler*, when it alleged that Kushner had responsibility for "selecting the products that Urban Trend manufactures and/or markets," and that Kushner "made the decision to go forward with [Urban Trend's] manufacture and/or marketing of the Throwzini knife holder." (Complaint, Ex. 1 at ¶¶ 14 and 19).[4]

Finally, Plaintiff's allegation that Kushner "stands to benefit personally from the decisions to manufacture and/or market any particular product," does not describe any activity outside the scope of Kushner's status and duties for defendant Urban Trend. Moreover, this is

---

[4] Further support for the insufficiency of Plaintiff's allegations against Kushner is provided by Plaintiff's own admissions that Urban Trend, and not Kushner, is the party that "is in the business of selling novelty items" (Complaint, Ex. 1 at ¶ 13), "manufactures and/or markets [products]" (Complaint, Ex. 1 at ¶ 14), and "…began marketing and using in interstate commerce a knife holder called the 'Throwzini'" (Complaint, Ex. 1 at ¶ 15).

not even a factual allegation but merely a conclusory assertion of a general benefit that might be conferred on any corporate officer or shareholder through a corporation's profits from product sales, which the Court may ignore. *See DEV Indus.*, 1992 U.S. Dist. Lexis 6340, at *3 (Ex. 2) (dismissing corporate officer defendants and stating "the use of verbiage such as 'complex' and 'integrated' is no substitute for the identification of specific activity alleged against the individual defendants"); *see also The Drink Group*, 7 F.Supp.2d at 1011 (dismissing claims against corporate office defendant because no allegation of facts demonstrating wrongdoing by the individuals outside the scope of their corporate duties).

        **b.**    **Plaintiff has failed to plead any allegations or facts that Kushner acted willfully or knowingly or was motivated by some improper personal purpose.**

Plaintiff has also failed to allege that Kushner willfully and knowingly used Urban Trend as an instrument to carry out his own willful or deliberate infringements or that Kushner was motivated by some improper personal purpose. *Dangler*, 11 F.2d at 947; *The Drink Group*, 7 F.Supp.2d at 1010 (dismissing complaint against individual defendants because plaintiff failed to plead that defendants were "motivated by some improper purpose"). In fact, the words "willful," "deliberate," or "improper" are not used once in Plaintiff's Complaint to describe Kushner's personal actions. For this additional reason, Plaintiff has failed to plead the "special showing" required to impose liability on an individual corporate officer.

        **c.**    **Plaintiff has failed to plead any allegations or facts that Urban Trend is an irresponsible corporation that Kushner used to avoid personal liability.**

Finally, Plaintiff's Complaint is also devoid of any allegations whatsoever that claim Urban Trend is an irresponsible corporation that Kushner used to avoid personal liability. *Dangler*, 11 F.2d at 947; *See also Powder Power*, 230 F.2d at 414 (individual defendant not

personally liable where defendant company was not organized to permit individual to profit from infringement or to hide his personal liability under a corporate shell). Indeed, Plaintiff concedes in its Complaint that Urban Trend is a bona fide corporation engaged "in the business of selling novelty items." (Complaint, Ex. 1 at ¶ 13). For all of the above reasons Plaintiff's Complaint lacks any concrete allegations or the most fleeting shred of factual basis that could even begin to meet the "special showing" requirement of the Seventh Circuit. Thus, Plaintiff has fallen well short of pleading facts that would justify the imposition of individual liability for Kushner and Plaintiff's Complaint against Kushner should be dismissed with prejudice.

## <u>CONCLUSION</u>

WHEREFORE, Defendant Kushner respectfully requests that this Court dismiss with prejudice Plaintiff's Complaint against Robert Kushner for failure to state a claim under Rule 12(b)(6) and award such other relief the Court deems just.

Respectfully submitted,

*/s/Jeffrey G. Mote*
Jeffrey G. Mote
James J. Lukas, Jr.
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
Telephone: 312-456-8400
Fax: 312-456-8435

Counsel for Defendant
ROBERT KUSHNER

# EXHIBIT 1

**FILED**

**MARCH 17, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**08 C 1548**

-----------------------------------------------------------------x

C.S.B. COMMODITIES, INC.,

               Plaintiff,

      v.

URBAN TREND (HK) LTD., AND ROBERT KUSHNER,

               Defendants.

-----------------------------------------------------------------x

Civil Action No. _____

**COMPLAINT
WITH JURY DEMAND**

**JUDGE DOW
MAGISTRATE JUDGE DENLOW**

For its Complaint, Plaintiff C.S.B. Commodities, Inc. ("C.S.B." or "Plaintiff") alleges as follows:

**PARTIES**

1.  C.S.B. is a New York corporation, having a principal place of business at 1400 Old Country Rd., Suite 301A, Westbury, NY 11590.

2.  Upon information and belief, Defendant Urban Trend (HK) Ltd. ("Urban Trend") is a Hong Kong corporation, having a principal place of business at 31st Floor, Sunshine Plaza, 353 Lockhart Road, Wan Chai, Hong Kong.

3.  Upon information and belief, defendant Robert Kushner ("Kushner") is an individual of unknown citizenship, believed to be residing in Hong Kong.   Urban Trend and Kushner are jointly referred to herein as "Defendants."

**JURISDICTION AND VENUE**

4.  This is an action for federal unfair competition under 15 U.S.C. § 1125(a) and for unfair competition under Illinois common law and Illinois Statute 815 ILCS § 510.

5.  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1338(b), and 15 U.S.C. §1121(a), and supplemental jurisdiction under 28 U.S.C. §1367(a).

6.  Venue is proper in this Court under 28 U.S.C. § 1391 because it is believed that Defendants own and operate a website accessible in this district, that Defendants use of the mark at issue in this district through the website and possibly otherwise, and that Defendants have thereby committed the acts of unfair competition complained of herein in this district.

## GENERAL ALLEGATIONS

### A.  PLAINTIFF C.S.B.

7.  For over thirty years, C.S.B. has been in the business of selling housewares and household goods, and has developed a reputation as a premier supplier of such goods.

8.  Starting on or about August 31, 2005, C.S.B. began selling a new product, namely, a knife holder that incorporates a distinctive product configuration of a stylized human figure (the "Human Figure Design").  C.S.B. adopted the Human Figure Design to distinguish its knife holder from other knife holders on the market.  This knife holder featuring the Human Figure Design is sold under the trademark THE EX in the United States and under the trademark VOODOO elsewhere throughout the world (the "EX/VOODOO").  The EX/VOODOO is manufactured in a range of colors, but is most popular and well-known in red.  Attached as Exhibit "A" is a photograph of the EX/VOODOO knife holder.

9.  The Human Figure Design of the EX/VOODOO knife holder is non-functional.

10. C.S.B. owns the trademark rights associated with the Human Figure Design.

11. From its first introduction into the market, the unique and distinctive Human Figure Design made the EX/VOODOO knife holder a sensation, garnering the product a great deal of press coverage and word of mouth.  C.S.B. has also promoted the EX/VOODOO knife holder

and the unique and distinctive shape of the Human Figure Design in advertisements and through other marketing channels. As a result, the Human Figure Design has acquired secondary meaning.

12. Upon information and belief, the consuming public has come to associate, with a single source, knife holders that incorporate as part of their design a stylized human figure. That source is C.S.B.

**B.** **DEFENDANTS URBAN TREND AND KUSHNER**

13. Upon information and belief, Urban Trend was incorporated in or about 1996. Upon information and belief, Urban Trend is in the business of selling novelty items.

14. Upon information and belief, Kushner is the individual at Urban Trend with the responsibility for selecting the products that Urban Trend manufactures and/or markets, and also stands to benefit personally from the decisions to manufacture and/or market any particular product.

15. After C.S.B. began advertising and selling the EX/VOODOO, which features the Human Figure Design, Urban Trend, without authorization from C.S.B., began marketing and using in interstate commerce a knife holder called the "Throwzini." The Throwzini utilizes a design that is confusingly similar to the Human Figure Design. The Throwzini knife holder misappropriates the distinctive trade dress and product configuration of the EX/VOODOO knife holder, namely, a stylized human figure. The Throwzini knife holder has been shown in advertisements in the same red color that is utilized by C.S.B. in its most popular version of the EX/VOODOO knife holder. A photograph of the Throwzini knife holder is attached as Exhibit "B."

3

16. Upon information and belief, the Defendants knew of the EX/VOODOO knife holder and the Human Figure Design, and of the popularity of the EX/VOODOO knife holder, at the time they began to develop the Throwzini knife holder.

17. Upon information and belief, the Defendants' selection of the shape of the Throwzini knife holder was made with the knowledge that that shape was confusingly similar to the proprietary and distinctive product configuration of the EX/VOODOO knife holder and the Human Figure Design.

18. Upon information and belief, the Defendants' selection of the shape of the Throwzini knife holder, in the most popular color of the EX/VOODOO knife holder, was made with the intention of trading on the goodwill and product recognition that C.S.B. has developed in the EX/VOODOO knife holder and the Human Figure Design.

19. Upon information and belief, Kushner was the individual at Urban Trend who made the decision to go forward with the manufacture and/or marketing of the Throwzini knife holder and thereby trade on the goodwill associated with the EX/VOODOO knife holder and the Human Figure Design.

20. Upon information and belief, Kushner also stands to gain personally from the sales of the Throwzini knife holder.

21. Upon information and belief, the Defendants have begun marketing and promoting the Throwzini knife holder in the United States, and have promised customers to deliver the Throwzini knife holders shortly.

## COUNT I:
## FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

22. The allegations of paragraphs 1-21 of this Complaint are incorporated by reference herein.

23. Upon information and belief, the Defendants have marketed and used in interstate commerce the Human Figure Design used in connection with the Throwzini knife holder over the Internet and through other means in commerce that Congress may regulate.

24. The Defendants' Throwzini product configuration so resembles C.S.B.'s "Human Figure Design," as to be likely to cause confusion, or mistake, or to deceive consumers as to the affiliation, connection and/or association of Defendants and C.S.B., and as to the as to the origin, sponsorship, or approval of the Throwzini knife holder sold by Defendants, such that Defendants' conduct constitutes a false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

25. Members of the press and public have already been confused as to the source of the Throwzini knife holder, and have linked the Throwzini knife holder to the well-known EX/VOODOO knife holder. Attached as Exhibit "C" are copies of several "blogs" from the Internet that have, for example, linked the Throwzini knife holder to "its predecessor," the EX/VOODOO knife holder.

26. Upon information and belief, the blogs shown in Exhibit "C" were created with the input and/or encouragement of the Defendants, whose purpose was to introduce the Throwzini knife holder to the public as a product related to the EX/VOODOO knife holder.

27. The Defendants' marketing and false and/or misleading descriptions and/or representations regarding the Throwzini knife holder is likely to cause confusion, or to cause mistake, or to deceive consumers into believing that the Throwzini knife holder originates with the same source as the EX/VOODOO knife holder, namely C.S.B.

28. The Defendants' marketing and false and/or misleading descriptions and/or representations regarding the Throwzini knife holder is likely to cause confusion, to cause

mistake and/or to deceive as to the affiliation, connection and/or association of the source of the Throwzini knife holder with the source of the EX/VOODOO knife holder.

29. The Defendants' marketing and false and/or misleading descriptions and/or representations regarding the Throwzini knife holder is likely to cause confusion, to cause mistake and/or to deceive as to the origin, sponsorship and/or approval of the Throwzini knife holder by the source of the EX/VOODOO knife holder, *viz*. C.S.B.

30. Defendants' false and/or misleading descriptions and/or representations concerning the Throwzini knife holder are likely to influence consumers' purchasing decisions.

31. Defendants' false and/or misleading descriptions and/or representations concerning the Throwzini knife holder constitute false advertising and unfair competition in violation of 15 U.S.C. § 1125(a).

32. As a result of Defendants' conduct, C.S.B. has suffered and will continue to suffer monetary damages in an amount to be determined at trial, and jeopardizes the goodwill built up by C.S.B. in its EX/VOODOO knife holder and Human Figure Design, causing serious irreparable injury to C.S.B., its products, and its reputation, for which C.S.B. has no adequate remedy at law.

33. Defendants have profited from Defendants' false advertising and unfair competition.

34. Defendants' use of a product configuration confusingly similar to C.S.B.'s Human Figure Design, and Defendants' false and/or misleading descriptions and/or representations concerning the Throwzini knife holder was and is willful, knowing, malicious and/or intentional, thereby making this case exceptional under 15 U.S.C. § 1117(a).

## COUNT II:
## UNFAIR COMPETITION UNDER ILLINOIS COMMON LAW

35. The allegations of paragraphs 1-34 of this Complaint are incorporated by reference herein.

36. Defendants' acts complained of herein constitute unfair competition and deceptive trade practices under Illinois common law, because in the course of Defendants' business, Defendants have caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Defendants' Throwzini knife holder, and as to Defendants' affiliation, connection, and association with and certification by C.S.B.

37. Defendants' acts complained of herein constitute unfair competition and deceptive trade practices under Illinois common law also because Defendants have used deceptive representations in connection with the Throwzini knife holder and have engaged in other conduct which creates a likelihood of confusion or misunderstanding.

38. As a consequence of the Defendants' acts of unfair competition as aforesaid, Plaintiff has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

39. Defendants have profited from Defendants' unfair competition as aforesaid.

40. Defendants' unfair competition was and is willful, knowing, malicious, and/or intentional.

41. C.S.B. does not have a fully adequate remedy at law.

## COUNT III:
## UNFAIR COMPETITION UNDER ILLINOIS STATUTE 815 ILCS § 510

42. The allegations of paragraphs 1-41 of this Complaint are incorporated by reference herein.

43. Defendants' acts complained of herein constitute unfair competition and deceptive trade practices under 815 ILCS § 510, because in the course of Defendants' business, Defendants have caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Defendants' Throwzini knife holder, and as to Defendants' affiliation, connection, and association with and certification by C.S.B.

44. Defendants' acts complained of herein constitute unfair competition and deceptive trade practices under 815 ILCS § 510 also because Defendants have used deceptive representations in connection with the Throwzini knife holder and have engaged in other conduct which creates a likelihood of confusion or misunderstanding.

45. As a consequence of the Defendants' acts of unfair competition as aforesaid, Plaintiff has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

46. Defendants have profited from Defendants' unfair competition as aforesaid.

47. Defendants' unfair competition was and is willful, knowing, malicious, and/or intentional.

48. C.S.B. does not have a fully adequate remedy at law.

## JURY DEMAND

Pursuant to Rule 38(b), Fed. R. Civ. P., C.S.B. requests a trial by jury on all issues triable to a jury.

**WHEREFORE,** Plaintiff hereby demands judgment against the Defendants as follows:

A)      For an injunction immediately restraining Defendants, together with their respective officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert with them, pursuant to 15 U.S.C. § 1116(a) and any relevant Illinois state law provisions:

1)      from selling, offering to sell, marketing, promoting, or advertising any goods and/or services bearing the Human Figure Design or any mark confusingly similar thereto, including such products as the Throwzini knife holder;

2)      making or publishing any false and/or misleading descriptions and/or representations concerning Plaintiff and/or any false and/or misleading descriptions or representations, stating, suggesting or implying that Defendants' Throwzini knife holder is affiliated with, owned by and/or sponsored by Plaintiff; and

3)      engaging in any other acts of unfair competition with Plaintiff;

B)      Directing Defendants to deliver up to Plaintiff all things in their possession bearing a description and/or representation of the Throwzini knife holder and/or any other designation likely to be confused with C.S.B., pursuant to 15 U.S.C. § 1118 and any relevant Illinois state law provisions;

C)      Directing Defendants to account for and pay over to Plaintiff all profits Defendants have obtained, received, or derived from selling, or offering to sell, the Throwzini knife holder, pursuant to 15 U.S.C. § 1117(a) and any relevant Illinois state law provisions;

D)      Awarding to Plaintiff all damages suffered by Plaintiff as a result of the Defendants' acts of false advertising and unfair competition, pursuant to 15 U.S.C. § 1117(a) and any relevant Illinois state law provisions;

E)      Awarding to Plaintiff up to three times Plaintiff's damages and/or Defendants' profits, pursuant to 15 U.S.C. § 1117(a) and any relevant Illinois state law provisions;

F)      Declaring that this case is "exceptional" and awarding to Plaintiff the attorneys' fees it has incurred in investigating, bringing, and prosecuting this action, pursuant to 15 U.S.C. § 1117(a) and any relevant Illinois state law provisions;

G)      Awarding Plaintiff the costs and disbursements of this action; and

H)      Awarding Plaintiff pre- and post-judgment interest on any monetary award, including any attorneys' fee award.

I)      Awarding to Plaintiff punitive damages pursuant to any relevant Illinois state law provisions;

J)      Awarding to Plaintiff such other, further or different relief in its favor and against Defendants as this Court may deem just and proper.

Dated: March 17, 2008                    LEYDIG, VOIT & MAYER, LTD.


                                         s/  Steven H. Sklar
                                         Steven H. Sklar (IL Bar No. 6238119)
                                         Two Prudential Plaza
                                         180 North Stetson Avenue, Suite 4900
                                         Chicago, IL 60601-6731
                                         Tel: (312) 616-5600
                                         Fax: (312) 616-5700


                                         COHEN PONTANI LIEBERMAN & PAVANE LLP
                                         Lisa A. Ferrari
                                         Roger S. Thompson
                                         551 Fifth Avenue, Suite 1210
                                         New York, NY  10176
                                         Tel. (212) 687-2770
                                         Fax. (212) 972-5487

                                         *Attorneys for Plaintiff*
                                         *C.S.B. Commodities, Inc.*

10

EXHIBIT 2

LEXSEE 1992 US DIST LEXIS 6340

**DEV INDUSTRIES, INC., Plaintiff, v. ROCKWELL GRAPHIC SYSTEMS, INC.,
JAMES D. CAVANAUGH, LESTER A. KRAFT, THOMAS E. ROBERTS, R.
PAUL ECK and FRANK A. CHANCIO, Defendants.**

**CASE NO. 91 C 7197**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*1992 U.S. Dist. LEXIS 6340*

**May 4, 1992, Decided
May 4, 1992, Filed; May 5, 1992, Docketed**

**JUDGES:** [*1]  LEINENWEBER

**OPINION BY:** HARRY D. LEINENWEBER

**OPINION**

JUDGE LEINENWEBER

**MEMORANDUM OPINION AND ORDER**

Plaintiff, DEV Industries, Inc. ("DEV"), has brought this action against defendant, Rockwell Graphic Systems, Inc. ("Rockwell"), and five individual defendants, alleging that defendants engaged in various unfair trade practices in connection with the design, manufacture and sale of printing presses and folders. [1] The parties are now before the court on defendants' motions to strike certain allegations in the complaint and to dismiss the claims against the individual defendants.

> 1   Plaintiff alleges violations of the Sherman Act, *15 U.S.C. §§ 13(a)* and *18*, the Illinois Antitrust Act, Ill.Rev.Stat., ch.38, PP60-3(2) &60-3(3), the Lanham Act, *15 U.S.C. § 1125(a)*, the Uniform Deceptive Trade Practices Act, Ill.Rev.Stat., ch.121-1/2, PP311-317, Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat., ch.121-1/2, PP261-272, and the common law.

**1. Motion to Strike**

Rockwell seeks to strike paragraph 11 on relevancy grounds, and [*2]  all or portions of paragraphs 28, 50, 29 and 38 on the ground that they violate a standing protective order.

a) Paragraph 11

*Rule 12(f)* on the Fed.R.Civ.P. provides that a court, upon motion by any party, "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Motions to strike are generally disfavored, and will not be granted unless the allegation at issue has no "possible relation to the controversy and is clearly prejudicial." *Garza v. Chicago Health Clubs, Inc., 347 F. Supp. 955, 962 (N.D.Ill. 1972)*.

Paragraph 11 of plaintiff's complaint states that "in 1990, Rockwell reported annual sales of almost $ 1.4 billion and its parent, Rockwell International Corporation, reported sales of about $ 12.4 billion and profits of more that $ 164 million. DEV sales were approximately $ 25 million for the same period." Rockwell moves to strike the reference in Paragraph 11 to Rockwell International Corporation ("Rockwell International"), the parent corporation, on the grounds that the allegations are "immaterial," "impertinent" and "prejudicial." DEV responds that Rockwell's access to the financial resources [*3]  of its parent company is directly relevant to Rockwell's ability "to fund and sustain a predatory pricing program." Plaintiff's response at 3.

After reviewing Paragraph 11, the court cannot say that the allegation in question is immaterial and

impertinent. DEV's allegations against Rockwell include both predatory pricing and discriminatory pricing. It is not difficult to imagine how the source of Rockwell's financing might be relevant to these claims. Predatory pricing means "pricing below some appropriate measure of cost." *Matsushita Electric Industrial Co., Ltd., et al v. Zenith Radio Corp., et al., 474 U.S. 574, 585, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)*. Rockwell's ability to externalize the costs associated with the design, manufacture and sale of printing presses onto its parent corporation may be relevant to the issue of predatory or discriminatory pricing. In turn, the ability of Rockwell International to bear those costs is dependant, at least in part, on its own financial condition. Viewed in this light, Rockwell International's sales and profits are not immaterial. Accordingly, defendant's motion to strike the allegations [*4] concerning Rockwell International contained in Paragraph 11 is denied.

b) Protective Order

Defendant also moves to strike paragraph 28, paragraph 50, the first sentence of paragraph 29, and the second sentence of paragraph 38 because they are predicated on information obtained in another case (*Rockwell Graphic v. DEV Industries, 84 C 6746, (Williams, J.)*), and allegedly subject to a protective order. The protective order in question provides that "all documents, things, answers, responses and other information furnished in pretrial discovery are provided solely for the purpose of this litigation and shall not be used for any other purpose by the receiving party." *See* Defendants' motion to strike, ex. A. Plaintiff does not dispute the fact that the allegations are predicated upon information obtained through discovery in the prior case. Instead, plaintiff argues that: 1) Judge Williams stated, in denying DEV leave to file the current claim as a counterclaim, that her ruling was without prejudice to DEV's right to bring the counterclaim as a complaint; 2) the phrase "this litigation" includes the present litigation; 3) the allegations in question are based upon information [*5] garnered from deposition testimony and, therefore, do not come within the ambit of paragraph 1 of the protective order; and 4) because the filing of the instant complaint has placed the pleadings in the public domain, the allegations are no longer covered by the protective order.

After careful consideration, the court finds that the allegations in question should be stricken from the complaint. The information relied upon falls squarely within the scope of the protective order. While the phrase "deposition" is not mentioned in the protective order, the terms "responses" and "other information" clearly encompass deposition testimony given during the course of discovery. Here, the deposition testimony underlying the allegations in question was taken during the course of pretrial discovery, and the documents referred to in paragraphs 28, 29 and 50 were produced pursuant to the same.

Furthermore, the protective order specifically provides that the use of information gathered through discovery is limited to "this litigation." No reference was made to "related litigation" or "connected litigation," and there is no reason to interpret the provision more broadly than the plain language of [*6] the protective order. As the present case is separate and distinct from the litigation pending before Judge Williams, it does not come within the meaning of the phrase "this litigation."

So long as the protective order remains in effect the parties must abide by its mandate. Accordingly, the court strikes from plaintiff's complaint the allegations contained in paragraph 28, paragraph 50, the first sentence of paragraph 29, and the second sentence of paragraph 38.

2. Motion to Dismiss Claims Against Individual Defendants

Individual defendants, James D. Cavanaugh ("Cavanaugh"), Lester A. Kraft ("Kraft"), Thomas E. Roberts ("Roberts") and R. Paul Eck ("Eck"), move to dismiss the claims against them in Counts X through XV for failure to state a claim upon which relief can be granted. These defendants argue that the complaint does not contain specific allegations identifying the conduct in which they allegedly engaged. Defendant Frank A. Chancio ("Chancio"), has also moved to dismiss the claims against him pursuant to *Fed.R.Civ.P. 12(b)(2)* and *Fed.R.Civ.P. 12(b)(6)*.

Two allegations are made specifically against the individual defendants. First, that "Rockwell and the individual defendants [*7] have been engaged in a complex and integrated scheme to eliminate DEV as a competitor and to drive it out of business. . . ." Amended complt. at P1. Second, that "Rockwell management, including, without limitation, Defendants Cavanaugh, Kraft, Roberts, Eck, and Chancio, was the moving,

conscious, and dominant force behind Rockwell's offending conduct." Amended cmplt. at P100. The complaint also contains a number of allegations that "Rockwell management" knew about and/or encouraged the allegedly offending conduct. *See* Amended cmplt. PP14, 18, 24, 33, 39, 49.

Defendants' motion is not predicated upon the notion that the factual allegations are non-specific, but rather that those allegations do not implicate the defendants individually, In other words, defendants content that the complaint fails to allege that defendants engaged in specific conduct relative to and in connection with the conduct alleged in the complaint.

After reviewing the complaint, the court finds that the individual defendants should be dismissed pursuant to *Rule 12(b)(6)*. Personal liability for the wrongdoing of a corporation cannot be imposed upon an individual merely because that individual is an officer of [*8] the corporation. However, that is exactly what DEV is attempting to do in its complaint. The allegation that the individual defendants engaged in a "complex and integrated scheme" to drive DEV out of business is insufficiently definite to state a claim. The use of verbiage such as "complex" and "integrated" is no substitute for the identification of the specific activity alleged against the individual defendants. The same is true for the allegation that the individual defendants were the "moving, conscious, and dominant force behind

Rockwell's offending conduct." The statement that an individual is a "moving force" is not a factual allegation, but as conclusion one might reach after being apprised of the conduct in which an individual has engaged.

Finally, allegations concerning the knowledge of "Rockwell management" are insufficient to support a claim against the individual defendants. Personal liability must be based upon personal knowledge or wrongdoing, and cannot be imputed due to an individual's membership in a broader organizational structure. *See Cinema Concepts Theatre Service. Co. v. Filmack Studios, 11 U.S.P.Q. 2d 1564, 1565 (N.D.Ill. 1989)* (complaint [*9] failed to allege that either individual knowingly participate in wrongdoing). While federal rules do not require more than notice pleading, DEV's complaint has failed to meet even that minimal threshold.

Accordingly, the court dismisses without prejudice DEV's claims against individual defendants Cavanaugh, Kraft, Roberts, Eck and Chancio. Defendants' motion for Rule 11 sanctions is denied.

IT IS SO ORDERED.

HARRY D. LEINENWEBER, Judge

United States District Court

DATED: MAY 4, 1992

EXHIBIT 3

LEXSEE 1989 US DIST LEXIS 5640

**CINEMA CONCEPTS THEATRE SERVICE COMPANY, Plaintiff, v. FILMACK STUDIOS, a division of JM-RM Mack Corp., JOSEPH R. MACK, and ROBERT N. MACK, Defendants**

**No. 89 C 0024**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1989 U.S. Dist. LEXIS 5640; 11 U.S.P.Q.2D (BNA) 1564; Copy. L. Rep. (CCH) P26,442*

**May 15, 1989, Decided**

**OPINION BY:** [*1]  CONLON

**OPINION**

*MEMORANDUM OPINION AND ORDER*

*SUZANNE B. CONLON, UNITED STATES DISTRICT JUDGE*

*Cinema Concepts Theatre Service Company ("Cinema Concepts") filed this case against Filmack Studios ("Filmack") and two of its officers, Joseph R. Mack and Robert N. Mack (collectively "defendants"), alleging copyright infringement (Count I), common law misappropriation and unfair competition (Count II), consumer fraud and deceptive trade practices (Count III), and false description and representation (Count IV). Defendants move to dismiss Counts II and III of the first amended complaint and to dismiss Joseph R. Mack and Robert N. Mack as parties. For the following reasons, defendants' motion is granted.*

*FACTS*

*Cinema Concepts produces movie theater films called "trailers." Trailers relate to such subjects as coming attractions, theater policies and concession stands. First amended complaint ("complaint") paras. 6, 11. Cinema Concepts prepares customized trailers for owners and operators of movie theaters. Id. Cinema Concepts keeps the negative of the film and sells prints*

from the negatives to theater owners. *Id.* at para. 12. Cinema Concepts owns the copyrights to films it produces.  [*2]  *Id.* at para. 16.

Filmack produces and duplicates trailers and other theater films. Defendants' memo. at 3. Joseph Mack is president of Filmack. Robert Mack is Filmack's secretary and production manager. Complaint at paras.8, 9.

On February 14, 1986, Cinema Concepts' attorney notified Joseph Mack by certified mail that Filmack's reproduction of Cinema Concepts' trailer films constituted copyright infringement. Complaint, Ex. B. Cinema Concepts demanded that Filmack cease using its products and to for all Cinema Concepts' films in its possession. *Id.*

In 1988, Cinema Concepts discovered that one of its customers -- a corporation named Wometco -- had obtained copies of a Cinema Concepts trailer film (produced for Wometco) from Filmack. Complaint para. 7. Filmack charged Wometco $ 20 per print. This amount was substantially less than Cinema Concepts charged for similar prints. *Id.* Cinema Concepts maintains that Filmack's actions have damaged Cinema Concepts' standing with its customers. *Id.* at para. 21.

I. Motion to Dismiss Joseph R. Mack and Robert N. Mack as Parties

Defendants argue that Joseph Mack and Robert Mack should be dismissed from the case because the allegations [*3]  do not state a claim against them

individually. The complaint alleges that Joseph and Robert Mack are officers of Filmack. Complaint paras. 8, 9. The individual defendants and Filmack Studios are collectively referred to as "Filmack." There are no allegations of activity by either individual defendant.

Cinema Concepts argues that Joseph and Robert Mack are personally liable for contributory infringement as officers of Filmack. Cinema Concepts' memo. at 4-5. One who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing activity of another may be held liable as a contributory infringer. *Columbia Pictures Industries v. Redd Horne, 749 F.2d 154, 160 (3d Cir. 1984).* A corporate officer may be held liable as a contributory infringer where he knowingly participated in the infringement. *Id.* A defendant may be liable as a vicarious infringer if he had the right and ability to supervise the infringing activities, as well as a direct financial interest in those activities. *F.E.L. Publications v. National Conference, etc., 466 F. Supp. 1034, 1040 (N.D. Ill. 1978).*

The complaint fails to state claims against Joseph Mack or Robert Mack. [*4] There are no factual allegations to establish that either individual knowingly participated in the alleged infringement. The complaint does not allege either Joseph or Robert Mack supervised or influenced the infringing activity, or that either derived financial benefit from it. The allegations therefore do not support claims against Joseph or Robert Mack for contributory or vicarious infringement.

Count II: Common Law Misappropriation

Count II charges that Filmack misappropriated Cinema Concepts' property and engaged in unfair competition by removing or causing removal of the copyright notice from films copyrighted by Cinema Concepts, without Cinema Concepts' consent or authorization. Complaint at paras. 32, 35. Defendants contend that the claim is preempted by federal copyright law.

The Copyright Act preempts state law claims as follows:

[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by *Section 106* in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by

sections 102 and 103. . . .

*17 U.S.C. § 301.* A state [*5] law right is equivalent to a right protected under the Copyright Act if:

(1) it is infringed by the mere act of reproduction, performance, distribution, or display, or

(2) it requires additional elements to make out a cause of action, but the additional elements do not differ in kind from those necessary for copyright infringement.

*Baltimore Orioles v. Major League Baseball Players, 805 F.2d 663, 674 (7th Cir. 1986), cert. denied, 480 U.S. 941 (1987).* Misappropriation claims are preempted by the Copyright Act unless they are based upon a right not within the general scope of copyright under *Section 106* and are not equivalent to those rights. *See* Notes of Committee on the Judiciary, H. Rep. No. 1476 (reprinted at *17 U.S.C.A. § 301*). For example, a misappropriation claim is not preempted where it involves the systematic appropriation of "hot news" or stored data that may not be copyrightable. *Id.; Nash v. CBS, 704 F. Supp. 823, 834-35 (N.D. Ill. 1989).*

Cinema Concepts contends that Count II, although entitled common law misappropriation, states a claim for unfair competition based upon Filmack's removal or causing the removal of the copyright notice from Cinema [*6] Concepts' trailers. It claims that the right asserted is not protected by *Section 106* of the Copyright Act. Cinema Concepts seeks to recover for injuries allegedly sustained as a result of the removal of the copyright notice, not for the subsequent acts of reproduction. Cinema Concepts' memo. at 14. Filmack's removal of the notice allegedly "facilitat[es] the copying of Cinema Concepts' copyrighted films . . . by persons under Filmack's employ or direction" and allows customers to purchase films from Filmack that they otherwise would not purchase. Complaint para. 32; Cincema Concepts' memo. at 15.

The right allegedly violated is not qualitatively different from the rights protected under the Copyright Act. Removal of the notice did not deprive Cinema Concepts of any right or cause any injury. Filmack removed the notices in connection with its performance under a contract to duplicate films. The original and all copies were given to the customer -- the owner of the original copyrighted film. Complaint at para. 21. Any

profits derived by Filmack were from the actual copying of the trailers, and not from the removal of the copyright notices. The claim asserted in Count II is preempted [*7] by *Section 301* of the Copyright Act.

III. Count III: Consumer Fraud and Deceptive Trade Practices

Count III purports to state claims under the Illinois Consumer Fraud and Deceptive Practices Act, Ill. Rev. Stat. ch. 121-1/2 para. 262, and the Uniform Deceptive Trade Practices Act, Ill. Rev. Stat. ch. 121-1/2 para. 312. Filmack allegedly violated these statutes as follows:

Filmack holds its policy trailers out to others, including customers, as providing the same or better quality of production as Cinema Concepts' policy trailers, while in fact Filmack's policy trailers are identically or substantially copied from Cinema Concepts' policy trailers and incorporate misappropriated data and information developed only through violation of Cinema Concepts' rights.

Complaint para. 38. Cinema Concepts further alleges that Filmack engaged in false advertisement concerning its application of Photogard film protector as follows:

"Photogard Film Protector

THEATRE TRAILERS ONLY FROM FILMACK!"

*Id.* at para. 23. Cinema Concepts contends that this advertisement constitutes a false representation because Photogard [*8] film protection is routinely applied within the industry. *Id.*

Section 312 of the Uniform Deceptive Trade Practices Act ("the Uniform Act") provides in relevant part that a person engages in a deceptive trade practice when, in the course of his business, he:

represents that goods have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . .

Ill. Rev. Stat. ch. 121-1/2 § 312(5). Section 312 further prohibits "any other conduct which similarly creates a likelihood of confusion or misunderstanding." Ill. Rev. Stat. ch. 121-1/2 § 312(12). Well-pleaded factual allegations indicating the existence of a likelihood of confusion or misunderstanding are essential to the maintenance of a claim under this section. *Rooker v.*

*Columbia Pictures Industries, Inc., 551 F. Supp. 1060, 1064 (N.D. Ill. 1982).* There must be a likelihood, not a mere likelihood, possibility of confusion or misunderstanding. *Id.*

The complaint does not allege any factual misrepresentations likely to cause confusion or misunderstanding. Filmack's purported representation that its trailers are the same or of better quality than Cinema Concepts' trailers, when [*9] they are substantially identical, constitutes an opinion rather than a deceptive representation of fact under the Act. Filmack's advertisement concerning its application of Photogard film protector to its trailers is not a misrepresentation. Cinema Concepts fails to allege any facts to support the inference that consumers (theater owners who request the duplication) are confused or misled. Count III does not state a claim under the Uniform Act.

Section 262 of the Consumer Fraud and Deceptive Trade Practices Act ("Consumer Fraud Act") prohibits unfair methods of competition and unfair or deceptive acts or Practices. Ill. Rev. Stat. ch. 121-1/2 para. 262. The Consumer Fraud Act is considerably broader than the Uniform Act and applies also to unfair methods of competition. *See Jays Foods, Inc. v. Frito-Lay, Inc., 664 F. Supp. 364, 367 (N.D. Ill. 1987).* However, deceptive conduct is not actionable under the Consumer Fraud Act unless the conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns. *Pain Prevention Lab v. Electronic Waveform Labs, 657 F. Supp. 1486, 1493 (N.D. Ill. 1987).* Where the suit is between competitors, [*10] a plaintiff must show that defendant's misconduct injured consumers generally. *Jays Foods, Inc. v. Frito-Lay, Inc., 664 F. Supp. at 369.* Violations may affect consumers directly or indirectly by affecting competition in the market. *Id.*

Cinema Concepts does not allege any direct injury to consumers. Filmack's alleged misrepresentations were directed to theater owners, not the general public. No facts establish that Filmack's conduct injured theater owners, as consumers of policy trailer films. The complaint alleges Filmack reproduced prints at the request of its customer, Wometco, and returned all copies to Wometco. Complaint para. 21. The invoices attached to the complaint reflect shipments made to various Wometco theaters. *Id.,* Ex. D. The complaint does not

1989 U.S. Dist. LEXIS 5640, *10; 11 U.S.P.Q.2D (BNA) 1564;
Copy. L. Rep. (CCH) P26,442

allege that Filmack's actions constitute anticompetitive activity that indirectly injured consumers. Cinema Concepts cannot redress its competitive injury by means of the Consumer Fraud Act, absent evidence of consumer deception. *See Newman-Green Inc. v. Alfonzo-Larrain, 590 F. Supp. 1083, 1087 and n.6 (N.D. Ill. 1984)* (businesses have standing to sue under the Consumer Fraud Act to redress competitive injury they [*11] suffer when other businesses deceive customers). Count III fails to state a claim under the Consumer Fraud Act.

*CONCLUSION*

Defendants' motion to dismiss is granted. *Joseph R. Mack and Robert N. Mack are dismissed as defendants. Counts II and III of the complaint are dismissed.*

EXHIBIT 4

LEXSEE 2007 US DIST LEXIS 90129

**FM INDUSTRIES, INC., Plaintiff, v. CITICORP CREDIT SERVICES, INC., CITIGROUP, INC., CITIBANK FEDERAL SAVINGS BANK, CITIBANK (South Dakota), N.A., CITIBANK USA, N.A., JEANETTE BROWN, JOHN GILLARD, LAW OFFICE OF ROSS GELFAND, LLC, JAMES D. CORTEZ, ATTORNEY AT LAW, Defendants.**

**Civil Action No.: 07 C 1794**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2007 U.S. Dist. LEXIS 90129*

**December 5, 2007, Decided
December 5, 2007, Filed**

**SUBSEQUENT HISTORY:** Summary judgment denied by *FM Indus. v. Citicorp Credit Servs., 2008 U.S. Dist. LEXIS 3575 (N.D. Ill., Jan. 14, 2008)*

**COUNSEL:** [*1] For FM. Industries, Inc., an Illinois Corporation, Plaintiff: Wayne Donald Rhine, LEAD ATTORNEY, Friedman & Wexler, LLC, Chicago, IL; William T. McGrath, Davis, Mannix & McGrath, Chicago, IL.

Michael E Friedman, Petitioner, Pro se, Chicago, Il.

For Citicorp Credit Services, Inc., a Delaware Corporation, Citigroup, Inc., Citibank Federal Savings Bank, Citibank (South Dakota), N.A., Citbank USA, N.A., Defendants: Allan J. Sternstein, LEAD ATTORNEY, Dean A. Dickie, LEAD ATTORNEY, Richard Eric Gottlieb, LEAD ATTORNEY, Todd A Gale, LEAD ATTORNEY, Dykema Gossett PLLC, Chicago, IL; Kathleen Elizabeth Surowiec, Rosa Maria Tumialan-Landy, Dykema Gossett Rooks Pitts PLLC, Chicago, IL.

For Jeanette Brown, John Gillard, Defendants: Allan J. Sternstein, LEAD ATTORNEY, Dean A. Dickie, LEAD ATTORNEY, Richard Eric Gottlieb, LEAD ATTORNEY, Todd A Gale, LEAD ATTORNEY, Dykema Gossett PLLC, Chicago, IL; Rosa Maria Tumialan-Landy, Dykema Gossett Rooks Pitts PLLC, Chicago, IL.

For Law Office of Ross Gelfand, LLC, Defendant: John J. Duffy, LEAD ATTORNEY, Charles Scott Ofstein, Karen Kies DeGrand, Donohue, Brown, Mathewson & Smyth, Chicago, IL; Mark Herbert Remus, W. Rochelle Claerbaut, William H. Frankel, Brinks, [*2] Hofer, Gilson & Lione, Chicago, IL.

**JUDGES:** Suzanne B. Conlon, United States District Judge.

**OPINION BY:** Suzanne B. Conlon

**OPINION**

**MEMORANDUM OPINION AND ORDER**

In its second amended complaint, FM Industries, Inc. ("FMI") sues Citicorp Credit Services, Inc. ("CCSI"), Citigroup, Inc., Citibank Federal Savings Bank ("Citibank F.S.B."), Citibank (South Dakota), N.A., Citibank USA, N.A. (collectively, the "Citibank entities"), two CCSI employees (Jeanette Brown and John Gillard), and two collection attorneys (Ross Gelfand and James Cortez), for copyright infringement under *17 U.S.C. § 501 et seq* (Count I); breach of contract (Counts II and III); and common law fraud (Count IV). FM seeks monetary and equitable relief as a result of defendants' improper use of a copyrighted debt collection program FMI developed and owns.

Citigroup and the Citibank entities move to dismiss for lack of standing and personal jurisdiction under *Fed. R. Civ. P. 12(b)(1)* and *12(b)(2)*. CCSI, Citigroup, the Citibank entities, Brown, and Gillard move to dismiss Count IV under *Fed. R. Civ. P. 12(b)(6)* and *9(b)*. Brown and Gillard move to dismiss Counts I and II under *Fed R. Civ. P. 12(b)(6)* and *12(c)*.

## I. BACKGROUND

FMI is a software developer that created [*3] TUCANS, a software program utilized in the debt collection industry. In 2001, CCSI, acting on behalf of Citigroup, contracted with FMI to acquire rights to use TUCANS for its debt collection needs. The ten-year Vendor Services Agreement acknowledged FMI's copyright, and provided that FMI would develop and maintain systems to allow CCSI and its agents to transfer file information to and from FMI for TUCANS. The agreement required CCSI's debt collection attorneys to sign a licensing agreement, which prohibited attorneys from accessing the system after the termination of the licensing agreement.

On July 2, 2003, CCSI notified FMI that it desired to cancel their contract to utilize a similar software system designed by another party. This cancelled the agreement between the parties, and constituted a self-termination of FMI's licensing agreement with CCSI attorneys. On September 3, 2003, CCSI requested and received permission from FMI to re-utilize TUCANS and its systems until December 2003. In consideration, FMI agreed to be paid the same rate as under the original contract. CCSI then stopped utilizing TUCANS altogether in May 2005.

FMI contends that after CCSI ceased using the FMI system, [*4] FMI informed attorneys affiliated with CCSI that the licensing agreements were terminated and that attorneys could no longer access the software or otherwise use data from the system. FMI alleges CCSI encouraged its collection attorneys to ignore this directive; and to continue using the software after the licensing agreement terminated. This continued use purportedly violated FMI's copyright and contractual rights. FMI further alleges CCSI and/or Citigroup knowingly authorized and facilitated their agents' continued use of the software in violation of FMI's copyright and contractual rights. Additionally, FMI asserts that CCSI and its agents improperly removed accounts from the FMI system to the new system in order

to circumvent payment to FMI.

## II. ANALYSIS

### A. Citigroup and the Citibank Entities' Motion to Dismiss

Citigroup and the Citibank entities argue FMI lacks standing to sue them because there is no causal link alleged between the alleged injuries and their purportedly illegal conduct.

On a motion to dismiss for lack of subject matter jurisdiction under *Fed. R. Civ. P. 12(b)(1)*, all well-pleaded factual allegations are accepted as true and all reasonable inferences are drawn in FMI's [*5] favor. *Transit Exp. Inc. v. Ettinger, 246 F.3d 1018, 1023 (7th Cir. 2001)*. FMI bears the burden of establishing that the jurisdictional requirements have been met. *Kontos v. Dep't of Labor, 826 F.2d 573, 576 (7th Cir. 1987)*. However, the degree of proof grows concomitantly with the stage of the litigation, with general allegations of injury usually sufficient to demonstrate standing at the pleading stage. *Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)*.

To satisfy the Article III standing requirements, FMI must show: (1) that it has suffered "injury in fact"; (2) that the injury is fairly traceable to defendants' actions; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)* (citing *Lujan, 504 U.S. at 560-61*); *Plotkin v. Ryan, 239 F.3d 882, 884 (7th Cir. 2001)*.

CCSI, a wholly owned subsidiary of Citigroup, allegedly operated FMI's TUCANS system for the benefit of Citigroup. Citigroup argues that the only direct allegations against it involve its ability to control [*6] CCSI and failure to assert this control. FMI alleges that Citigroup had apparent ability to control CCSI and that CCSI operated its debt collection services (and used the TUCANS system) for Citigroup's benefit. The allegations repeatedly state that CCSI acted to benefit Citigroup as its agent, not simply as a subsidiary operating on its own independent basis. FMI also alleges Citigroup was aware of the illegal nature of the activities of CCSI attorneys. Citigroup allegedly played an active part in infringing FMI's software. Construing these allegations in FMI's favor, the claims against Citigroup are sufficient to

satisfy standing requirements.

As for the Citibank entities, the allegations are more obscure. At the outset, FMI states that all of the Citibank entities are to be referred to collectively as "Citigroup." However, FMI distinguishes the function of the banks from Citigroup by stating that CCSI engaged in debt collection on behalf of Citibank (South Dakota), N.A., and Citigroup, Inc. FMI alleges that CCSI collects debt for Citibank (South Dakota), N.A., a national bank that issues credit cards, and Citibank USA, N.A. transferred its investment in Citibank (South Dakota), N.A., [*7] to Citigroup in 2006. While a broad construction of these allegations links Citibank (South Dakota), N.A. to CCSI's debt collection business and FMI's purported injury, the complaint is void of any relationship between Citibank F.S.B. or Citibank USA, N.A. and CCSI or its business, or how those entities have any involvement with the underlying allegations. The purported injury incurred as a result of CCSI's debt collection business cannot be fairly traced to either Citibank F.S.B. or Citibank USA, N.A. The allegations against them are not supported by more than speculation. *Plotkin v. Ryan, 239 F.3d 882, 884-85 (7th Cir. 2001)*. Citibank F.S.B. and Citibank USA are therefore dismissed because injuries cannot be traced to them. Accordingly, the court need not reach the alternative argument that dismissal is required for lack of personal jurisdiction.

**B. CCSI, Citigroup, Citibank (South Dakota), N.A., Brown, and Gillard's Motion to Dismiss Count IV**

CCSI, Citigroup, Citibank (South Dakota), N.A., Brown, and Gillard move to dismiss FMI's fraud claim under *Fed. R. Civ. P. 12(b)(6)*, or, in the alternative, *Fed. R. Civ. P. 9(b)*. To state a claim for common law fraud under Illinois law, [1] FMI [*8] must allege (1) defendants made a statement; (2) of a material nature; (3) which was untrue; and (4) was known by defendants to be untrue, or was made in culpable ignorance of its truth or falsity; (5) was made for the purpose of inducing reliance by FMI; (6) was actually relied on by FMI; and (7) resulted in FMI's injury. *Johnson v. George J. Ball, Inc., 248 Ill. App. 3d 859, 867, 617 N.E.2d 1355, 187 Ill. Dec. 634 (Ill. 1993)*. To avoid dismissal under *Rule 12(b)(6)*, FMI must allege enough facts to state a claim to relief that is plausible -- rather than merely speculative -- on its face. *Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)*; *EEOC v. Concentra Health Care Servs., Inc., 496 F.3d 773, 776 (7th Cir.*

*2007)*. FMI's fraud claim is subject to a heightened pleading requirement. *Fed. R. Civ. P. 9(b)*; *Davis v. G.N. Mortgage Corp., 396 F.3d 869, 883 (7th Cir. 2005)*. FMI must plead its claim with particularity by providing "the who, what, when, where, and how" of the purported fraud. *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago, 415 F.3d 601, 605 (7th Cir. 2005)* (quoting *DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990))*.

> 1    The parties do not dispute [*9] that Illinois law governs FMI's fraud claim.

FMI premises its fraud allegations on two communications. In the first communication, FMI states that it received a letter from CCSI advising that CCSI was evaluating other system providers to replace FMI. In the letter, CCSI indicated that "should the new system/process [replace FMI] . . . we will ensure you are paid the fee required by the contract with respect to accounts that were processed on your (FMI) system." Compl. at Ex. U. The second communication is another letter from CCSI, advising FMI that it was indeed replacing FMI's software, and that CCSI "agrees to pay FMI for any accounts processed on Tucans after [September 5, 2003] at the same rate set out in the agreement." *Id.* at Ex. F. FMI alleges that statements contained in these letters were false. However, FMI does not identify which statements contained in these letters were false.

FMI alleges the letters were untrue because CCSI eventually removed account information from TUCANS and used a new system, thereby terminating further payments to FMI. By stating that "the new system will replace your process on a going forward basis," FMI argues CCSI misrepresented that it would not [*10] remove accounts already placed with FMI. Pl. Resp. at 3. However, there is nothing in the CCSI letters that supports this allegation. Rather, CCSI's letters only state CCSI was seeking to replace FMI with another system, and CCSI would pay for any accounts *processed* through TUCANS. FMI fails to plead with particularity the statements that were untrue.

**C. Brown and Gillard's Motion to Dismiss Counts I and II**

Brown and Gillard move to dismiss the copyright infringement (Count I) and breach of contract (Count II) claims because FMI offers no basis to find them

individually liable. FMI concedes that Brown and Gillard cannot be liable under the breach of contract claim. Accordingly, Count II is dismissed as to them.

Brown and Gillard move to dismiss the copyright infringement claim under *Fed. R. Civ. P. 12(c)*. A motion for judgment on the pleadings under *Rule 12(c)* is analyzed under the same standard applied to *Rule 12(b)(6)* claims. *Guise v. BWM Mortg., LLC, 377 F.3d 795 (7th Cir. 2004)*. FMI must allege sufficient facts to state a claim to relief that is plausible. *Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)*; *EEOC v. Concentra Health Care Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007)*. [*11] A *Rule 12(c)* motion will only be granted if FMI cannot prove any facts to support a claim for relief and movants demonstrate there are no material issues of fact to be resolved. *Brunt v. Serv. Employees Int'l Union, 284 F.3d 715, 718-19 (7th Cir. 2002)*. The court may consider documents attached as exhibits to pleadings or incorporated by reference in the pleadings without converting the motion to a summary judgment motion. *United States v. Wood, 925 F.2d 1580, 1581-82 (7th Cir. 1991)*.

FMI alleges that Brown and Gillard engaged in unauthorized infringement as "agent[] servants and employees of CCSI." Compl. P 57. However, for personal liability to extend to Brown and Gillard as corporate officers, a special showing must be made that they acted willfully and knowingly, and personally participated in the infringing activities or otherwise used CCSI to carry out their own deliberate infringement. *The Drink Group, Inc. v. Gulfstream Communications, Inc., 7 F. Supp. 2d 1009, 1010 (N.D. Ill. 1998)* (Norgle, J.) (citing *Dangler v. Imperial Mach. Co., 11 F.2d 945, 947 (7th Cir. 1926))*. The special showing standard is not met when individual defendants have done nothing beyond the scope of their [*12] duties as officers and the corporation was not organized to permit the individual defendants to profit from infringement or hide personal liability. *Peaceable Planet Inc. v. Ty, Inc., 185 F. Supp. 2d 893, 896 (N.D. Ill. 2002)* (Darrah, J.) (citing *Powder Power Tool Corp. v. Powder Actuated Tool Co., 230 F.2d 409, 414 (7th Cir. 1956))*, The copyright infringement allegations against Brown and Gillard

pertain to their acts as CCSI corporate officers only. Without more, the special showing to extend personal liability to them for infringement cannot be met. *See, e.g., Drink Group, 7 F. Supp. 2d at 1010-11* (absent allegations that defendants were motivated by some improper purpose or acting outside the scope of their corporate duties, special showing cannot be met).

Notwithstanding this deficiency, FMI argues that it alleges upon information and belief that Brown and Gillard *may* have acted outside the scope of their employment, insofar as FMI's president, Michael Friedman, testified about the possibility in a deposition. CCSI Ans. Ex. A at 168:2-11. In support of Friedman's theory, he testified that: "I don't think Citigroup as the employer would necessarily want Mr. Gillard or Ms. Brown [*13] . . . to go ahead and inform attorneys to go ahead and violate the copyright law under their normal employment directives . . . but on the same token, they may very well be totally behind that issue. " *Id.* at 168:15-23. Notably, Friedman testified that his belief that Brown and Gillard may have acted beyond their scope of employment was "conjecture." *Id.* at 164:24-165:8.

This testimony does not constitute adequate fact pleading, and is speculation precluded under *Twombly. 127 S.Ct. at 1965*. Friedman's testimony does not proffer any concrete factual allegations that Brown and Gillard infringed on FMI's copyright for some improper personal purpose or that they acted outside the scope of their employment.

**V. CONCLUSION**

Citibank Federal Savings Bank, Citibank USA, N.A., Jeanette Brown, and John Gillard are dismissed from this case. Count IV is dismissed as to all remaining defendants.

/s/ Suzanne B. Conlon

Suzanne B. Conlon

United States District Judge

December 5, 2007