**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| C.S.B. COMMODITIES, INC., a New York corporation, | **CASE NO. 08 CV 1548** |
| Plaintiff, | Judge Robert M. Dow, Jr. |
| v. | Magistrate Judge Morton Denlow |
| URBAN TREND (HK) LTD., a foreign corporation, and ROBERT KUSHNER, individually, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT FOR LACK OF**
**PERSONAL JURISDICTION AND IMPROPER VENUE**

Defendants Urban Trend (HK) Ltd. ("Urban Trend"), a foreign corporation and Robert

Kushner ("Kushner"), individually (collectively, the "Defendants") move this Court to dismiss

this trade dress infringement action for lack of personal jurisdiction and improper venue under

Fed.R.Civ.P. 12(b)(2) and 12(b)(3).[1]

**I.    INTRODUCTION**

Plaintiff filed this trade dress infringement lawsuit in retaliation for its failure to secure an

exclusive distribution arrangement to market and sell Urban Trend's "Throwzini's Knife Block"

product, the very same product that it now accuses of infringing its unregistered trade dress.

Plaintiff filed its action in Illinois even though it does not reside in Illinois and Defendants are

not incorporated in, nor residents of Illinois.   Thus, Plaintiff asks the Court to find personal

jurisdiction over the Defendants and venue proper in Illinois, solely based on an allegation that

---

[1] Kushner also moves this Court to dismiss Plaintiff's Complaint against him individually for failure to state a claim under Fed.R.Civ.P. 12(b)(6) in a separate motion filed concurrently with the present motion.

Defendants maintain a website that is accessible in Illinois.  This is not enough to establish personal jurisdiction or venue on the face of the Complaint and Plaintiff's choice of forum is nothing more than a transparent effort to burden Defendants with the costs and inconvenience of litigating in an inconvenient forum, which is completely unrelated to Plaintiff, Defendants, and the subject matter of Plaintiff's lawsuit.  As set forth in the following sections,  Plaintiff's action must be dismissed because the Court lacks personal jurisdiction over the Defendants and venue is improper.

## II.     STATEMENT OF FACTS

### A.     Plaintiff's Jurisdictional Allegations.

Plaintiff C.S.B. Commodities, Inc. ("CSB") alleges that it is a New York corporation, having a principal place of business at 1400 Old Country Road, Suite 301A, Westbury, NY 11590.  (Plaintiff's Complaint ("Complaint"), attached hereto as **Exhibit 1**, at ¶ 1).  According to Plaintiff, "[v]enue is proper in this Court under 28 U.S.C. § 1391 because it is believed that Defendants own and operate a website accessible in this district, that Defendants use of the mark at issue in this district through the website and possibly otherwise, and that Defendants have thereby committed the acts of unfair competition complained of herein in this district." (Complaint, Ex. 1 at ¶ 6).   Plaintiff also alleges that "[u]pon information and belief, the Defendants have begun marketing and promoting the Throwzini knife holder in the United States, and have promised customers to deliver the Throwzini knife holders shortly." (Complaint, Ex. 1 at ¶ 21).

### B.     Plaintiff's Complaint Alleges No Facts Supporting Personal Jurisdiction Over Kushner in his Individual Capacity and Venue is Improper.

Importantly, the Complaint identifies the corporate defendant, Urban Trend, and not Kushner, as the party that "is in the business of selling novelty items" (Complaint, Ex. 1 at ¶ 13),

that "manufactures and/or markets [products]" (Complaint, Ex. 1 at ¶ 14), and that "...began marketing and using in interstate commerce a knife holder called the 'Throwzini'" (Plaintiff's Complaint, Ex. 1 at ¶ 15). The only references in the Complaint to Kushner in his individual capacity are: "[u]pon information and belief, defendant Robert Kushner ("Kushner") is an individual of unknown citizenship, believed to be residing in Hong Kong" (Complaint, Ex. 1 at ¶ 3); "[u]pon information and belief, Kushner is the individual at Urban Trend with the responsibility for selecting the products that Urban Trend manufactures and/or markets, and also stands to benefit personally from the decisions to manufacture and/or market any particular product" (Complaint, Ex. 1 at ¶ 14); and "[u]pon information and belief, Kushner was the individual at Urban Trend who made the decision to go forward with the manufacture and/or marketing of the Throwzini knife holder and thereby trade on the goodwill associated with the EX/VOODOO knife holder and the Human Figure Design" (Complaint, Ex. 1 at ¶ 19). None of these allegations identify any contacts by Kushner with Illinois or otherwise support the Court's exercise of personal jurisdiction over Kushner and venue is improper.

## III.    ARGUMENT

### A.    Legal Standards.

#### 1.    Standard governing motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

Pursuant to Rule 12(b)(2), a complaint must be dismissed if the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). ***Plaintiff bears the burden of establishing a prima facie case that personal jurisdiction is proper***. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). All jurisdictional allegations in the pleadings are taken as true unless contraverted by other evidence in the record. *Id.*; *Jamik, Inc. v. Days Inn of Mount*

*Laurel*, 74 F.Supp.2d 818, 821 (N.D. Ill. 1999).  Finally, a court can only consider a defendant's contacts up to the date the plaintiff filed suit for purposes of a court's personal jurisdiction and venue analysis.  *See Sportmart, Inc. v. Frisch*, 537 F.Supp. 1254, 1259 (N.D. Ill. 1982) (contacts occurring after the filing of the complaint "go beyond the period involved in the complaint and are thus jurisdictionally irrelevant").

> **2.     Standard governing motion to dismiss for improper venue under Fed. R. Civ. P.  12(b)(3).**

A complaint must also be dismissed pursuant to Rule 12(b)(3) where venue is not proper in the district in which the action was filed for all defendants and claims.    Fed. R. Civ. P. 12(b)(3).   Like personal jurisdiction, the **burden of establishing venue is on the plaintiff**. *Grantham v. Challenge-Cook Bros, Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969); Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 15 Federal Practice & Procedure § 8326 (2d ed. 1986).

> **B.     Plaintiff's Complaint Fails To Establish The Court's Jurisdiction Over The Defendants.**

Plaintiff's Complaint should be dismissed against Urban Trend and Kushner pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. A court's exercise of personal jurisdiction over a party must comply with the requirements of the Due Process Clause of the United States Constitution.  *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). The exercise of personal jurisdiction over a defendant comports with due process where "the defendant purposefully established 'minimum contacts' in the forum state" such that defendant "should reasonably anticipate being haled into court there."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (*quoting International Shoe*, 326 U.S. at 316; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The minimum contacts test contemplates two types of jurisdiction over the person: general and specific. General jurisdiction requires that a defendant have "continuous and systematic" contacts with the forum but not necessarily related to the cause of action. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-416 (1984); *RAR*, 107 F.3d at 1275. A showing of continuous and systematic contacts "is a fairly high standard." *Tamburo v. Dworkin*, 04CV3317, 2007 U.S. Dist. Lexis 75913, at * 7 (N.D. Ill. Oct. 9, 2007) (**Ex. 2**). To meet this high standard, a plaintiff has the burden to show that any business done by the defendants in Illinois is intentional, substantial, and continuous rather than inadvertent, trivial, or sporadic, that it continue up to the time of suit, and that it evidence a purpose on the part of the Defendants to avail themselves of the protection of the laws of Illinois. *Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 570 (7th Cir. 1989). Defendants' contacts must be extensive and persuasive and with a fair measure of permanence and continuity, not occasionally or casually. *LaSalle Nat'l Bank v. Vitro, Sociedad Anonima*, 85 F.Supp.2d 857, 861 (N.D. Ill. 2000); *Glass v. Kemper Corp.*, 930 F.Supp. 332, 338 (N.D. Ill. 1996).

Courts have identified a variety of factors that are relevant to the question of whether a corporation's activities constitute carrying on "continuous and systematic business" within a particular state, including the volume of the corporation's business in a state; whether the corporation maintains an office or employees within the state; whether the corporation sends agents into the state to conduct business, or advertises and solicits business in the state; and whether the corporation designates an agent for service of process in the state. *See generally Helicopteros*, 466 U.S. at 411-412; *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437,

445-446 (1952); *Travelers Cas. & Sur. Co. v. Interclaim Ltd.*, 304 F.Supp.2d 1018, 1024 (N.D. Ill. 2004).

Specific personal jurisdiction only exists if: (1) the defendant purposefully directs its activities at residents of the forum state, (2) the cause of action arises out of or is related to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair. *Burger King*, 471 U.S. at 472-473. In other words, there must be a relationship among the defendant, the forum, and the litigation. *Glass*, 930 F.Supp. at 339.[2] Under both general and specific jurisdiction, contacts are only relevant to a personal jurisdiction analysis when purposefully directed at the forum or its residents; random, fortuitious, or attenuated contacts do not count in the minimum contacts calculus. *Asset Allocation*, 892 F.2d at 570.

Because specific jurisdiction requires that the suit arise out of the defendant's specific contact with the forum, the analysis for determining whether a non-resident defendant is subject to specific jurisdiction requires a court to conduct a two-part inquiry; plaintiff must demonstrate (1) that jurisdiction is proper under the Illinois long-arm statute; and (2) that the exercise of personal jurisdiction over a defendant would not violate constitutional standards of due process. *United States v. Martinez De Ortiz*, 910 F.2d 376, 381 (7th Cir. 1990). As the Illinois long-arm statute has been construed as extending to the limits of due process, the two inquiries merge. *See* 735 ILCS 5/2-209(c). Accordingly, a court need not consider whether defendants engaged in any of the acts enumerated in the long-arm statute but, rather, the sole inquiry becomes whether the exercise of personal jurisdiction comports with due process.[3]

---

[2] The Supreme Court has delineated two means by which the requisite minimum contacts may be established for purposes of specific jurisdiction: (1) purposeful availment by the defendant of the laws of the forum state; and (2) harm to an individual within the state where the harm is both intentional and aimed at the forum state. *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987).
[3] The Illinois long-arm statute provides that an Illinois Court can exercise personal jurisdiction over nonresidents of Illinois on claims arising from, (1) the transaction of any business within Illinois, (2) the commission of a tortious

6

Finally, even if the plaintiff can show specific personal jurisdiction, a court must then determine whether the assertion of jurisdiction comports with "traditional [conceptions] of fair play and substantial justice." *Burger King*, 471 U.S. at 464. Factors considered in this inquiry are: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *World-Wide Volkswagen*, 444 U.S. at 292.

### 1.    Plaintiff's allegations are insufficient to confer general jurisdiction over Defendants in Illinois.

Plaintiff has not alleged any facts showing that Defendants have "continuous and systematic" contacts with Illinois to justify the application of general jurisdiction. Indeed, Plaintiff merely alleges that "venue is proper…because it is believed that Defendants own and operate a website accessible in this district, that Defendants use of the mark at issue in this district through the website and possibly otherwise, and that Defendants have thereby committed the acts of unfair competition complained of herein in this district." (Complaint, Ex. 1 at ¶ 6). These allegations are simply insufficient to demonstrate the level of "continuous and systematic" contacts with Illinois required to confer general jurisdiction over Defendants. Moreover, in pleading such thin allegations of jurisdiction without reference to continuous and systematic contacts, Plaintiff has waived any general jurisdiction argument and the Court should focus exclusively on specific jurisdiction. *See RAR*, 107 F.3d at 1277 (refusing to engage in a general

---

act within Illinois, and/or (3) any basis permitted by the U.S. and Illinois Constitutions. 735 ILCS 5/2-209(a)(1) & (2), 209(c).

jurisdiction analysis because plaintiff did not allege the contacts necessary to give rise to general jurisdiction).[4]

Plaintiff has simply failed to allege that Defendants have any contacts with Illinois whatsoever, let alone contacts of a continuous and systematic nature that would allow this Court to exercise general jurisdiction over Defendants. The Complaint does not allege any facts satisfying any of the general jurisdiction factors. Defendant, Urban Trend is a Hong Kong Company that is not incorporated or licensed to do business in Illinois and therefore does not have a registered agent in Illinois. (Complaint, Ex. 1 at ¶ 2). Plaintiff has failed to allege that Defendants have any offices, telephone lines, mailing addresses, or bank accounts in Illinois; that Defendants owns or leases any property, whether tangible or real in Illinois and that any of Urban Trend's employees or agents reside or are domiciled in Illinois. Nor did Plaintiff allege that Defendants have ever paid income taxes in Illinois or that Urban Trend manufactures any goods or any parts of its goods in Illinois. Finally, Plaintiff has failed to allege that Urban Trend directs or targets advertising or marketing specifically to residents of Illinois.

Here, Plaintiff only alleges that Urban Trend has a website, which is accessible in Illinois as the basis for this Court's jurisdiction. (Complaint, Ex. 1 at ¶ 6). Although the possibility of sales to Illinois residents may exist through the website, the law is clear that this alone is insufficient to warrant general jurisdiction. *See LaSalle*, 85 F.Supp.2d at 862 ("to hold that the possibility of ordering products from a website establishes general jurisdiction would effectively hold that any corporation with such a website is subject to general jurisdiction in every state. The court is not willing to take such a step") *quoting IDS Life Ins. Co. v. Sun America, Inc.*, 958

---

[4] Where a plaintiff has not alleged general jurisdiction over the defendant, the court need only consider whether the exercise of specific jurisdiction is proper. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Because the Complaint sets forth no allegations that this Court has general jurisdiction over Defendants, nor could the Complaint reasonably be so construed, this Court need not consider the propriety of exercising general jurisdiction over Defendants.

F.Supp. 1258, 1268 (N.D. Ill. 1997); *See Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 833 (N.D. Ill. 2000) ("the defendant's mere maintenance of an internet website is not sufficient activity to exercise general jurisdiction over the defendant" even though the defendant made several sales through its website to Illinois residents and it had contacts with Illinois suppliers"); *Tamburo*, 2007 U.S. Dist. Lexis 75913, at *8-9 (Ex. 2) (the mere maintenance of a website, even an interactive one through which orders may be placed by Illinois, "is not sufficient in itself to establish general jurisdiction over a foreign defendant"). Thus, this Court cannot exercise general personal jurisdiction over Defendants.

**2.     Plaintiff's allegations fail to support the exercise of specific jurisdiction over Defendants in Illinois.**

This Court also lacks specific jurisdiction over Defendants because Plaintiff has not pleaded that Defendants have minimum contacts with Illinois that give rise or are related to the suit.  In other words, Plaintiff has failed to allege any relationship among Defendants, the forum, and the litigation.  There is no allegation that Defendants have purposefully availed themselves of the benefits and obligations of Illinois law or that they harmed any individual within the state through any intentional conduct  aimed at the state.

The accused Throwzini product that provides the alleged basis for Plaintiff's federal false advertising/false designation claims and Illinois common law and statutory unfair competition claims is the pivotal focus in determining whether or not the allegedly infringing activities gave rise to Plaintiff's action.  *See Tamburo*, 2007 U.S. Dist. Lexis 75913, at *13 (Ex. 2) ("there must be a causal nexus between the transaction and the cause of action").  Since Plaintiff has not pleaded that Urban Trend had the requisite minimum contacts with Illinois with respect to the accused product, it cannot show that the present action "is related to or arises out of" such

requisite minimum contacts.  Thus, Plaintiff cannot carry its burden in establishing that this Court has specific personal jurisdiction over Defendants.

Indeed, Plaintiff's Complaint fails to allege a single business transaction by Urban Trend involving the Throwzini product targeted at Illinois or a resident of Illinois, nor does it allege that Urban Trend solicits or transacts any business at all with respect to the Throwzini product via Urban Trend's website such that a substantial connection between Urban Trend and Illinois could be established.  Plaintiff also fails to allege that Urban Trend has ever manufactured, sold, advertised, or solicited sales of the accused Throwzini product or parts thereof to residents of Illinois.  In fact, Plaintiff specifically pleaded that "[u]pon information and belief, the Defendants have begun marketing and promoting the Throwzini knife holder in the United States and have promised customers to deliver the Throwzini knife holders shortly."  (Complaint, Ex. 1 at ¶ 21). Notably absent from Plaintiff's Complaint is any allegation that Urban Trend directed its marketing of the Throwzini product at Illinois and actually sold and delivered the Throwzini product to an Illinois customer.

Plaintiff's sole jurisdictional allegation is that Urban Trend operates a website accessible in Illinois.  But this allegation alone does not confer specific personal jurisdiction over Urban Trend and most certainly does not confer jurisdiction over Kushner in his individual capacity.  In the Seventh Circuit, courts have adopted the "sliding scale" approach established by *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1123-24 (W.D. Pa. 1997); *See Berthhold Types Ltd. v. European Mikrograf Corp.*, 102 F.Supp.2d 928 (N.D. Ill. 2000).  The sliding scale approach divides websites into three categories: (1) Active-websites through which commercial business is conducted through the website in an interactive manner; (2) Passive-websites where information has been posted to the internet but does not provide for further online interaction;

and (3) Hybrid-websites that involved some interactivity.  *Berthhold*, 102 F.Supp.2d at 932.  In *Zippo*, the court explained that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet.  *Zippo*, 952 F.Supp at 1123-24 (exercise of personal jurisdiction is proper where a defendant clearly does business with residents of the forum state over the Internet, *i.e.*, the website is "interactive").

Here, Plaintiff has failed to allege any credible nexus between its claims and any transaction between the website and a resident of Illinois.  Several Illinois courts have rejected jurisdiction based on similar pleading defects.  *See e.g., Transcraft Corp. v. Doonan Trailer Corp.*, 97 CV 4943, 1997 U.S. Dist. Lexis 18687, at *26-27 (N.D. Ill. Nov. 12, 1997) **(Ex. 3)** (dismissing trademark and unfair competition action for lack of personal jurisdiction where plaintiff did not contend that defendant conducted any business with Illinois via the internet and defendant's website was not specifically intended to reach Illinois residents but was posted for a national audience); *Millenium Enterprises, Inc. v. Millenium Music, LP*, 33 F.Supp.2d 907, 920 (D. Or. 1999) (dismissing trademark and unfair competition action for lack of personal jurisdiction where defendants did nothing more than publish an interactive web site; defendant did not enter into any contracts with forum residents or conduct business in forum state through its website).[5]

Absent allegations of actual sales of the Throwzini product with Illinois residents, or the generation of revenue or profit through direct commercial transactions with Illinois residents involving the Throwzini product, or evidence that Illinois residents were specifically targeted, Plaintiff's Complaint is insufficient as the distinctions between general and specific jurisdiction

---

[5] To sell an infringing article to a buyer in Illinois is to commit a tort in Illinois sufficient to confer jurisdiction under the tort provision of the Illinois long arm statute. *See Lifeway Foods, Inc. v. Fresh Made, Inc.*, 940 F.Supp. 1316, 1320 (N.D. Ill. 1996 (intellectual property infringement takes place in the state of infringing sales).

become blurred and a plaintiff could sue a defendant in any forum and claim jurisdiction based solely on an active website. *Millenium,* 33 F.Supp.2d at 921 ("the fact that someone who accesses defendant's Web site can purchase a [product] does not render defendant's actions 'purposefully directed' at this forum").

Moreover, Plaintiff does not allege that Urban Trend's website is targeting Illinois residents. As a nexus between the website and Plaintiff's cause of action cannot be established there can be no specific jurisdiction. *Tamburo,* 2007 U.S. Dist. Lexis 75913, at *21 (Ex. 2) *citing Hy Cite Corp. v. Badbusinessbureau.com,* 297 F.Supp.2d 1154, 1160 (W.D. Wis. 2004); *Berthhold,* 102 F.Supp.2d at 934 (finding no specific personal jurisdiction because plaintiff failed to allege that defendants sold any infringing products in Illinois or that the contacts otherwise caused harm complained of).[6] As Defendants have not purposefully availed themselves of the privileges of conducting any business in Illinois with respect to the accused Throwzini product, this Court cannot exercise specific personal jurisdiction over Defendants.

But even if the Court found Plaintiff's jurisdictional allegations sufficient as to Urban Trend, Plaintiff's Complaint does not contain one allegation supporting this Court's exercise of personal jurisdiction over Kushner. For instance, Plaintiff's Complaint identifies Urban Trend, and not Kushner, as the party that "is in the business of selling novelty items" (Complaint at ¶ 13), that "manufactures and/or markets [products]" (Complaint, Ex. 1 at ¶ 14), and that "...began marketing and using in interstate commerce a knife holder called the 'Throwzini'" (Complaint, Ex. 1 at ¶ 15). Therefore, this Court cannot exercise personal jurisdiction over Kushner.[7]

---

[6] This conforms with the Supreme Court's decision in *Asahi* which states "placement of a product in the stream of commerce, without more, is not an act the defendant purposefully directed toward the forum state." *Asahi,* 480 U.S. at 112.

[7] Illinois recognizes the fiduciary shield doctrine. Therefore, in order to withstand Kushner's motion to dismiss for lack of personal jurisdiction, Plaintiff is also required to sufficiently plead that Kushner's alleged activity within Illinois was performed in a capacity other than as an officer or employee of Urban Trend . *Rice v. Nova Biomedical*

3. **The Court's exercise of specific personal jurisdiction over Defendants would violate traditional notions of fair play and substantial justice and fail to comport with due process.**

Assuming *arguendo*, that specific personal jurisdiction was appropriate, the exercise of personal jurisdiction over these defendants would not comport with federal and state due process. An exercise of personal jurisdiction would not be reasonable and fair because Urban Trend is a small Hong Kong Company that is not incorporated or licensed to do business in Illinois and, thus, has no registered agent in Illinois. (Complaint, Ex. 1 at ¶ 3). Defendant Kushner is a foreign citizen who resides in Hong Kong. (Complaint, Ex. 1 at ¶ 2). Plaintiff does not allege that Defendants have any offices, telephone lines, mailing addresses, or bank accounts in Illinois; that Urban Trend's employees or agents reside or are domiciled in Illinois; that Urban Trend manufactures any goods or any parts of its products in Illinois or that it directs or targets advertising or marketing specifically to residents of Illinois.

Additionally, Illinois has no interest in being the forum for this litigation. No parties are Illinois corporations or residents and there are no allegations that any Illinois residents purchased the accused product or were otherwise harmed in any fashion by the defendants' alleged activities. Moreover, this jurisdiction is not convenient to the parties, especially Defendants, whose witnesses and documents are likely located in Hong Kong. In sum, this Court lacks personal jurisdiction over Defendants and the Complaint should be dismissed against Urban Trend and Kushner for want of personal jurisdiction.

C. **This Action Should Be Dismissed Because Venue is Improper in this Court.**

This Court should also dismiss the lawsuit under Rule 12(b)(3) because venue is improper. Plaintiff alleges that venue is proper under 28 U.S.C. § 1391. But, venue in federal

---

*Corp.*, 38 F.3d 909, 912 (7th Cir. 1995). Plaintiff has failed to allege any such facts and Kushner's motion to dismiss for lack of personal jurisdiction should also be granted on this ground.

question cases, such as the instant case, is proper only: (1) in a judicial district where any defendant resides, if all defendants reside in the same state; (2) in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) in a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b). Further, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. *See* 28 U.S.C. § 1391(c); *Waeltz v. Delta Pilots Retirement Plan*, 301 F.3d 804, 810 (7th Cir. 2002). Courts have a substantial amount of discretion in determining venue in that they may focus on fairness and convenience of the parties as opposed to constitutional concerns. *See Phillips v. Seiter*, 173 F.3d 609 (7th Cir. 1999).

Plaintiff's allegations confirm that venue is not proper in this judicial district under § 1391. First, Kushner is a resident of Honk Kong and Urban Trend is a Hong Kong company with its principal place of business in Hong Kong (Complaint, Ex. 1 at ¶¶ 2, 3) and Plaintiff is a New York corporation (Complaint, Ex. 1 at ¶ 1). Plaintiff has not alleged that Defendants conduct any business activities in Illinois, or maintain any property in Illinois. Moreover, as discussed above, Plaintiff failed to allege that Defendants have ever manufactured, sold, advertised, or solicited sales of the accused Throwzini product or parts thereof to residents of Illinois or specifically targeted or pursued Illinois residents in advertising or marketing the accused products. Finally, Plaintiff failed to allege any credible nexus between its claims and any transaction between Urban Trend's website and a resident of Illinois. *See Dakota Beef, LLC v. Pigors*, 445 F.Supp.2d 917, 920 (N.D. Ill. 2006) (granting motion to dismiss for improper venue in trademark infringement action where one of defendants' websites was active and had

taken two unfulfilled orders from Illinois that were never shipped because those contacts were not enough to constitute a "substantial" part of the alleged infringement or to suggest that defendants had any meaningful contact with Illinois).    Accordingly, Plaintiff's Complaint should also be dismissed because venue is improper in Illinois.

## **CONCLUSION**

WHEREFORE, Defendants respectfully request that this Court dismiss Plaintiff's action for lack of personal jurisdiction and/or improper venue under Fed.R.Civ.P. 12(b)(2) and 12(b)(3).

Respectfully submitted,

*/s/Jeffrey G. Mote*

Jeffrey G. Mote
James J. Lukas, Jr.
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
Telephone: 312-456-8400
Fax: 312-456-8435

Counsel for Defendants URBAN TREND
(HK) LTD. and  ROBERT KUSHNER

# EXHIBIT 1

**FILED**

**MARCH 17, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**08 C 1548**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-----------------------------------------------------------x

C.S.B. COMMODITIES, INC.,

               Plaintiff,

      v.

URBAN TREND (HK) LTD., AND ROBERT KUSHNER,

               Defendants.

-----------------------------------------------------------x

Civil Action No. _____

**COMPLAINT
WITH JURY DEMAND**

**JUDGE DOW
MAGISTRATE JUDGE DENLOW**

     For its Complaint, Plaintiff C.S.B. Commodities, Inc. ("C.S.B." or "Plaintiff") alleges as follows:

**PARTIES**

     1.  C.S.B. is a New York corporation, having a principal place of business at 1400 Old Country Rd., Suite 301A, Westbury, NY 11590.

     2.  Upon information and belief, Defendant Urban Trend (HK) Ltd. ("Urban Trend") is a Hong Kong corporation, having a principal place of business at 31st Floor, Sunshine Plaza, 353 Lockhart Road, Wan Chai, Hong Kong.

     3.  Upon information and belief, defendant Robert Kushner ("Kushner") is an individual of unknown citizenship, believed to be residing in Hong Kong.   Urban Trend and Kushner are jointly referred to herein as "Defendants."

**JURISDICTION AND VENUE**

     4.  This is an action for federal unfair competition under 15 U.S.C. § 1125(a) and for unfair competition under Illinois common law and Illinois Statute 815 ILCS § 510.

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1338(b), and 15 U.S.C. §1121(a), and supplemental jurisdiction under 28 U.S.C. §1367(a).

6. Venue is proper in this Court under 28 U.S.C. § 1391 because it is believed that Defendants own and operate a website accessible in this district, that Defendants use of the mark at issue in this district through the website and possibly otherwise, and that Defendants have thereby committed the acts of unfair competition complained of herein in this district.

## GENERAL ALLEGATIONS

### A.   PLAINTIFF C.S.B.

7. For over thirty years, C.S.B. has been in the business of selling housewares and household goods, and has developed a reputation as a premier supplier of such goods.

8. Starting on or about August 31, 2005, C.S.B. began selling a new product, namely, a knife holder that incorporates a distinctive product configuration of a stylized human figure (the "Human Figure Design").  C.S.B. adopted the Human Figure Design to distinguish its knife holder from other knife holders on the market.  This knife holder featuring the Human Figure Design is sold under the trademark THE EX in the United States and under the trademark VOODOO elsewhere throughout the world (the "EX/VOODOO").  The EX/VOODOO is manufactured in a range of colors, but is most popular and well-known in red.  Attached as Exhibit "A" is a photograph of the EX/VOODOO knife holder.

9. The Human Figure Design of the EX/VOODOO knife holder is non-functional.

10. C.S.B. owns the trademark rights associated with the Human Figure Design.

11. From its first introduction into the market, the unique and distinctive Human Figure Design made the EX/VOODOO knife holder a sensation, garnering the product a great deal of press coverage and word of mouth.  C.S.B. has also promoted the EX/VOODOO knife holder

2

and the unique and distinctive shape of the Human Figure Design in advertisements and through

other marketing channels.   As a result, the Human Figure Design has acquired secondary

meaning.

12. Upon information and belief, the consuming public has come to associate, with a

single source, knife holders that incorporate as part of their design a stylized human figure.   That

source is C.S.B.

### B.   DEFENDANTS URBAN TREND AND KUSHNER

13. Upon information and belief, Urban Trend was incorporated in or about 1996.   Upon

information and belief, Urban Trend is in the business of selling novelty items.

14. Upon information and belief, Kushner is the individual at Urban Trend with the

responsibility for selecting the products that Urban Trend manufactures and/or markets, and also

stands to benefit personally from the decisions to manufacture and/or market any particular

product.

15. After C.S.B. began advertising and selling the EX/VOODOO, which features the

Human Figure Design, Urban Trend, without authorization from C.S.B., began marketing and

using in interstate commerce a knife holder called the "Throwzini."   The Throwzini utilizes a

design that is confusingly similar to the Human Figure Design.   The Throwzini knife holder

misappropriates the distinctive trade dress and product configuration of the EX/VOODOO knife

holder, namely, a stylized human figure.   The Throwzini knife holder has been shown in

advertisements in the same red color that is utilized by C.S.B. in its most popular version of the

EX/VOODOO knife holder.   A photograph of the Throwzini knife holder is attached as Exhibit

"B."

16. Upon information and belief, the Defendants knew of the EX/VOODOO knife holder and the Human Figure Design, and of the popularity of the EX/VOODOO knife holder, at the time they began to develop the Throwzini knife holder.

17. Upon information and belief, the Defendants' selection of the shape of the Throwzini knife holder was made with the knowledge that that shape was confusingly similar to the proprietary and distinctive product configuration of the EX/VOODOO knife holder and the Human Figure Design.

18. Upon information and belief, the Defendants' selection of the shape of the Throwzini knife holder, in the most popular color of the EX/VOODOO knife holder, was made with the intention of trading on the goodwill and product recognition that C.S.B. has developed in the EX/VOODOO knife holder and the Human Figure Design.

19. Upon information and belief, Kushner was the individual at Urban Trend who made the decision to go forward with the manufacture and/or marketing of the Throwzini knife holder and thereby trade on the goodwill associated with the EX/VOODOO knife holder and the Human Figure Design.

20. Upon information and belief, Kushner also stands to gain personally from the sales of the Throwzini knife holder.

21. Upon information and belief, the Defendants have begun marketing and promoting the Throwzini knife holder in the United States, and have promised customers to deliver the Throwzini knife holders shortly.

## COUNT I:
## FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

22. The allegations of paragraphs 1-21 of this Complaint are incorporated by reference herein.

23. Upon information and belief, the Defendants have marketed and used in interstate commerce the Human Figure Design used in connection with the Throwzini knife holder over the Internet and through other means in commerce that Congress may regulate.

24. The Defendants' Throwzini product configuration so resembles C.S.B.'s "Human Figure Design," as to be likely to cause confusion, or mistake, or to deceive consumers as to the affiliation, connection and/or association of Defendants and C.S.B., and as to the as to the origin, sponsorship, or approval of the Throwzini knife holder sold by Defendants, such that Defendants' conduct constitutes a false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

25. Members of the press and public have already been confused as to the source of the Throwzini knife holder, and have linked the Throwzini knife holder to the well-known EX/VOODOO knife holder.  Attached as Exhibit "C" are copies of several "blogs" from the Internet that have, for example, linked the Throwzini knife holder to "its predecessor," the EX/VOODOO knife holder.

26. Upon information and belief, the blogs shown in Exhibit "C" were created with the input and/or encouragement of the Defendants, whose purpose was to introduce the Throwzini knife holder to the public as a product related to the EX/VOODOO knife holder.

27. The Defendants' marketing and false and/or misleading descriptions and/or representations regarding  the Throwzini knife holder is likely to cause confusion, or to cause mistake, or to deceive consumers into believing that the Throwzini knife holder originates with the same source as the EX/VOODOO knife holder, namely C.S.B.

28. The Defendants' marketing and false and/or misleading descriptions and/or representations regarding the Throwzini knife holder is likely to cause confusion, to cause

mistake and/or to deceive as to the affiliation, connection and/or association of the source of the Throwzini knife holder with the source of the EX/VOODOO knife holder.

29. The Defendants' marketing and false and/or misleading descriptions and/or representations regarding the Throwzini knife holder is likely to cause confusion, to cause mistake and/or to deceive as to the origin, sponsorship and/or approval of the Throwzini knife holder by the source of the EX/VOODOO knife holder, *viz*. C.S.B.

30. Defendants' false and/or misleading descriptions and/or representations concerning the Throwzini knife holder are likely to influence consumers' purchasing decisions.

31. Defendants' false and/or misleading descriptions and/or representations concerning the Throwzini knife holder constitute false advertising and unfair competition in violation of 15 U.S.C. § 1125(a).

32. As a result of Defendants' conduct, C.S.B. has suffered and will continue to suffer monetary damages in an amount to be determined at trial, and jeopardizes the goodwill built up by C.S.B. in its EX/VOODOO knife holder and Human Figure Design, causing serious irreparable injury to C.S.B., its products, and its reputation, for which C.S.B. has no adequate remedy at law.

33. Defendants have profited from Defendants' false advertising and unfair competition.

34. Defendants' use of a product configuration confusingly similar to C.S.B.'s Human Figure Design, and Defendants' false and/or misleading descriptions and/or representations concerning the Throwzini knife holder was and is willful, knowing, malicious and/or intentional, thereby making this case exceptional under 15 U.S.C. § 1117(a).

## COUNT II:
## UNFAIR COMPETITION UNDER ILLINOIS COMMON LAW

35. The allegations of paragraphs 1-34 of this Complaint are incorporated by reference herein.

36. Defendants' acts complained of herein constitute unfair competition and deceptive trade practices under Illinois common law, because in the course of Defendants' business, Defendants have caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Defendants' Throwzini knife holder, and as to Defendants' affiliation, connection, and association with and certification by C.S.B.

37. Defendants' acts complained of herein constitute unfair competition and deceptive trade practices under Illinois common law also because Defendants have used deceptive representations in connection with the Throwzini knife holder and have engaged in other conduct which creates a likelihood of confusion or misunderstanding.

38. As a consequence of the Defendants' acts of unfair competition as aforesaid, Plaintiff has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

39. Defendants have profited from Defendants' unfair competition as aforesaid.

40. Defendants' unfair competition was and is willful, knowing, malicious, and/or intentional.

41. C.S.B. does not have a fully adequate remedy at law.

## COUNT III:
## UNFAIR COMPETITION UNDER ILLINOIS STATUTE 815 ILCS § 510

42. The allegations of paragraphs 1-41 of this Complaint are incorporated by reference herein.

43. Defendants' acts complained of herein constitute unfair competition and deceptive trade practices under 815 ILCS § 510, because in the course of Defendants' business, Defendants have caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Defendants' Throwzini knife holder, and as to Defendants' affiliation, connection, and association with and certification by C.S.B.

44. Defendants' acts complained of herein constitute unfair competition and deceptive trade practices under 815 ILCS § 510 also because Defendants have used deceptive representations in connection with the Throwzini knife holder and have engaged in other conduct which creates a likelihood of confusion or misunderstanding.

45. As a consequence of the Defendants' acts of unfair competition as aforesaid, Plaintiff has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

46. Defendants have profited from Defendants' unfair competition as aforesaid.

47. Defendants' unfair competition was and is willful, knowing, malicious, and/or intentional.

48. C.S.B. does not have a fully adequate remedy at law.

## JURY DEMAND

Pursuant to Rule 38(b), Fed. R. Civ. P., C.S.B. requests a trial by jury on all issues triable to a jury.

**WHEREFORE,** Plaintiff hereby demands judgment against the Defendants as follows:

A)    For an injunction immediately restraining Defendants, together with their respective officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in concert with them, pursuant to 15 U.S.C. § 1116(a) and any relevant Illinois state law provisions:

      1)      from selling, offering to sell, marketing, promoting, or advertising any goods and/or services bearing the Human Figure Design or any mark confusingly similar thereto, including such products as the Throwzini knife holder;

      2)      making or publishing any false and/or misleading descriptions and/or representations concerning Plaintiff and/or any false and/or misleading descriptions or representations, stating, suggesting or implying that Defendants' Throwzini knife holder is affiliated with, owned by and/or sponsored by Plaintiff; and

      3)      engaging in any other acts of unfair competition with Plaintiff;

B)      Directing Defendants to deliver up to Plaintiff all things in their possession bearing a description and/or representation of the Throwzini knife holder and/or any other designation likely to be confused with C.S.B., pursuant to 15 U.S.C. § 1118 and any relevant Illinois state law provisions;

C)      Directing Defendants to account for and pay over to Plaintiff all profits Defendants have obtained, received, or derived from selling, or offering to sell, the Throwzini knife holder, pursuant to 15 U.S.C. § 1117(a) and any relevant Illinois state law provisions;

D)      Awarding to Plaintiff all damages suffered by Plaintiff as a result of the Defendants' acts of false advertising and unfair competition, pursuant to 15 U.S.C. § 1117(a) and any relevant Illinois state law provisions;

E)      Awarding to Plaintiff up to three times Plaintiff's damages and/or Defendants' profits, pursuant to 15 U.S.C. § 1117(a) and any relevant Illinois state law provisions;

F)      Declaring that this case is "exceptional" and awarding to Plaintiff the attorneys'

fees it has incurred in investigating, bringing, and prosecuting this action, pursuant to 15 U.S.C.

§ 1117(a) and any relevant Illinois state law provisions;

G)      Awarding Plaintiff the costs and disbursements of this action; and

H)      Awarding Plaintiff pre- and post-judgment interest on any monetary award,

including any attorneys' fee award.

I)      Awarding to Plaintiff punitive damages pursuant to any relevant Illinois state law

provisions;

J)      Awarding to Plaintiff such other, further or different relief in its favor and against

Defendants as this Court may deem just and proper.


Dated: March 17, 2008                    LEYDIG, VOIT & MAYER, LTD.


                                         s/  Steven H. Sklar
                                         Steven H. Sklar (IL Bar No. 6238119)
                                         Two Prudential Plaza
                                         180 North Stetson Avenue, Suite 4900
                                         Chicago, IL 60601-6731
                                         Tel: (312) 616-5600
                                         Fax: (312) 616-5700


                                         COHEN PONTANI LIEBERMAN & PAVANE LLP
                                         Lisa A. Ferrari
                                         Roger S. Thompson
                                         551 Fifth Avenue, Suite 1210
                                         New York, NY  10176
                                         Tel. (212) 687-2770
                                         Fax. (212) 972-5487

                                         *Attorneys for Plaintiff*
                                         *C.S.B. Commodities, Inc.*

EXHIBIT 2

LEXSEE 2007 US DIST LEXIS 75913

**JOHN F. TAMBURO, d/b/a MAN'S, BEST FRIEND SOFTWARE and VERSIT CORPORATION, Plaintiff, v. STEVEN DWORKIN; KRISTEN HENRY; ROXANNE HAYES; KAREN MILLS; WILD SYSTEMS PTY. LTD, an Australian corporation, Defendants.**

**Case No. 04 C 3317**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2007 U.S. Dist. LEXIS 75913*

**October 9, 2007, Decided
October 9, 2007, Filed**

**COUNSEL:** [*1] For John F Tamburo, Versity Corporation, Plaintiffs: Ian Brenson, Law Offices of Ian Brenson, La Grange, IL.

For Steven Dworkin, Kristen Henry, Roxanne Hayes, Karen Mills, Wild Systems, Pty. Ltd., an Australian Corporation, Defendants: Charles Lee Mudd, Jr, LEAD ATTORNEY, Heidi Irene Schmid, Mudd Law Offices, Chicago, IL.

For Yahoo! Inc., deponent: David Tonisson, Natalie J. Spears, Sonnenschein, Nath & Rosenthal, LLP, Chicago, IL; Marc J. Zwillinger, Sonnenschein, Nath & Rosenthal, LLP, Washington, DC.

**JUDGES:** JOAN B. GOTTSCHALL, United States District Judge.

**OPINION BY:** JOAN B. GOTTSCHALL

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Defendants Steven Dworkin, Kristen Henry, Roxanne Hayes, Karen Mills, and Wild Systems Pty. Ltd. have filed this motion to dismiss plaintiffs John F. Tamburo and Versity Corporation's sixth amended complaint alleging lack of personal jurisdiction and failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion to dismiss for

lack of personal jurisdiction is granted and the motion to dismiss for failure to state a claim upon which relief can be granted is denied as moot.

**BACKGROUND**

Plaintiffs John F. Tamburo ("Tamburo") d/b/a Man's Best Friend Software ("MBFS") [*2] and Versity Corporation ("Versity") have sued four individuals, who are not citizens of Illinois, and an Australian corporation under numerous legal theories for losses MBFS allegedly incurred arising out of disputes as to ownership of the contents of online dog pedigree databases. [1] Presently before the court is the defendants' joint motion to dismiss plaintiffs' sixth amended complaint, which argues that the court lacks general or specific personal jurisdiction over the defendants. Further, the defendants allege that the plaintiffs have failed to state claims upon which relief can be granted and that therefore the complaint should be dismissed pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure.*

> 1 A more detailed version of the facts of this case can be found in the court's orders addressing defendant's motions to dismiss the plaintiffs' first through fifth amended complaints and need not be further rehearsed herein.

**Personal Jurisdiction**

In cases based upon diversity of citizenship, federal district courts sitting in Illinois have personal jurisdiction

over nonresident defendants only to the extent that Illinois courts would have jurisdiction. [2] *Edelson v. Ch'ien, 352 F. Supp. 2d 861, 865-66 (N.D. Ill. 2005);* [*3] *Interlease Aviation Investors LLC v. Vanguard Airlines, Inc., 262 F. Supp. 2d 898, 905 (2003); See also DeLuxe Ice Cream Co. v. R.C.H. Tool Corp., 726 F.2d 1209, 1212 (7th Cir. 1984).* In Illinois, courts have personal jurisdiction over nonresident defendants if permitted by: (1) Illinois statutory law; (2) the Illinois Constitution; and (3) the Constitution of the United States. *Id.*

  2   In their complaint, plaintiffs also allege claims arising under federal law, *viz.,* seeking declaratory judgment *28 U.S.C. § 2201* (Count 1) and violation of federal antitrust statutes, *15 U.S.C. § 1 et seq.* (Count 11). In its order of August 3, 2006 concerning defendants' motion to dismiss plaintiffs' fifth amended complaint, the court noted that the there is considerable uncertainty, reflected in a circuit split, as to whether the Sherman Act authorizes nationwide service of process when suit is brought in a district other than that where the defendant resides, is found, or transacts business, and the resulting impact of that uncertainty upon the potential personal jurisdiction of the court over the defendants in this case (the Seventh Circuit has not yet held upon the issue). *See Sanderson v. Spectrum Labs, 248 F.3d 1159 (Table) 2000 U.S. App. LEXIS 34058, 2000 WL 1909678 at *3 (7th Cir. Dec. 29, 2000)* [*4] (declining to decide the issue); *see also and compare GTE Media Servs., Inc. v. Bellsouth Corp., 339 U.S. App. D.C. 332, 199 F.3d 1343, 1351 (D.C. Cir 2000) with Go-Video, Inc. v. Akai Elec. Co., 885 F.2d 1406, 1414-16 (9th Cir, 1989).* Moreover, the Act authorizes worldwide service of process only on corporations and not on private individuals, and thus applies only to defendant Wild Systems Pty. Ltd. *15 U.S.C. § 22, see also United Phosphorus, Ltd. v. Angus Chemical Co., 43 F. Supp. 2d 904, 911 (N.D. Ill. 1999).* The court directed the defendants to file a renewed motion to dismiss for lack of personal jurisdiction addressing whether the federal antitrust statutes authorize nationwide service of process in this case. Neither the defendants nor the plaintiffs, in their response, have substantially briefed this issue with respect to the motion under consideration. In view of the court's resolution of

the personal jurisdiction issues in this order, there is no need at this time to resolve the issue of whether worldwide service of process is permitted.

  The Illinois long-arm statute currently extends personal jurisdiction to the limit permitted by the Illinois Constitution and the Constitution of the United States. [*5] *735 ILCS 5/2-209(c); See also Vanguard Airlines, 262 F. Supp. 2d at 905* (citing *LaSalle Bank Nat'l Ass'n v. Epstein, No. 9 C 7820, 2000 U.S. Dist. LEXIS 3142, 2000 WL 283072 at *1 (N.D. Ill. Mar 9, 2000).* Moreover, the Seventh Circuit has stated that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction" and that not since the Illinois Supreme Court's 1990 *Rollins* decision has an Illinois court encountered a case in which federal due process requirements permitted personal jurisdiction and Illinois due process requirements prohibited it. *Hyatt International Corp. v. Coco, 302 F. 3d 707, 715-16 (7th Cir. 2002).* Thus, the three requirements for personal jurisdiction collapse into a single analysis. Consequently, other courts of the Seventh Circuit have conducted only a federal due process analysis in determining whether personal jurisdiction may be exerted over nonresident parties. *Vanguard Airlines, 262 F. Supp. 2d at 906* (citing *Cont'l Cas. Co. v. Marsh, No. 01 C 0160, 2002 U.S. Dist. LEXIS 24534, 2002 WL 31870531 at *4 (N.D. Ill. Dec. 23, 2002)); United Fin. Mortgage Corp. v. Bayshores Funding Corp., 245 F. Supp. 2d 884, 891-92 (N.D. Ill. 2002)).*

  Federal [*6] due process requirements prescribe that nonresident defendants have sufficient minimum contacts with the forum state such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Hyatt, 302 F.3d at 713* (quoting *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).* The standard of "minimum contacts" depends upon whether general or specific personal jurisdiction is alleged. *Vanguard Airlines, 262 F. Supp. 2d at 906* (citing *RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1277 (7th Cir. 1997).* The defendants' motion to dismiss argues that this court has neither general nor specific personal jurisdiction over any of the defendants, all of whom are nonresidents. The court addresses each type of jurisdiction in turn for each defendant.

### General Personal Jurisdiction

For purposes of personal jurisdiction under the Illinois long-arm statute, general jurisdiction applies only when a nonresident defendant has had continuous and systematic general business with the forum state such that it demonstrates a purpose on the part of the defendant to avail herself of the protection of Illinois law. *RAR, 107 F.3d at 1277*; *First Nat'l Bank v. El Camino Resources, Ltd., 447 F. Supp 2d 902, 906 (N.D. Ill. 2006).* [*7] Although there is no "bright line rule" for determining whether a defendant's business contacts with the forum are continuous and systematic, the standard is quite high; requiring a showing that the defendant is conducting business that is fairly permanent and continuous, and of such character and extent as to justify the inference that the defendant has subjected himself to the jurisdiction and laws of the forum. *Laiquat Khan v. Van Remmen, Inc., 325 Ill. App. 3d 49, 756 N.E.2d 902, 907, 258 Ill. Dec. 628 (Ill. App. Ct. 2001)*; *Alderson v. Southern Co., 321 Ill. App. 3d 832, 747 N.E.2d 926, 940, 254 Ill. Dec. 514 (Ill. App. Ct. 2001).* Thus, the Illinois long-arm statute demands a "course of business" or "regularity of activities" as opposed to isolated or sporadic contacts or transactions. *Alderson, 747 N.E.2d at 940* (quoting *Gaidar v. Tippecanoe Distribution Serv., Inc., 702 N.E.2d 316, 320, 299 Ill. App. 3d 1034, 234 Ill. Dec. 150 (Ill. App. Ct. 1998)*; *Radosta v. Devil's Head Ski Lodge, 172 Ill. App. 3d 289, 526 N.E.2d 561, 564, 122 Ill. Dec. 302 (Ill. App. Ct. 1988)).*

Moreover, although a plaintiff need only make a prima facie case demonstrating general personal jurisdiction, it is not enough that a plaintiff simply allege that the defendant has such a connection when the defendant presents facts to the contrary, and it is not acceptable to require [*8] a nonresident to defend herself against a claim when she has alleged facts which, if true, would negate the jurisdiction, without determining what the facts are. *TCA Intern., Inc. v. B & B Custom Auto, Inc., 299 Ill. App. 3d 522, 701 N.E.2d 105, 113, 233 Ill. Dec. 462 (Ill. App. Ct. 1998).*

### Defendant Wild Systems Pty. Ltd.

Defendant Wild Systems Pty. Ltd. ("Wild") is a corporation organized under the laws of Australia. Wild's products are sold via a website (www.breedmate.com) ("Breedmate") through which its breeding and bloodline database products may be purchased online. Wild does not have an Illinois distributor or agent, and approximately 1% of Wild's sales via its website are to customers located in Illinois. No facts have been adduced by the plaintiffs to suggest that Wild's website is targeted deliberately or specifically at Illinois consumers. Generally, the mere maintenance of a website, even an interactive one through which orders may be placed, is not sufficient in itself to establish general jurisdiction over a foreign defendant. *Euromarket Designs, Inc. v. Crate & Barrel, Ltd., 96 F.Supp.2d 824, 833 (N.D. Ill. 2000)*; *Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).* Thus, Wild's maintenance [*9] of a website through which products may be ordered by Illinois customers does not constitute, in itself, sufficiently continuous and systematic business activity to establish general jurisdiction by this court.

### Defendant Dworkin

Plaintiffs allege that defendant Steven Dworkin ("Dworkin") is engaged in the business of breeding dogs and registering them with the American Kennel Club ("AKC"), a New York corporation. Plaintiffs allege, *inter alia,* that Dworkin's dogs have competed in sundry dog shows in the United States, that Dworkin has sold dogs to individuals in the United States and maintains an email address through which he corresponds with individuals in the course of such business, and that Dworkin has maintained an "interactive" website (www.keesdog.com). Nowhere, however, do they allege that Dworkin has had any continuous and systematic contact, or even a single business transaction, with even a single individual in the state of Illinois. Absent an allegation of continuous and systematic business activity with even so much as a single customer, this court that cannot find that it may exert general jurisdiction over Dworkin.

### Defendants Henry, Mills, and Hayes

As with Dworkin *supra,* [*10] Plaintiffs allege that Kristen Henry ("Henry"), Karen Mills ("Mills"), and Roxanne Hayes ("Hayes") are in the business of breeding dogs within the United States and registering them with the AKC. Plaintiffs further allege that Henry, Mills, and Hayes have individually shown their dogs in multiple shows in Illinois and may individually have sold some of their dogs to customers in Illinois. However, no facts have been adduced by the plaintiffs to suggest that Henry's, Mills' or Hayes' occasional dog show exhibitions, or their occasional sales of dogs to Illinois residents, are targeted deliberately or specifically at Illinois consumers. Transactions occurring merely

casually or in isolation are not sufficient to rise to the level of permanence and continuity requisite to establish general jurisdiction in Illinois. *Bolger v. Nautica Int'l, Inc., 369 Ill. App. 3d 947, 861 N.E.2d 666, 670, 308 Ill. Dec. 335 (Ill. App. Ct. 2007)*; *Recycling Sciences Int'l, Inc v. Soil Restoration and Recycling, LLC, 159 F. Supp. 2d 1095, 1098 (N.D. Ill. 2001)*. Since plaintiffs do not allege facts that establish continuous and systematic business activity targeted at citizens of Illinois, but merely occasional opportunistic sales and exhibitions [*11] at dog shows located in Illinois, the court cannot find that general jurisdiction can be exerted over Henry, Mills, or Hayes.

**Specific Personal Jurisdiction**

Under the Illinois long-arm statute, a court may exert specific jurisdiction over a nonresident defendant if the defendant has (1) purposefully established minimum contacts with the state; (2) if the cause of action arises out of, or is related to, the defendant's contacts with the forum; and (3) if the exertion of jurisdiction is constitutionally reasonable. *United Phosphorus Ltd. v. Angus Chemical Co., 43 F. Supp. 2d 904, 912 (N.D. Ill. 1999)*; *RAR, 107 F.3d at 1277*; *Logan Products v. Optibase, 103 F.3d 49, 52 (7th Cir. 1996)*. The United States Supreme Court has delineated two means by which the requisite minimum contacts may be established for purposes of specific jurisdiction: (1) purposeful availment by the defendant of the benefits and protections of the laws of the forum state; and (2) harm to an individual within the state where the harm is both intentional and aimed at the forum state. *Hy Cite Corp. v. BadBusinessBureau.Com, 297 F. Supp. 2d 1154, 1163 (W.D.Wis. 2004)* (citing *Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 109, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)*; [*12] *Calder v. Jones, 465 U.S. 783, 788-90, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984))*.

Plaintiffs have argued that the facts alleged in the discussion *supra* concerning general jurisdiction are also sufficient to permit this court to exert specific jurisdiction over each of the defendants: Wild because of its business transacted with Illinois citizens via its Breedmate website; and Henry, Mills, and Hayes via their occasional participation in dog shows in Illinois and alleged isolated sales of their dogs to Illinois citizens. Plaintiffs, in their complaint, have failed to allege a single business transaction by Dworkin targeted at a citizen of Illinois,

nor do they allege that Dworkin transacts any business at all via his "interactive" website.

A single business transaction, or even a solicitation of business, may be sufficient to establish specific jurisdiction by an Illinois court over a nonresident defendant. *Traveler's Health Ass'n v. Commonwealth of Virginia ex rel. State Corp. Comm'n, 339 U.S. 643, 648, 70 S. Ct. 927, 94 L. Ed. 1154 (1950)*; *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc., 906 F.2d 276, 281 (7th Cir. 1990)*; *J. Walker & Sons v. DeMert & Dougherty, Inc., 821 F.2d 399, 402 (7th Cir. 1987)*. However, plaintiffs' claim [*13] that these isolated and individual contacts are sufficient to establish specific jurisdiction over the defendants is a red herring. To establish specific jurisdiction, even a single transaction by the defendant must (1) give rise to the cause of action that is the basis of the suit; and (2) be one by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state and voluntarily invokes the benefits and protections of Illinois law. *Dilling v. Sergio, 263 Ill. App. 3d 191, 635 N.E.2d 590, 594, 200 Ill. Dec. 251 (App. Ct. Ill. 1990)*. Thus, there must be a causal nexus between the transaction and the cause of action. *See Hy Cite, 297 F. Supp. 2d at 1165-65*.

The claims asserted by the plaintiffs in their complaint do not arise from, nor are they in any way related to, defendants Henry's, Mills', and Hayes' alleged sales of dogs to citizens of Illinois, nor from their occasional appearances at Illinois dog shows. Nor do they arise from, nor are they related to, Wild's internet sales of canine bloodline software to sundry Illinois citizens. Rather, the plaintiffs claim that the source of their alleged injuries are statements posted to various internet bulletin boards and email user's [*14] lists and on Henry's, Mills', and Hayes' noncommercial pedigree database websites. As such, even if the defendants' contacts with Illinois were sufficient to establish minimum contacts, the crucial nexus between the various transactions and the plaintiffs' claims is absent. Therefore, those transactions cannot form the basis of specific jurisdiction over the defendants.

The question of specific jurisdiction thus turns on whether the posting of the alleged injurious statements on internet bulletin boards and on the defendants' pedigree websites constitutes sufficient minimum contact with Illinois so as to justify the court's exerting specific

jurisdiction over the defendants.

Internet Chat Groups and Specific Jurisdiction

Plaintiffs allege that defendants Dworkin, Henry, Mills and Hays circulated public messages to "numerous Internet chat groups" allegedly accusing plaintiffs of "theft", "selling stolen goods," and "hacking." Plaintiffs' Memorandum of Law in Opposition to Defendants' Third Motion to Dismiss, p. 3. However, the posting of allegedly injurious messages to public internet chat groups is insufficient, in and of itself, to establish minimum contacts with Illinois adequate to [*15] justify the exertion of specific jurisdiction. *Kovacs v. Jim, No. 02 C 7020, 2002 U.S. Dist. LEXIS 21787, 2002 WL 31507172 at \*2 (N.D. Ill. Nov. 12, 2002)*.

The Seventh Circuit has not yet directly addressed the issue of specific jurisdiction arising from internet use, but most courts have followed the "sliding scale" analysis established in *Zippo Mfg. Co. v. Zippo Dot Com, Inc. 952 F. Supp. 1119, 1123-24 (W.D.Pa. 1997); See, e.g.. Jackson v. California Newspaper Partnership, 406 F. Supp. 2d 893, 897 (N.D. Ill. 2005); Bombliss v. Cornelsen, 355 Ill. App. 3d 1107, 824 N.E.2d 1175, 1180, 291 Ill. Dec. 925 (Ill. App. Ct. 2005); Euromarket Designs, 96 F.Supp.2d at 837-38; Watchworks, Inc. v. Total Time, Inc., No. 01 C 5711, 2002 U.S. Dist. LEXIS 4491, 2002 WL 424631 at \*5; School Stuff, Inc. v. Sch Stuff, Inc., No. 00 C 5593, 2001 U.S. Dist. LEXIS 23382, 2001 WL 558050 at \*3 (N.D. Ill. May 21, 2001); but see Hy Cite, 297 F. Supp. 2d at 1160 (interactivity of a website cannot form the basis for personal jurisdiction unless a nexus exists between the website and the cause of action or unless contacts are systematic and continuous)*.

Under the *Zippo* analysis, a given website occupies a position on a spectrum ranging from "interactive" to "passive." Interactive websites are those wherein contracts are completed online [*16] with residents of a foreign jurisdiction, and the defendant receives profit directly from web-related activity. *Euromarket Designs, 96 F.Supp.2d at 837* (citing *Zippo, 952 F. Supp. at 1124*). Such websites have been generally found to be purposefully directing their business activities at the forum state, and courts in the forum state can therefore exert specific jurisdiction. *Euromarket Designs, 96 F.Supp.2d at 837*. At the opposite end of the spectrum are purely passive websites in which a defendant has simply posted information regarding their company or activities

on an Internet website which is accessible to users in foreign jurisdictions; generally these are held to be insufficiently directed at the forum state to result in the exertion of specific jurisdiction. *Id. at 838*. In between these two ends of the spectrum are interactive websites where a user can exchange information with the host computer. *Id. at 837*. In such cases, the level of interactivity is measured "by examining the level of interactivity and the commercial nature of the exchange of information that occurs on the Website." *Id.* (quoting *Zippo, 952 F. Supp. at 1124*).

With respect to the position of the internet chat [*17] room and e-mail discussion lists on the sliding scale, such internet forums would appear to be located even below the bottom limits of the passive category. *Kovacs, No. 02 C 7020, 2002 U.S. Dist. LEXIS 21787, 2002 WL 31507172 at \*2*. The plaintiffs make no claim that the defendants are owners or operators of the chat rooms [3], that they use them to transact business directly, or that they are targeted specifically at Illinois citizens. Defendants' activity, rather, consists of posting public messages to the internet sites from their respective locations outside of Illinois, permitting those with access to the sites to read the material. *Id.* Were this to be a basis for specific jurisdiction, such jurisdiction would be ubiquitous because access to a given website is not limited by geography. *See, e.g., Hy Cite, 297 F. Supp. 2d at 1159; Digital Control, Inc., v. Boretronics, Inc., 161 F. Supp. 2d 1183, 1186 (W.D.Wash. 2001); Millenium Enterprises, Inc. v. Millenium Music, LP, 33 F. Supp. 2d 907, 922 (D.Or. 1999)*.

3    The public chat rooms and internet discussion lists named by plaintiff Tamburo in his affidavit are    breedmate@yahoogroups.com    and apdug@yahoogroups.com,, keeshond-1@apple.ease.lsoft.com,    Although individuals [*18] may be referred to other domains to purchase products, no business transactions are carried out directly through these discussion groups.

Defendants' Websites and Specific Jurisdiction

With respect to the defendants' websites, although both sides agree that the websites are interactive, they disagree on the degree of interactivity and whether the websites are commercial.

Defendant Henry's website

Henry's website is characterized by both plaintiffs and defendants as "partly interactive" (falling somewhere in the middle of the *Zippo* spectrum) because it "permits people to enter and search for animal pedigrees". Plaintiffs' Memorandum of Law in Opposition to Defendants' Third Motion to Dismiss, p. 18; *See Bombliss, 824 N.E.2d at 1180*. The court disagrees. According to *Bombliss,* such partial interactivity requires that customers in foreign jurisdictions be able to communicate regarding the defendant's services or products. *Id.* On the face of plaintiffs' claims, and their response to this motion, the only functions of the website are to allow individuals to retrieve information concerning pedigree lines. Entering search delineators does not rise to the level of communication concerning products [*19] or services; it merely serves as a convenience for website visitors in locating the desired specific information, much as an index would. Since it fails to meet the intermediate interactivity requirements of the Zippo analysis, Henry's website must be considered passive and therefore specific jurisdiction cannot arise from any putative contacts between citizens of Illinois and the website.

Defendants Hayes' and Mills' Websites

Plaintiffs further contend that Hayes' and Mills' websites are fully interactive and therefore that Hayes and Mills are therefore subject to this court's specific jurisdiction. A "fully interactive" website is one in which contracts are completed online with residents of a foreign jurisdiction, and the defendant receives profit directly from web-related activity. *Euromarket Designs, 96 F.Supp.2d at 837* (citing *Zippo, 952 F. Supp. at 1124*). Plaintiffs base these claims on the assertion that both Hayes and Mills solicit donations to assist in defraying operating expenses, and that Hayes provides sequential preference in adding pedigree data to her site to individuals who donate to the site.

However, in the case of Mills, her website upon which the allegedly tortious [*20] statements were made (www.patriotgold.com) ("patriotgold") is not the same as that which plaintiffs claim is fully interactive because it solicits donations (www.poodlepedigree.com) ("poodlepedigree"); rather it is merely linked to it. Plaintiffs do not assert any facts to support their contention that the patriotgold website is fully, or even partially, interactive, apart from the link to the poodlepedigree site.

It is more reasonable to locate all of these websites in the middle of the *Zippo* spectrum. Such sites "allow visitors to post messages (to which [d]efendants sometimes respond) ... and make donations." *George S. May Intern'l Co. v. Xcentric Ventures, LLC, 409 F. Supp. 2d 1052, 1059 (N.D.Ill 2006)*. For such websites, "the likelihood that personal jurisdiction can be exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet." *Zippo, 952 F. Supp. at 1124*.

Plaintiffs' attempts to characterize Hayes' and Mills' websites as being "commercial" in nature are misleading. No products or services are sold via the websites. None of the websites *requires* payment for providing uploading pedigree information into the database [*21] or for pedigree analysis. Although they solicit donations to assist in the support of the various websites (and, in the case of Hayes, provides sequential preference to donors in uploading their pedigree information), any such donation is strictly voluntary. Plaintiffs do not allege that payment is required, or even expected, for access to the defendants' databases. However, even in the unlikely eventuality that the websites could be considered to be commercial, and to require payment in return for services provided, plaintiffs have failed once again to allege any credible nexus between the alleged tortious acts of the defendants and any transaction occurring between the defendants and a citizen of Illinois. If such a nexus cannot be established between the website and the cause of action there can be no specific jurisdiction. *Hy Cite, 297 F. Supp. 2d at 1160*.

Finally, the court notes that the Illinois Court of Appeals has recently affirmed on appeal a decision from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois concerning a virtually identical case involving alleged tortious statements made against plaintiffs Tamburo and MBFS on a nonresident defendant's partially [*22] interactive website. *Tamburo v. Andrews,* No. 3-06-0347 slip op. at 8 (Ill. App. Ct. June 15, 2007). The circuit court granted the defendant's motion to dismiss on grounds of lack of specific personal jurisdiction, and the court of appeals affirmed. *Id.*

Because plaintiffs have failed to establish a nexus between the defendants' allegedly tortious acts and any commercial transactions between the defendants and Illinois citizens, the court cannot establish specific personal jurisdiction over the defendants.

Case 1:08-cv-01548    Document 21-3    Filed 05/07/2008    Page 8 of 9

Page 7
2007 U.S. Dist. LEXIS 75913, *22

**The "Effects Test"**

Next, plaintiffs claim that because the defendants have allegedly committed an intentional tort against Illinois citizens (the plaintiffs) and because the resulting alleged injury occurred in Illinois, this court should exert personal jurisdiction over the defendants. The plaintiffs cite *Vanguard Airlines* as their sole authority for this claim. *262 F. Supp. 2d 898, 911.* However, Plaintiffs' reliance on *Vanguard* is misplaced. The intentional tort in *Vanguard* was coupled with a business transaction between the nonresident defendants and an Illinois corporation, involving multiple contacts and connections between the two parties sufficient to establish minimum contacts [*23] between the defendants and Illinois. *Id. at 909-10.* No such connections or transactions have been established by the plaintiffs in the instant case.

The Seventh Circuit has spoken directly to this issue in *Wallace v. Herron:* "We do not believe ... that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff." *778 F.2d 391, 394 (7th Cir. 1985).* To do so, continued the court, "would significantly undercut our traditional due-process protection for out-of-state defendants." *Id.* The court continued by saying that the so-called "effects test" is merely another way of establishing the defendant's relevant contacts with the forum state: the defendant must still purposefully avail himself of the privilege of conducting activities within the forum state, and invoking the benefits and protections of its laws. *Id.* (citing *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).* And in *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship,* the Seventh Circuit noted that in all other cases which had come to its attention, [*24] the defendants had done more than brought about an injury to an interest located in the particular state. *34 F.3d 410, 412 (7th Cir. 1994).*

Thus, in *May,* the defendant's website actively conducted business in Illinois, and the defendant had negotiated business arrangements with Illinois entities in addition to the intentional torts alleged, thus establishing sufficient minimum contacts. *409 F. Supp. 2d at 1059.* In *Bombliss,* the plaintiffs had established minimum contacts emerging from a transaction with the defendants out of which the alleged tortious acts arose. *824 N.E.2d at*

*1181.* And in *Euromarket Designs,* minimum contacts arose, *inter alia,* via the defendant's fully interactive retail website displaying the defendant's trademark name and otherwise directing business at Illinois. *96 F.Supp.2d at 840.*

As has been discussed *supra,* the plaintiffs have failed to plead facts adequately alleging minimum contacts between the defendants and Illinois. The mere fact that they assert that the defendants have asserted an intentional tort against the plaintiff is insufficient to sustain the exertion of personal jurisdiction.

**Conspiracy Jurisdiction**

Plaintiffs additionally allege a civil conspiracy between [*25] the defendants to drive the plaintiffs out of business. Plaintiffs allege that defendants devised a private mailing list on the Internet Service Provider Yahoo!, Inc., with the email address apdug@yahoogroups.com ("APDUG") [4]. Plaintiffs allege that defendants created the list to coordinate their efforts in attacking plaintiffs and claim that subpoenaed documents obtained by the plaintiffs have revealed allegedly defamatory emails directed at the plaintiffs. Defendant Henry has testified in her affidavit that the purpose of APDUG was for users of the Alfirin pedigree software to discuss technical issues.

> 4    APDUG is an acronym for Alfirin Pedigree Database Users Group.

Civil conspiracy consists of a combination of two or more people acting with the purpose of accomplishing by concerted action either an unlawful purpose via lawful means or a lawful purpose via unlawful means. *Adcock v. Brakegate, Ltd., 164 Ill. 2d 54, 645 N.E.2d 888, 894, 206 Ill. Dec. 636 (Ill, 1994)* (citing *Smith v. Eli Lilly & Co., 137 Ill. 2d 222, 560 N.E.2d 324, 329, 148 Ill. Dec. 22 (Ill. 1990).* To plead successfully facts supporting conspiracy jurisdiction, plaintiffs must allege both an actionable conspiracy and a substantial act in furtherance of the conspiracy performed in the forum [*26] state. *Textor v. Board of Regents of Northern Illinois University, 711 F.2d 1387, 1392-93 (7th Cir. 1983).* Although agreement among the alleged conspirators is an element of a cause of action for civil conspiracy, it does not have the importance it has in criminal conspiracy; an agreement to commit an unlawful act is potentially a crime but it is not a tort. *Adcock, 645 N.E.2d at 894.* Rather, one of the parties must complete an overt act in furtherance of the

agreement that is itself either a tort or unlawful. *Id.*

The formation of a private internet discussion group by the defendants is not an illegal act. Any alleged conspiracy formulated by defendants via the discussion group is likewise, in itself, not a sufficient cause of action of civil conspiracy. Presumably, plaintiffs are attempting to argue that the overt acts in furtherance of the conspiracy are the alleged tortious statements made by the defendants on their websites and in the public internet discussion groups email lists. However, as discussed *supra,* the mere assertion of an intentional tort by the plaintiffs coupled with a claim of injury is insufficient to establish minimum contacts with Illinois, and therefore establish [*27] jurisdiction. *See Indianapolis Colts, 34 F.3d at 412.* Since the plaintiffs are unable to establish that a substantial overt act was conducted in Illinois (via a demonstration of minimum contacts between the defendants and Illinois), the overt act requirement, and therefore the cause of action, must fail.

### Sanction Jurisdiction

Finally, plaintiffs claim that defendants Wild and Hayes deliberately attempted to perpetrate frauds upon the court, and such behavior should be a sufficient reason for the court to exert personal jurisdiction. Plaintiffs allege that Ronald DeJongh [5] ("DeJongh"), the owner of Wild, deliberately lied when he stated in his affidavit that Wild had never had a distributor in the United States. DeJongh has since filed an amended affidavit, claiming that he misspoke and had meant to say that he never had a distributor in Illinois. Additionally, plaintiffs accuse Hayes of lying in her affidavit by stating that her websites had been hosted in the United Kingdom since 2003. Hayes disputes this accusation, and stated further in her affidavit that the website had never been hosted in Illinois, a statement that plaintiffs do not contest.

> 5   DeJongh is not named personally as a [*28] defendant in this case.

Plaintiffs argue that because Wild and Hayes

allegedly lied to the court, the court should exercise personal jurisdiction as a suitable sanction. Plaintiffs cite *Boron v. West Texas Imports, Inc.* as their sole source of law for this claim. *680 F. Supp. 1532 (S.D.Fla 1988).* Leaving aside the fact that that case is not controlling in this jurisdiction, *Boron* is distinguishable from the instant case. In *Boron,* the defendants misrepresented the truth about their contacts *with the forum state* in an effort to avoid jurisdiction. *Id. at 1535-36.* Thus, even if no misrepresentation had been made to the court, personal jurisdiction would have been proper. No such misrepresentation is alleged by the plaintiffs in this case: plaintiffs do not contend that Wild or Hayes had actual contact with the state of Illinois with respect to the subject matter of the alleged cause of action in this case and then attempted to conceal those facts. Even if Wild and Hayes made misrepresentations to the court concerning jurisdictional issues that were not related to Illinois contacts (and that claim is controverted by the defendants) the court cannot simply conjure personal jurisdiction [*29] out of the thin air to use as a sanction. Absent minimum contacts with Illinois, due process requirements prevent this court from exerting personal jurisdiction over the Wild and Hayes.

### Conclusion

For the reasons described above, the court finds that it does not have personal jurisdiction over the defendants, and their motion to dismiss is granted. The court therefore need not analyze whether plaintiffs failed to state a claim upon which relief can be granted as required by *Federal Rule of Civil Procedure 12(b)(6)* and the defendants motion to dismiss for that reason is denied as moot.

JOAN B. GOTTSCHALL

United States District Judge

DATED: October 9, 2007

EXHIBIT 3

LEXSEE 1997 US DIST LEXIS 18687

**TRANSCRAFT CORPORATION, Plaintiffs, vs. DOONAN TRAILER CORP., Defendant.**

**No. 97 C 4943**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1997 U.S. Dist. LEXIS 18687*; *45 U.S.P.Q.2D (BNA) 1097*

**November 12, 1997, Decided**
**November 17, 1997, Docketed**

**DISPOSITION:** [*1] Defendant's motion to dismiss for lack of personal jurisdiction granted. Action dismissed without prejudice.

**COUNSEL:** For TRANSCRAFT CORPORATION, plaintiff: Daniel Laurence Kegan, Diane S. Lidman, Marc E. Fineman, Kegan & Kegan, Ltd, Chicago, IL.

For DOONAN TRAILER CORP, defendant: John G Bisbikis, McDermott, Will & Emery, Chicago, IL.

For DOONAN TRAILER CORP, defendant: Susan Somers Neal, Kevin J McDevitt, McDermott, Will and Emery, Washington, DC.

For DOONAN TRAILER CORP, defendant: Katharine E Smith, Pennie & Edmonds, New York, NY.

For DOONAN TRAILER CORP, defendant: James W. Dabney, Pennie & Edmonds, LLP, New York, NY.

For DOONAN TRAILER CORP, counter-claimant: John G Bisbikis, McDermott, Will & Emery, Chicago, IL.

For DOONAN TRAILER CORP, counter-claimant: Susan Somers Neal, Kevin J McDevitt, McDermott, Will and Emery, Washington, DC.

For TRANSCRAFT CORPORATION, counter-defendant: Daniel Laurence Kegan, Diane S. Lidman, Marc E. Fineman, Kegan & Kegan, Ltd, Chicago, IL.

**JUDGES:** Suzanne B. Conlon, United States District Judge.

**OPINION BY:** Suzanne B. Conlon

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Transcraft Corporation ("Transcraft") sues Doonan Trailer Corporation [*2] ("Doonan") for trademark infringement, unfair competition, and trademark dilution pursuant to the Lanham Act, *15 U.S.C. § 1051 et seq.* Transcraft alleges Doonan manufactures, markets, and sells cargo trailers with a design confusingly similar to Transcraft's federally registered design trademark for cargo trailers. Doonan moves to dismiss the complaint for lack of personal jurisdiction or for improper venue pursuant to *Fed. R. Civ. P. 12(b)(2)* and *(3)*.

**BACKGROUND**

In considering a motion to dismiss for want of personal jurisdiction or improper venue, the court accepts all well-pleaded allegations as true unless controverted by defendant's affidavits. Any conflicts in the affidavits are resolved in favor of the plaintiff. *Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987)*.

Transcraft is a Delaware corporation with its principal place of business in Anna, Illinois. Compl. P 4. Since 1976, Transcraft has manufactured and sold cargo trailers with a distinctive design of circular holes along its trailers' main side beams. Id. P 5. In December 1996, the

U.S. Patent and Trademark Office granted Transcraft Trademark Reg. No. 2,022,972 for its cargo trailer design. Id. [*3] P 13. For the last six years, Doonan has manufactured, marketed, and sold cargo trailers having a design of circular holes along its trailers' main beams. Id. P 23; Ans. P 23. Transcraft advised Doonan to stop infringing its trademark in May 1995. Compl. P 32.

Doonan is a Kansas corporation with its principal place of business in Great Bend, Kansas. Heier Dec. P 2. Doonan is not registered to do business in Illinois, and has no agent for service of process in Illinois. Doonan has no offices, production facilities, distribution facilities, dealers, agents, employees, sales force, telephone listings, bank accounts, property, or assets in Illinois. Id. PP 3 - 4. However, Transcraft states:

> As inherent in the transportation industry, [Doonan's trailers] travel on the interstate highways and are viewed by consumers within the jurisdiction of this Court. [Doonan] currently operates and maintains an Internet World Wide Web site which is viewable and accessible within the jurisdiction of this court. . . . [Doonan's web site] provide[s] residents within the Court's jurisdiction phone numbers, dealer information (including toll free phone numbers and addresses), and [*4] sales information for [Doonan's] trailers. [Doonan's web site] invite[s] residents within the Court's jurisdiction to contact [Doonan] via telephone or electronic mail for sales information.

Smith Dec. Ex. 1.

In support of personal jurisdiction, Transcraft relies on the following facts. Although Doonan denies that it or its agents have sold new or used trailers to Illinois residents or businesses, Doonan does not deny that its used trailers have been purchased by Illinois residents or businesses. Pl. Ex. 4, P 18. A Kentucky-based authorized dealer of Doonan trailers sold three new Doonan trailers to Illinois residents. Id. In conformance with industry practice, Doonan provided warranties to the three Illinois buyers. Pl. Ex. 5, P 4. Doonan has at least 21 authorized dealers, none of whom are restricted from selling Doonan trailers to Illinois customers; from its work with dealers of Transcraft and Doonan trailers, Transcraft knows those

dealers want to sell to Illinois customers. Id. P 11; Pl. Ex. 7, P 11. Doonan's Internet web site -- accessible in Illinois -- promotes the sale of new and used Doonan trailers, and features the image of a cargo trailer with [*5] the circle design. Pl. Ex. 3. Johnson Truck Service in Anna, Illinois transports both Transcraft and Doonan trailers. Pl. Ex. 7, PP 5 - 6. Transcraft has seen Doonan trailers with the circle design stacked and transported with its own trailers. Id. P 3. At its own location in Illinois, Transcraft has seen Doonan trailers with the circle design. Id. P 7.

## DISCUSSION

### I. GENERAL PRINCIPLES

To exercise personal jurisdiction over a defendant in a federal question case, a federal court must determine that: (1) the exercise of jurisdiction accords with *Fifth Amendment* due process principles; and (2) the defendant is amenable to service of process. *United States v. Martinez De Ortiz, 910 F.2d 376, 381 (7th Cir. 1990)*; *Lifeway Foods, Inc. v. Fresh Made, Inc., 940 F. Supp. 1316 (N.D. Ill. 1996)*. In federal question cases, *Fifth Amendment* due process is satisfied where the defendant has "sufficient contacts with the United States as a whole," rather than with a particular state. *Martinez De Ortiz, 910 F.2d at 381*. Doonan is a Kansas corporation and conducts business in the United States; its contacts with the United States are plainly sufficient to satisfy [*6] due process.

However, the Lanham Act does not authorize nationwide service of process. The court must therefore examine the Illinois long-arm statute to determine if Doonan is amenable to service of process here. Fed. R. Civ. P. 4(k). A federal district court sitting in Illinois has personal jurisdiction over a nonresident party only if an Illinois state court would have such jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275 (7th Cir. 1997)*. An Illinois nonresident may be sued in Illinois if (1) jurisdiction is authorized under the Illinois long-arm statute, and (2) the minimum contacts required by due process are present. *FMC Corp. v. Varonos, 892 F.2d 1308, 1310 (7th Cir. 1990)*.

The Illinois long-arm statute authorizes jurisdiction on any basis permitted by the Illinois Constitution and the Constitution of the United States. *735 ILCS 5/2-209(c)*. The Illinois Constitution requires the court to inquire whether it is "fair, just, and reasonable to require a

Case 1:08-cv-01548    Document 21-4    Filed 05/07/2008    Page 4 of 11

Page 3

1997 U.S. Dist. LEXIS 18687, *6; 45 U.S.P.Q.2D (BNA) 1097

nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood,* [*7] *141 Ill. 2d 244, 565 N.E.2d 1302, 1316, 152 Ill. Dec. 384 (1990).* The defendant's connection with Illinois should not be merely "random, fortuitous, or attenuated"; rather, the connection should enable the defendant "to predict that it might be subject to the jurisdiction of this state." *Autotech Controls Corp. v. K.J. Elec. Corp., 256 Ill. App. 3d 721, 628 N.E.2d 990, 995-96, 195 Ill. Dec. 526 (1993).*

Similarly, federal due process requires minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945).* Minimum contacts have been defined as "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)* (quoting *Hanson v. Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)).* Put another way, the federal due process standard requires courts to consider whether the defendant's [*8] purposeful contacts with the forum state were such that the defendant could reasonably expect the courts of that state to assert jurisdiction. See *id.; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).*

## II. PERSONAL JURISDICTION, INTENTIONAL TORTS, AND TRADEMARK LAW

One source of jurisdiction under the Illinois long-arm statute is the "commission of a tort within this State." Ill. Rev. Stat. ch. 110, p 2-209(a)(2). In the area of negligent torts, World-Wide Volkswagen made clear that the random or fortuitous occurrence of an injury in the forum state is a constitutionally insufficient basis for the exercise of personal jurisdiction. *444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).* A different rule developed in the context of intentional torts. In *Calder v. Jones, 465 U.S. 783, 79 L. Ed. 2d 804, 104 S. Ct. 1482 (1984),* a California resident sued two employees of the National Enquirer for allegedly writing a libelous article about the plaintiff. The defendants were Florida residents and composed their article in Florida. The Court found proper a California court's exercise of personal jurisdiction over

the defendants, because the defendants [*9] knew that California would be the "focal" point of the injuries resulting from their intentional conduct. *Id. at 789 - 90.* Under the circumstances, the defendants could "'reasonably anticipate being haled into court [in California]', to answer for the truth of the statements made in their article." *Id. at 790* (quoting *World-Wide Volkswagen, 444 U.S. at 297*).

The Seventh Circuit had already recognized the relevance of a plaintiff's location to the issue of personal jurisdiction when a defendant intentionally harms the plaintiff's intellectual property rights. See *Honeywell Inc. v. Metz Apparatewerke, 509 F.2d 1137 (7th Cir. 1975).* In Honeywell, the court concluded personal jurisdiction over Metz was proper because Metz intentionally induced the infringement of Honeywell's patent:

> By entering into the exclusive agreement for distribution in the United States, Metz purposely promoted American sales and ensured that such infringement would take place, causing injury to Honeywell, a corporation with its principal place of business in Illinois.

*Id. at 1144.* Based on this language, courts interpreted Honeywell to mean that the situs of the injury [*10] to intellectual property is determined by where the property owner resides (*i.e.,* the injury occurred in Illinois because Honeywell's principal place of business was in Illinois). See, e.g. *Acrison, Inc. v. Control and Metering Limited, 730 F. Supp. 1445, 1448 (N.D. Ill. 1990).*

When the Federal Circuit began hearing patent appeals from this circuit, it encountered decisions based on the foregoing interpretation of Honeywell. The Federal Circuit rejected the "place of residence" interpretation, stating:

> Among the most important rights in the bundle of rights owned by a patent holder is the right to exclude others. This right is not limited to a particular situs, but exists anywhere the patent is recognized. It seems questionable to attribute to a patent right a single situs. A patent is a federally created property right, valid throughout the United States. Its legal situs would seem to be anywhere it is called into play.

1997 U.S. Dist. LEXIS 18687, *10; 45 U.S.P.Q.2D (BNA) 1097

*Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1570-71 (Fed. Cir. 1994).* The court continued:

> [A] focus on the place where the infringing sales are made is consistent with other areas of intellectual property [*11] law -- it brings patent infringement actions into line with the rule applied in trademark and copyright cases. (citations omitted).

> ...Accordingly we hold that, in a case such as this, the situs of the injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee, here the place of infringing sales in Virginia.

Id.; see also *North American Philips Corp. v. American Vending Sales Inc., 35 F.3d 1576, 32 U.S.P.Q.2D (BNA) 1203, 1205 (Fed. Cir. 1994)* (Beverly Hills Fan "disagreed that Honeywell stood for that proposition and instead held as a matter of uniform federal patent law that patent infringement occurs where allegedly infringing sales are made").

Doonan urges the following rule is applicable: "to establish personal jurisdiction in an unfair competition and trademark action, plaintiff must show that the infringing products were sold in the state; injury to good will or reputation, dilution of the value of the trademark, and damages from expected lost profits did not establish personal jurisdiction in the forum state." *Lifeway Foods, Inc. v. Fresh Made, Inc., 940 F. Supp. 1316, 1319-20 (N.D. Ill. 1996)* [*12] (citing *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787-88 (9th Cir. 1977))*. Inexplicably, neither party cites the Seventh Circuit's latest statement in the area of personal jurisdiction and trademark law, *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership, 34 F.3d 410 (7th Cir. 1994).*

At the time of the lawsuit in Indianapolis Colts, the only activity of the defendant undertaken in or planned for the Indiana market was the nationwide broadcast of its games on cable television. In deciding whether due process would forbid jurisdiction in Indiana, the Seventh Circuit stated:

> We think not, and are not even certain

that the broadcasts in Indiana are critical. The Indianapolis Colts use the trademarks they seek to defend in this suit mainly in Indiana. If the trademarks are impaired, as the suit alleges, the injury will be felt mainly in Indiana. By choosing a name that might be found to be confusingly similar to that of the Indianapolis Colts, the defendants assumed the risk of injuring valuable property located in Indiana. Since there can be no tort without an injury, (citation omitted), the state in which the injury [*13] occurs is the state in which the tort occurs, and someone who commits a tort in Indiana should, one might suppose, be amenable to suit there. This conclusion is supported by the Supreme Court's decision in Calder v. Jones ... holding that the state in which the victim of the defendants' defamation lived had jurisdiction over the victim's defamation suit.

> We need not rest on so austere a conception of the basis of personal jurisdiction. In Calder as in all the other cases that have come to our attention in which jurisdiction over a suit involving intellectual property (when broadly defined to include reputation, so that it includes Calder itself) was upheld, the defendant had done more than brought about an injury to an interest located in a particular state. The defendant had also "entered" the state in some fashion, as by the sale (in Calder) of the magazine containing the defamatory material. Well, we have that here too, because of the broadcasts, so we needn't decide whether the addition is indispensable.

*Id. at 411* - 12.

Indianapolis Colts was decided after the Federal Circuit rendered its decision in Beverly Hills Fan (which emphasized the [*14] place of the infringing sale for the determination of personal jurisdiction in the patent area). *21 F.3d at 1570* - 71. Presumably, the Seventh Circuit found the logic of the Federal Circuit either unconvincing or inapplicable in the trademark context. Lower courts

Case 1:08-cv-01548    Document 21-4    Filed 05/07/2008    Page 6 of 11

Page 5

1997 U.S. Dist. LEXIS 18687, *14; 45 U.S.P.Q.2D (BNA) 1097

have resisted reading Indianapolis Colts to mean that intellectual property "torts" can occur in the plaintiff's home forum based on activities (*e.g.*, infringing sales) conducted elsewhere. See, e.g., *Jan Mark, Inc. v. Reidy, 1997 U.S. Dist. LEXIS 737, 1997 WL 43203* at *3 (N.D. Ill. Jan. 28, 1997) (copyright case; "This argument ... is completely unsupported in Indianapolis Colts, and we find it to be completely without merit"). These decisions are undoubtedly correct, to the extent that the Seventh Circuit did not rest its interpretation solely on the injury to the Indianapolis Colts occurring in Indiana, but rather acknowledged the defendant's additional "entrance" in the form of cable broadcasts. However, these district court decisions go further to state that Illinois law forecloses the argument that "the state in which the injury occurs is the state in which the tort occurs." For the proposition that Illinois courts do not assert [*15] personal jurisdiction over defendants who cause economic injury in Illinois solely through acts committed outside Illinois, these decisions have cited *Turnock v. Cope, 816 F.2d 332, 335 (7th Cir. 1987)*; *Green v. Advance Ross Electronics Corp., 86 Ill. 2d 431, 427 N.E.2d 1203, 1207, 56 Ill. Dec. 657 (1981)*; and other cases applying Illinois law.

    As an initial matter, it is a dubious proposition that the Seventh Circuit would be foreclosed from holding as a matter of federal trademark law that a violation of the Lanham Act occurs in a state when a trademark is infringed there based on the defendant's activities in other states. Turnock, Green, and their progeny involved state law torts. While the Illinois long-arm statute provides a procedural rule that torts committed in Illinois give rise to jurisdiction here, neither the long-arm statute nor Illinois courts can define the substantive scope or nature of "torts" stemming from violations of the Lanham Act. That is purely a matter of federal law. Cf. *North American Philips Corp., 32 U.S.P.Q.2D (BNA) at 1205 (Fed. Cir. 1994)*. Regardless, this court reads Indianapolis Colts to be consistent with Turnock and Green. [*16] True, the Seventh Circuit intimated that it would have found personal jurisdiction even without the cable broadcasts. Nonetheless, the Court characterized such a conception of personal jurisdiction as "austere," and ultimately rested its holding on the injury in Indiana *plus* the defendant's additional entrance in the form of cable broadcasts. *Indianapolis Colts, 34 F.3d at 412*. If the cable broadcasts are interpreted as an action taken in Indiana that contributed to the plaintiff's injury, then Indianapolis Colts is consistent with the general notion

that a defendant must take some action in the forum state in order to commit a tort there.

    Transcraft is an Illinois corporation with its principal place of business in Illinois, and it uses its trademark in Illinois. Transcraft advised Doonan to stop infringing its trademark in May 1995. Compl. P 32. Thus, Doonan was provided actual notice that its activities were causing injury in Illinois. The critical issue is whether Doonan "entered" Illinois in a way analogous to the cable broadcasts in Indianapolis Colts. This issue is dispositive because this court declines to expand personal jurisdiction in trademark actions to [*17] the point where no additional entrance in the forum state is required. Although the Seventh Circuit intimated that injury in the forum state might have been enough to create jurisdiction in Indianapolis Colts, that conception of personal jurisdiction would indeed be "austere." Moreover, the Seventh Circuit could fairly infer the *concentration* of the Indianapolis Colts' use of its trademark would be strongest in Indiana, and this appeared to be a factor in the Seventh Circuit's analysis. *34 F.3d at 411* ("The Indianapolis Colts use the trademarks they seek to defend mainly in Indiana. If the trademarks are impaired, as the suit alleges, the injury will be felt mainly in Indiana."). There is no basis to infer Transcraft's use of its trademark is similarly concentrated in Illinois. Accordingly, the question is whether Doonan "entered" Illinois in some way that contributed to Transcraft's injuries.

## II. ALLEGED "ENTRANCES" INTO ILLINOIS

### A. Traveling the Illinois Highways

    Transcraft first suggests Doonan availed itself of Illinois law because "as inherent in the transportation industry, [Doonan's trailers] travel on the interstate highways and are viewed by consumers [*18] within the jurisdiction of this Court." Smith Dec. Ex. 1. Transcraft urges that trademark law is concerned with the confusion of third parties, in addition to the confusion of purchasers and prospective purchasers. Transcraft asserts:

    reliability and safety of platform cargo
    trailers [are] critical concern[s] for the
    purchaser, the driver, the shipper of the
    cargo transported, and the recipient of the
    cargo. All of these persons are exposed to
    the trademark design in the main beams of
    Transcraft trailers; all of these persons are
    exposed to the circle design in the main

Case 1:08-cv-01548    Document 21-4    Filed 05/07/2008    Page 7 of 11

Page 6

1997 U.S. Dist. LEXIS 18687, *18; 45 U.S.P.Q.2D (BNA) 1097

beams of Doonan trailers.

Resp. at p. 8.

Transcraft offers no support for the proposition that an allegedly infringing cargo trailer subjects its manufacturer or seller to personal jurisdiction in every state through which the trailer passes. In the negligent tort context, World-Wide Volkswagen made clear that a car is not a roving agent for service of process merely because its inherent function involves travel. See *444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)*. The intentional nature of trademark infringement combined with the fact that the allegedly infringing article is a cargo trailer makes the present case [*19] unique in some respects. As in World-Wide Volkswagen, however, it would be unreasonable to treat Doonan's trailers as roving agents for service of process.

**B. Contracting With Johnson Truck Service**

Transcraft presents the affidavit of its president, William R. Douglas. Douglas asserts Johnson Truck Service in Anna, Illinois transports Doonan trailers. *Pl. Ex. 7 P 6*. In its response brief, Transcraft cryptically states, "Johnson Truck Service in Illinois is contracted with to transport Doonan trailers with the circle design." Transcraft never states that *Doonan* contracts with Johnson Truck Service, and the court is not convinced that such an inference is reasonable. Giving Transcraft the benefit of the doubt, a contract between Doonan and Johnson Truck Service would be insufficient to qualify as an "entrance" contributing to Transcraft's injuries.

Presumably, Transcraft offers the fact that an Illinois-based company transports Doonan trailers to bolster its argument that infringing Doonan trailers travel the Illinois highways. Transcraft might argue that in contracting with an Illinois-based shipper, Doonan purposefully sent its trailers through Illinois. Even assuming [*20] Doonan contracted with Johnson Truck Service, Transcraft merely alleges that Johnson Truck Service is "in Illinois" and that Johnson Truck Service "is contracted with" to transport Doonan trailers. Transcraft fails to present specific facts showing that Illinois-based Johnson Truck Service transports Doonan trailers to, from, or even through Illinois. (Transcraft does separately allege that it has seen Doonan trailers stacked with its own trailers in Illinois, but Transcraft does not connect this fact to Johnson Truck Service). Given the interstate nature of cargo trailer shipping, there is an insufficient

basis to infer that Doonan specifically contracts for shipping *through Illinois*. In deciding a motion to dismiss for lack of personal jurisdiction, the court accepts all undenied factual allegations and resolves all factual disputes in favor of the party seeking to establish jurisdiction. *Turnock, 816 F.2d at 333*. However, the court is not required to create facts that support personal jurisdiction; it is Transcraft's burden to present those facts.

Moreover, Transcraft still faces the problem that doomed its first argument: it points to no authority for the proposition that [*21] personal jurisdiction in a trademark action can result from the allegedly infringing article merely travelling on a state's highways. At best, perhaps Transcraft could analogize a purposeful shipment of trailers through Illinois to purposeful advertisement in Illinois. The analogy would be a strained one, however, and it is without factual support on this record. More importantly, Transcraft has not established that Doonan purposefully shipped trailers through Illinois. That conclusion could only be reached as the product of multiple inferences of a sort not warranted in a motion to dismiss. The two facts Transcraft provides about Johnson Truck Service -- that it is based in Illinois and transports Doonan trailers -- are far too tenuous a basis to support personal jurisdiction.

**C. Doonan Web Site**

Transcraft argues Doonan's web site -- accessible in Illinois -- subjects it to jurisdiction in the Illinois courts. Transcraft states:

[Doonan] currently operates and maintains an Internet World Wide Web site which is viewable and accessible within the jurisdiction of this court....[Doonan's web site] provide[s] residents within the Court's jurisdiction phone numbers, [*22] dealer information (including toll free phone numbers and addresses), and sales information for [Doonan's] trailers. [Doonan's web site] invite[s] residents within the Court's jurisdiction to contact [Doonan] via telephone or electronic mail for sales information.

Smith Dec. Ex. 1. To be more precise, Doonan's web site

Case 1:08-cv-01548    Document 21-4    Filed 05/07/2008    Page 8 of 11

Page 7

1997 U.S. Dist. LEXIS 18687, *22; 45 U.S.P.Q.2D (BNA) 1097

does not *specifically* invite Illinois residents to transact business with Doonan or its dealers. Rather, Doonan's web site presents a general advertisement and is accessible worldwide.

As cases involving the World Wide Web have reached the courts over the last several years, a jurisprudence of "web" personal jurisdiction has begun to develop. This court has independently examined these cases, and finds the following to be a fair summary of the current state of the law:

> The cases dealing with the issue can be divided into three categories. (citation omitted). The first category includes cases where defendants actively do business on the Internet. See, e.g., CompuServe [, *Inc. v. Patterson, 89 F.3d 1257 (6th Cir. 1996)]*. In those instances, personal jurisdiction is found because defendants "enter[] into contracts with residents of a [*23] foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet." See Zippo *[Manuf. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1996)]*. The second category deals with situations "where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." Zippo, 962 F. Supp. at 1124 (citation omitted). The third category involves passive Web sites; i.e., sites that merely provide information or advertisements to users. See *Bensusan Restaurant Corp. v. King, 937 F. Supp. 295 (S.D.N.Y. 1996)*. District courts do not exercise jurisdiction in the latter cases because "a finding of jurisdiction ... based on an Internet web site would mean that there would be nationwide (indeed, worldwide) personal jurisdiction over anyone and everyone who establishes an Internet web site. Such nationwide jurisdiction is not consistent with traditional personal jurisdiction case law...." *Hearst Corp. v. Goldberger, 1997*

*U.S. Dist. LEXIS 2065, 1997 WL 97097,* at *1 (S.D.N.Y. Feb. 26, 1997).

[*24] *Weber v. Jolly Hotels, 1997 U.S. Dist. LEXIS 14036, F. Supp. , 1997 WL 574950* at *5 (D.N.J. Sept. 12, 1997).

An important addition to this summary is the very recent decision in *Hasbro, Inc. v. Clue Computing Inc., 1997 U.S. Dist. LEXIS 18857,* 2 BNA Electronic Information Policy & Law Report 1123, Civ. Act. No. 97-10065-DPW, (D. Mass. Sept. 31 [sic], 1997). The Hasbro court analogized posting information on the Web to placing a product into the "stream of commerce." See generally *Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987)*. Thus, the court reasoned advertisements on the Web can subject a defendant to personal jurisdiction if there is evidence that the defendant intended that its advertisement reach a particular state. In Hasbro, the court reasoned the defendant "availed itself of the benefits of doing business in [Massachusetts] by advertising its work for [a Massachusetts business] on its Web site, in an effort to attract more customers." 2 BNA Elec. Inf. P. & L. R. at 1128. Although its advertising was national in scope, the defendant not only took "no measures to avoid contacts in the forum state, but rather, ... encouraged [*25] them." Id.

Applying this framework to the facts of the present case, it is plain that Doonan's web site is insufficient to subject it to personal jurisdiction in Illinois. First, Transcraft does not contend Doonan conducts business in Illinois via the Internet. Transcraft alleges Doonan's web site invites inquiries via electronic mail. In cases where a user can exchange information with the host computer, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." Zippo, 962 F. Supp. at 1124. Transcraft fails to allege facts to support a reasonable inference that electronic mail communications were made with Illinois residents, or that the communications were of the quality required by courts who have found personal jurisdiction in cases of this kind. The remaining question is whether Doonan's web site was specifically intended to reach Illinois customers.

As a general rule, national advertisements (including

Case 1:08-cv-01548    Document 21-4    Filed 05/07/2008    Page 9 of 11

Page 8

1997 U.S. Dist. LEXIS 18687, *25; 45 U.S.P.Q.2D (BNA) 1097

those on the Internet) are insufficient to subject a defendant to jurisdiction in Illinois. See e.g., *IDS Life Ins. Co. v. Sunamerica, Inc., 958 F. Supp. 1258,* [*26] *1268 (N.D. Ill. 1997).* The Hasbro court's "stream of commerce" analogy seems a useful one. However, in this case (unlike Hasbro) there is no evidence that Doonan used its web site to encourage contacts with Illinois. Transcraft cites district court decisions that hold web page advertisements with toll free numbers are sufficient to subject defendants to personal jurisdiction. These opinions are fewer in number and less well-reasoned than the opinions that hold similar web sites insufficient to support personal jurisdiction. Thus, Doonan's web site does not subject it to personal jurisdiction in Illinois.

Transcraft might argue that despite all this, Doonan's web site is sufficiently analogous to the cable broadcasts in Indianapolis Colts for this court to find the required additional "entrance" into Illinois. The analogy, although facially appealing, breaks down upon further analysis. The "entrances" noted by the Seventh Circuit were of a specific kind; both the sale of magazines in Calder and the broadcasting of football games in Indianapolis Colts involved a defendant *purposefully serving a market in the forum state*. Although the Seventh Circuit's brief discussion [*27] of the issue does not provide clear guidance, the district court opinion which it affirmed strongly emphasized this aspect of the defendant's entrance into Indiana:

> Thus, although there is little evidence before the Court that the defendants intend to serve the market for merchandise in Indiana, plaintiffs have shown that defendants intend to and will serve, through the ESPN2 network, the market for entertainment in Indiana. Having arranged to profit by entertaining Indiana residents, the defendants should reasonably anticipate being haled into court in Indiana to defend themselves in an action for infringement ... based on their use of trademarks in connection with that entertainment.

*Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership, 1994 U.S. Dist. LEXIS 19280, 1994 WL 592844* at *3 (S.D. Ind. June 10, 1994).

There were at least eighteen cable television companies in Indiana that provided ESPN2 to Indiana subscribers. Id. It was thus apparent that the defendant was purposefully serving the Indiana market. It is difficult to describe Doonan's advertisement on the World Wide Web as purposefully serving an Illinois market; at the very least, there are [*28] no facts in the record which would permit this inference. Given the brevity of discussion, Indianapolis Colts does not seem to be a case that the Seventh Circuit intended to be applied much beyond its narrow facts. Because advertising on the World Wide Web does not serve specific geographic markets in the same sense that magazines and televised football games do, the court finds the web advertisements in this case distinguishable from the cable broadcasts in Indianapolis Colts.

Similarly, the court finds FMC Corp. v. Varonos distinguishable. *892 F.2d 1308 (7th Cir. 1990)* (injury in Illinois sufficient to support jurisdiction where defendants sent fraudulent telexes and monthly reports into Illinois). The telexes and monthly reports in FMC Corp. were specifically sent into Illinois to harm Illinois interests. In contrast, Doonan's web site was posted for a national audience.

### D. Stream of Commerce: Authorized Dealer's Sale of Doonan Trailers

Doonan denies selling trailers in Illinois, and states its dealers are independent businesses whose activities and records are not subject to its control. Pl. Ex. 5, P 4. Transcraft suggests Doonan admits to selling trailers [*29] *indirectly* to Illinois customers, based on the following response to one of Transcraft's interrogatories: "Doonan had no dealers in Illinois and was not selling trailers directly to anyone located in Illinois." Id. This negative inference cannot be reasonably drawn from Doonan's response. However, the question remains whether Doonan "entered" Illinois in a way similar to the cable broadcasts in Indianapolis Colts by placing its trailers in the stream of commerce intending that they be sold in Illinois.

The stream of commerce theory provides an "analytical tool useful in cases in which the defendant's contacts are the result of establishing a distribution network in the forum State for the sale of defendant's products...." *Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 427 (Fed. Cir. 1996).* The Supreme Court of Illinois has stated:

Case 1:08-cv-01548    Document 21-4    Filed 05/07/2008    Page 10 of 11

Page 9

1997 U.S. Dist. LEXIS 18687, *29; 45 U.S.P.Q.2D (BNA) 1097

A manufacturer whose products pass through the hands of one or more middlemen before reaching their ultimate users cannot disclaim responsibility for the total distribution pattern of the product. If the manufacturer sells its products in circumstances such that it knows or should reasonably anticipate that they will ultimately [*30] be resold in a particular state, it should be held to have purposefully availed itself of the market for its products in that state.

*Connelly v. Uniroyal, Inc.*, 75 Ill. 2d 393, 389 N.E.2d 155, 160, 27 Ill. Dec. 343 (1979). More recently, the Supreme Court of the United States addressed the stream of commerce theory in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987). In Justice O'Connor's plurality opinion (for four Justices), she rejected the idea that a defendant's mere knowledge of the product's entry into the forum state is sufficient to create personal jurisdiction.

The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in [*31] the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi*, 480 U.S. at 112 (O'Connor, J.).

Transcraft argues Doonan grants warranties to Illinois owners of Doonan trailers. Transcraft cites no authority for the proposition that defendants who provide warranties to purchasers of their products are subject to personal jurisdiction wherever the stream of commerce sweeps their products. Because most products are sold with warranties attached to them, Transcraft's rule would subject many if not most manufacturers to personal jurisdiction wherever their products are ultimately sold. Even if Transcraft argues Doonan consciously grants warranties to Illinois buyers *after* they have purchased Doonan trailers, the time for analyzing whether Doonan purposefully avails itself of a given state's laws is *before* the sale is made. Once a sale is made, Doonan merely follows industry custom by granting a warranty. It will not do to point to the sale of three Doonan trailers to Illinois [*32] customers and conclude, in hindsight, that Doonan must have been directing its marketing efforts at Illinois.

Transcraft's strongest argument for personal jurisdiction is one that it does not develop at all. Looking at the list of Doonan's 21 authorized dealers, it is apparent Doonan has blanketed much of the central United States with a network of authorized dealers. Pl. Ex. 5, P 11. Doonan advertises nationally and has authorized dealers in Kansas, Missouri, Wisconsin, Nebraska, Minnesota, Kentucky, Arkansas, Oklahoma, Colorado, and other states. Doonan claims it has no control over the activities of its independent dealers. However, courts have found personal jurisdiction in cases where a defendant has set up a distribution system that would ensure its products found their way into the forum state. See *Barone v. Rich Bros. Interstate Display Fireworks*, 25 F.3d 610 (8th Cir. 1994) (citing *Giotis v. Apollo of the Ozarks, Inc.* 800 F.2d 660 (7th Cir. 1986) (due process satisfied where "[a] seller at the head of a distribution network ... 'delivers its products into the stream of commerce with the expectation that [these products] will be purchased by consumers in the forum [*33] state'")).

In Barone, Hosoya Fireworks Co. of Japan (the defendant manufacturer) had no agent for service in Nebraska, no office in Nebraska, and no distributor in Nebraska. It did not advertise in Nebraska or directly send any products to Nebraska. However, Hosoya sold fireworks throughout the United States via a network of nine distributors in six states. One distributor purchased about $ 100,000 worth of fireworks annually, and about sixteen percent of those fireworks were resold in Nebraska. The distributor sold fireworks through six regional salespeople, one of whom was located in Nebraska. The Eighth Circuit concluded:

1997 U.S. Dist. LEXIS 18687, *33; 45 U.S.P.Q.2D (BNA) 1097

Hosoya has reaped the benefits of its network of distributors, and it is only reasonable that it should now be held accountable in the forum of plaintiff's choice....More than reasonable foreseeability is at stake here, as it must be under existing law, for Hosoya has purposefully reaped the benefits ... of Nebraska's [laws].

*25 F.3d at 615.*

The facts of the present case approach Barone. Both cases involve manufacturers that set up distribution systems for their products across numerous states. Without further facts from Transcraft, [*34] however, the similarities end there. Transcraft asserts Doonan's authorized dealers are not prohibited from selling trailers to Illinois customers. But Transcraft does not allege that Doonan's authorized dealers direct any efforts at Illinois as part of their sales territory. Transcraft alleges it knows the dealers "want to sell to Illinois customers," but it does not allege facts showing those dealers make any marketing efforts directed toward Illinois customers.

In cases finding personal jurisdiction based on a stream of commerce theory -- including the cases cited by Transcraft and the Seventh Circuit's decision in Honeywell -- a significant factor is the presence of an established distribution channel into the forum state. See, e.g., Beverly Hills Fan, 21 F.3d at n. 15 (citing cases). Transcraft has not demonstrated that Doonan sits atop an established distribution channel that ends in Illinois. Indeed, Transcraft's only specific allegation concerning the activity of Doonan's dealers towards Illinois is the Kentucky dealer's sale of three Doonan trailers to buyers with Illinois addresses. 717 persons have purchased Doonan trailers since January 1, 1995, and only three [*35] have been Illinois residents. Pl. Ex. 5, P 4. The sales to Illinois buyers represent less than one half of one percent of Doonan's sales. Although quality and not quantity is the usual benchmark for minimum contacts, three sales are not indicative of an established distribution channel. When this fact is placed against the background

of Transcraft's failure to allege any marketing or sales activity specifically directed toward Illinois on the part of Doonan or its authorized dealers, personal jurisdiction cannot be based on a "stream of commerce" theory. To satisfy due process, there must be some showing that Doonan directed its activities at Illinois. Transcraft has not made that showing.

As the Supreme Court has stated on more than one occasion, the determination of whether minimum contacts exist "is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'" *Kulko v. California Superior Ct., 436 U.S. 84, 92, 56 L. Ed. 2d 132, 98 S. Ct. 1690 (1978)* (quoting *Estin v. Estin, 334 U.S. 541, 545, 92 L. Ed. 1561, 68 S. Ct. 1213 (1948)).* This case presented some very close questions; indeed, it presented [*36] issues at the frontier of personal jurisdiction jurisprudence. This court is mindful of Illinois' interest in protecting the intellectual property of its citizens. However, the Seventh Circuit has previously declined to hold that an injury alone to intellectual property in Illinois is a sufficient basis for the exercise of personal jurisdiction. See *Indianapolis Colts, 34 F.3d at 412.* Transcraft has the burden of demonstrating an additional "entrance" into Illinois. It has failed to meet that burden. Without further guidance, this court declines to expand personal jurisdiction in the trademark area beyond the limits previously enunciated by the Seventh Circuit.

## CONCLUSION

Defendant's motion to dismiss for lack of personal jurisdiction is granted. This action is dismissed without prejudice.

ENTER:

Suzanne B. Conlon

United States District Judge

November 12, 1997