IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| C.S.B. COMMODITIES, INC., a New York corporation,<br><br>　　　Plaintiff,<br><br>v.<br><br>URBAN TREND (HK) LTD., a foreign corporation, and ROBERT KUSHNER, individually,<br><br>　　　Defendants. | CASE NO. 08 CV 1548<br><br>Judge Robert M. Dow, Jr.<br>Magistrate Judge Morton Denlow |

**REPLY IN SUPPORT OF DEFENDANT ROBERT KUSHNER'S
RENEWED MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)**

Defendant Robert Kushner ("Kushner") originally moved to dismiss the Complaint of Plaintiff C.S.B. Commodities, Inc. ("CSB") as against him individually for failing to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Conceding its pleading was defective, CSB did not even respond to that motion but, instead, filed a First Amended Complaint. Because CSB's First Amended Complaint still fails to satisfy the "special showing" required under *Dangler v. Imperial Machine Co.*, 11 F.2d 945, 947 (7th Cir. 1926), Kushner renewed his motion to dismiss. Specifically, Kushner argued that CSB did not allege that Kushner acted outside the scope of his duties as an officer of Urban Trend to willfully infringe CSB's alleged rights, did not plead that he acted willfully, that he was motivated by some improper purpose, or that Urban Trend was an irresponsible corporation that Kushner used to avoid personal responsibility.

The crux of CSB's response is the specious argument that *Dangler* is not the law in the Seventh Circuit when determining individual corporate officer liability on a motion to dismiss.

But, ironically, the sole case CSB relies on and claims is most analogous to the present facts, *Peaceable Planet, Inc. v. TY, Inc.,* 185 F. Supp. 2d 893 (N.D. Ill. 2002), begins its discussion by specifically identifying *Dangler* as the controlling law in the Seventh Circuit. Likewise, in attempting to distinguish a case cited by Kushner, CSB specifically admits that the court dismissed claims based on *Dangler*. Thus, in its response CSB does not even contest its failure to meet the "special showing" requirement.

CSB's efforts to run from *Dangler* is not only disingenuous but acts as a tacit admission that CSB failed to meet the Seventh Circuit's "special showing" requirement for pleading individual officer liability for the acts of a corporation. Consequently, CSB's second attempt at pleading allegations against Kushner is deficient and CSB's First Amended Complaint should be dismissed with prejudice as against Kushner for failure to state a claim.

I.  ARGUMENT

    A.  ***Dangler*** **Is The Controlling Law Of The Seventh Circuit.**

Kushner's motion predominantly focused on CSB's failure to meet the "special showing" requirement set forth in *Dangler*, which is the controlling law of the Seventh Circuit on corporate officer liability. (See Kushner's Motion, Dkt. No. 28, at 4-9). Rather than address *Dangler* head on or even argue that its pleading met *Dangler*'s "special showing" requirement, CSB contends, without any legal support, that *Dangler* is not good law and that it "provides no guidance in interpreting the sufficiency of a pleading under Fed.R.Civ.P. 12(b)(6)." (Pltf.'s Resp. at 5). Instead, CSB argues that the Court should follow *Peaceable Planet* because it is "closest to the facts of this case." (Pltf.'s Resp. at 5.) But the *Peaceable Planet* court begins its discussion by stating that **"*Dangler* is still the law of the Seventh Circuit and has been applied to trademark and patent cases."** *Peaceable Planet, Inc. v. TY, Inc.*, 185 F.Supp.2d 893, 896 (N.D. Ill. 2002). Further evidence of CSB's disingenuous attempt to circumvent the application of the controlling

2

law in this Circuit on corporate officer liability is revealed by its attempt to distinguish *The Drink Group, Inc. v. Gulfstream Comm. Inc.* 7 F.Supp.2d 1009 (N.D. Ill. 1998), which CSB admits was based on *Dangler*. (See Pltf.'s Resp. at 6). Contrary to CSB's suggestion, *Dangler* is clearly the governing law in the Seventh Circuit, requiring plaintiff plead a "special showing" that the defendant corporate officer:

- **"personally participate[d] in the manufacture or sale of the infringing article (acts other than as an officer)"; or**

- **"…uses the corporation as an instrument to carry out his own willful and deliberate infringements"; or**

- **"…knowingly uses an irresponsible corporation with the purpose of avoiding personal liability….**

*Dangler v. Imperial Mach. Co.*, 11 F.2d 945, 947 (7th Cir. 1926) (emphasis added).

**B.     CSB Has Not Satisfied The "Special Showing" Requirement To Hold Kushner Personally Liable.**

**1.     CSB Has Not Pleaded That Kushner Acted Outside The Scope Of His Corporate Responsibilities.**

Kushner pointed out how CSB failed to plead the *Dangler* "special showing" demonstrating that Kushner, a corporate officer of Urban Trend, had acted beyond the scope of his employment duties and subjecting him to personal liability. (Kushner's Motion, Dkt. No. 28, at 7-8; *Dangler*, 11 F.2d at 947). Ignoring *Dangler* entirely, CSB merely argues that Kushner personally participated in "selecting the infringing product, approving the infringing product, and marketing the infringing product" (Pltf.'s Resp. at 1) -- all activities that even if taken as true -- relate to Kushner's duties and responsibilities as an officer. (Pltf.'s Resp. at 2-3; Am. Compl. at ¶¶ 15, 20-24 ("made the decision to go forward with manufacture and//or marketing,"

3

"personally selected the configuration," "personally directed others," "personally present," and "stands to gain personally").)[1]

But as *Dangler* and its progeny hold, the mere personal participation by an officer is insufficient and that it is only when an officer "acts ***other than*** as an officer" that individual liability may attach. *Dangler*, 11 F.2d at 947 (emphasis added). The vague allegations made by CSB against Kushner are all cast in his respective capacity as an officer of Urban Trend as they discuss his alleged status and responsibilities. CSB does not allege acts "other than as an officer" nor does it suggest, let alone assert, that Kushner acted beyond the ordinary scope of his office in its First Amended Complaint or its Response. CSB simply ignores the requirement of *Dangler* that plaintiff allege "acts other than as an officer." *Dangler*, 11 F.2d at 947. This language, however, requires extraordinary participation by the individual corporate officer outside the scope of his employment. Otherwise, in virtually every trade dress, trademark, or patent infringement case the plaintiff could sue any and every officer, and perhaps even non-officer employers, who participated in the design, manufacture, marketing, and sale of the accused product. Here, CSB has failed to satisfy its burden of alleging the "special showing" that Kushner participated in the alleged infringement in an extraordinary fashion beyond the scope of his employment duties. *Dangler*, 11 F.2d at 947; *The Drink Group*, 7 F.Supp.2d at 1011 (dismissing claims against corporate officer defendant because no allegation of facts demonstrating wrongdoing by the individuals outside the scope of their corporate duties).

---

[1] CSB bases individual liability against Kushner on six allegations, namely (1) "...Kushner is the individual at Urban Trend with the responsibility for selecting the products that Urban Trend manufactures and/or markets, and also stands to benefit personally from the decisions to manufacture and/or market any particular product"; (2) "Kushner was the individual at Urban Trend who made the decision to go forward with the manufacture and/or marketing of the Throwzini knife holder…"; (3) "Kushner personally directed others at Urban Trend to manufacture or have manufactured the Throwzini knife holder and to market the Throwzini knife holder in this district and elsewhere"; (4) "[Kushner] personally select[ed] the configuration of the Throwzini knife holder"; (5) "Kushner has been personally present in this district to offer the Throwzini knife holder for sale"; and (6) "Kushner also stands to gain personally from the sales of the Throwzini knife holder." (*See* Am. Compl., Ex. 1 at ¶¶ 15, 20, 22-24).

      **2.    CSB Concedes It Failed To Pleaded That Kushner Acted Willfully, Was Motivated By Some Improper Purpose, Or That Urban Trend Is An Irresponsible Corporation Used By Kushner To Avoid Personal Responsibility.**

Kushner noted the absence of any allegations supporting any of the *Dangler* "special showing" factors. (Kushner's Motion, Dkt. No. 28, at 4-9). CSB does not deny that it failed to allege Kushner willfully and knowingly used Urban Trend as an instrument to carry out his own willful or deliberate infringement[2] (Kushner's Motion, Dkt. No. 28, at 8-9; *Dangler*, 11 F.2d at 947), that Kushner was motivated by some improper personal purpose (Kushner's Motion, Dkt. No. 28, at 8-9; *The Drink Group,* 7 F.Supp.2d at 1010), or that Urban Trend is an irresponsible corporation that Kushner used to avoid personal liability. (Kushner's Motion, Dkt. No. 28, at 9; *Dangler*, 11 F.2d at 947; *see also Powder Power*, 230 F.2d at 414). Perhaps, CSB's failure to allege any of these "special showing" factors is not surprising in view of its position on *Dangler*.

      **3.    The Primary Case CSB Relies On Is Inapposite And Easily Distinguishable.**

In arguing that it sufficiently plead individual liability against Kushner, CSB primarily relies on *Peaceable Planet, Inc. v. TY, Inc.*, 185 F.Supp.2d 893, (N.D. Ill. 2002), which as discussed above, relied on and confirmed that *Dangler* is the law in the Seventh Circuit on pleading corporate officer liability. (Pltf.'s Resp. at 5). But CSB's reliance on *Peaceable Planet* is misplaced. The *Peaceable Planet* action involved a trademark infringement action with related federal and state unfair competition and fraud claims. *Id.* at 894. The complaint at issue in *Peaceable Planet* contained significantly greater and more specific allegations against the corporate officer than those at issue here and easily distinguish *Peaceable Planet* from this case.

---

[2] The words "willful," "deliberate," or "improper" are not used once in Plaintiff's Complaint to describe any specific factual allegations relating to Kushner, and are used instead only once to reach an unjustified conclusion of law. (Am. Compl., Ex. 1, at ¶ 21, "[Kushner] deliberately and purposefully sought to trade on the goodwill established by CSB in the EX/VOODOO knife holder").

(Pltf.'s Resp. at 5).  For example, in *Peaceable Planet* the plaintiff pleaded that: (1) the corporate officer was the founder, president, CEO, and sole shareholder of the corporate defendant, (2) the corporate officer testified that he had the "final say" on product naming (an issue central to the trademark infringement action);  (3) the corporate officer received a cease and desist letter putting him on  notice of the corporate defendant's infringement yet continued to deliberately and willfully infringe the mark; and (4) the corporate officer and the corporate defendant had been involved in several prior trademark infringement litigations where the defendants had shown willful behavior and were enjoined.  *Peaceable Planet,* 185 F.Supp.2d at 894.

Thus, in *Peaceable Planet,* unlike the instant case, the plaintiff alleged that the corporate officer had acted in bad faith in a number of respects, including an apparent pattern of willful infringement of the intellectual property rights of other companies.  Indeed, the court in *Peaceable Planet* specifically held that plaintiff's allegations were sufficient to plead that the corporate officer had "intentionally infringed" plaintiff's trademark.  *Peaceable Planet*, 185 F.Supp.2d at 896.  These allegations coupled with allegations that  the corporate officer was the founder, president, CEO, and sole shareholder of the corporate defendant apparently convinced the *Peaceable Planet* court that the defendant corporate officer was using an irresponsible corporation to willfully infringe, thus satisfying the *Dangler* "special showing" requirement.

Here, CSB has made no such allegations.  It has not alleged that Kushner is the only shareholder of Urban Trend, that Urban Trend is undercapitalized and that Kushner is using it as an irresponsible corporation, that Kushner received but ignored a cease and desist letter showing that he willfully and deliberately continued to infringe CSB's purported trade dress, that Kushner has final say on all corporate decisions, that Kushner acted in bad faith or that Kushner and

6

Urban Trend have exhibited a pattern of willful and deliberate infringement. All allegations that supported a "special showing" in the *Peaceable Planet* case.

CSB also cites three other cases in opposition to Kushner's motion but these cases are also easily distinguished. First, CSB cites *Cooper Indust., Inc. v. Juno Lighting, Inc.*, 1 U.S.P.Q.2d 1313 (N.D. Ill. 1986). But the *Cooper* court -- again relying on *Dangler* -- held that plaintiff's allegations that the corporate officer was the founder, president, and majority shareholder, that he willfully and deliberately induced, aided and abetted the past and continuing infringement of the patent, and that he was the moving force behind the corporate defendant's infringing activities were sufficient allegations to survive defendant's motion to dismiss. *Id.* As previously noted, CSB has not alleged that Kushner is the founder, president, and majority shareholder or that Kushner willfully and deliberately infringed CSB's purported trade dress.

CSB also cites two summary judgment opinions,[3] *Sethness-Greenleaf, Inc. v. Green River Corp.*, Case No. 89CV9203/91CV4373, 1994 U.S. Dist Lexis 1790 (N.D. Ill., Feb. 11, 1994) and *Sparks Tune-Up Ctrs. v. Panchevre*, Case No. 90CV4369, 1992 U.S. Dist. Lexis 12528 (N.D. Ill., Aug. 21, 1992). Both cases are easily distinguishable from the situation here. In *Sethness*, the court found that the individual officer was personally liable because he had a credit agreement with plaintiff, was the controlling and only shareholder, and was solely responsible for managing the corporate defendant's activities. *Sethness*, 1994 U.S. Dist. Lexis at *6-7, 19.

In *Sparks*, the plaintiff, a franchisor, sued two individuals who had both personally executed a franchise agreement with plaintiff to operate an automotive tune-up franchise, failed to pay plaintiff the entire franchise fee, and then proceeded to operate the franchise and infringe

---

[3] Interestingly, CSB claims, in part, that *Dangler* does not apply because it did not involve a motion to dismiss (Pltf.'s Resp. at 4-5) yet CSB now cites two summary judgment opinions in its Response.

the franchisors' trademarks. *Sparks*, 1992 U.S. Dist. Lexis at *17-19. In short, *Sparks* did not involve an actual corporate defendant but the individual defendants' claimed that they had sold their personal interests in the franchise to a corporation prior to the alleged infringement. *Id.*

### C.   CSB Fails To Distinguish Kushner's Controlling Legal Support.

CSB is unable to meaningfully distinguish the cases cited by Kushner that support dismissal of CSB's lawsuit against him. For example, CSB attempts to distinguish *The Drink Group, Inc. v. Gulfstream Comm.*, 7 F.Supp.2d 1009, 1010 (N.D. Ill. 2002), by arguing that there the case was dismissed because plaintiff failed to allege any acts of wrongdoing by the corporate officers that showed improper motivation (Pltf.'s Resp. at 6-7). CSB then argues that it provided those specific averments here but then cannot identify a single allegation in its Amended Complaint. CSB also conveniently ignores the *The Drink Group* court's explanation that the difference between legitimate commercial torts committed in the course of an officer's employment and negligent and other willful and wrongful acts necessary to adequately plead individual officer liability require plaintiff allege "***some improper purpose or acting outside the scope of their corporate duties***." *Id.* at 1011. Here, CSB failed to allege Kushner acted with an improper purpose or outside the scope of his duties. Plaintiff's vague allegations that the corporate officers were the principals and driving force behind the infringement were dismissed by the *The Drink Group* court just as CSB's complaint should be dismissed in this case.

Next, CSB unsuccessfully attempts to distinguish *FM Industries, Inc. v. Citicorp Credit Services, Inc.*, Case No. 07 C 1794, 2007 U.S. Dist. Lexis 90129, (N.D. Ill. Dec. 5, 2007) (Kushner's Motion, Ex. 4). (See Pltf.'s Resp. at 7). CSB argues that in *FM Industries* the complaint was dismissed because the plaintiff merely alleged that the individual defendants were corporate officers. CSB ignores, however, that the *FM Industries* court very clearly articulated that to establish its burden of a special showing must be made that the individual defendants

8

acted "willfully and knowingly *and* personally participated in the infringing activities or otherwise used the corporate defendant to carry out the individual defendants' own deliberate infringement." *FM Industries*, 2007 U.S. Dist. Lexis at *12 (emphasis added) (Kushner's Motion, Ex. 4). In fact, the court held that "the special showing is not met when individual defendants have done nothing beyond the scope of their duties as officers *and* the corporation was not organized to permit the individual defendants to profit from infringement or hide personal liability." *Id.* Here, CSB has failed to allege that Kushner willfully and knowingly infringed CSB's alleged trade dress, that Kushner acted outside the scope of his duties, and that Urban Trend was organized to permit Kushner to profit from infringement or hide personal liability.

Similarly, CSB argues the Court should disregard *Powder Power Tool Corp. v. Powder Actuated Tool Co.*, 230 F.2d 409, 414 (7th Cir. 1956) because the appeals court reversed the trial court's ruling finding corporate officer liability after trial. (Pltf.'s Resp. at 7). However, the *Powder Tool* court's reasoning is applicable here. Specifically, it concluded that, much like the situation here, that because at the time the corporate defendant was formed it had no knowledge of the patent at issue, which did not exist yet, the corporate defendant could not have been organized for the purpose of carrying out the defendant corporate officer's willful and deliberate infringement. *Powder Tool*, 230 F.2d at 414. The *Powder Tool* court also noted that a "corporation can act only through its officers and agents" and that there was nothing in the record to show that the corporate officer acted beyond the ordinary scope of his office. *Id.* Thus, *Powder Tool* is relevant because it reaffirms CSB's obligation to allege some activity by Kushner outside his duties and responsibilities as an officer of Urban Trend.

9

Finally, CSB argues that *DEV Indus., Inc. v. Rockwell Graphics Sys., Inc.*, Case No. 91 C 7197, 1992 U.S. Dist. Lexis 6340 (N.D. Ill. May 4, 1992) (Kushner's Motion, Ex. 2) offers no support because the plaintiff there failed to allege any specific activity based on personal knowledge or wrongdoing. (Pltf.'s Resp. at 5-6). But in *Dev Industries*, the court dismissed plaintiff's complaint after finding the plaintiff's allegation that the corporate officer was the "moving, conscious, and dominant force behind [the corporate defendant's] offending conduct" was "not a factual allegation, but a conclusion one might reach after being apprised of the conduct in which an individual has engaged." *Id.* at *8. The *Dev Industries* court also reaffirmed the law in the Seventh Circuit that "personal liability for wrongdoing of a corporation cannot be imposed upon an individual merely because that individual is an officer of the corporation," which is exactly what CSB is attempting to do here. *Id.* at 7-8.[4] CSB argues that its allegations regarding Kushner's involvement in "choosing the product, supervising its manufacture and marketing, and personally participating in its marketing" go beyond those in the *Dev Industries* and are sufficient to meet its pleading requirements. They do not and clearly fail to identify any activity going beyond his duties and responsibilities as an officer of Urban Trend.

    **D.**     **The Court Should Ignore And Strike The Schmeizer Declaration.**

CSB's attempt to go outside its First Amended Complaint in responding to Kushner's 12(b)(6) Motion to Dismiss by attaching the declaration of Robert Schmeizer is improper. (Pltf.'s Resp., Schmeizer Decl.). Accordingly, the Court should ignore Mr. Schmeizer's declaration. *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 504 (7th Cir. 1998) (affidavits are

---

[4] CSB also cites to two irrelevant cases, *David Berg* and *General Motors* (Pltf.'s Resp. at 3). However, *David Berg* did not involve any individual corporate officers, did not rely on *Dangler*, and the citation CSB includes in its Response is just dicta discussing joint tortfeasor liability. *David Berg and Co. v. Gatto Int'l Trading Co., Inc.*, 884 F.2d 306, 311 (7th Cir. 1989). In *General Motors* the Court did not rely on *Dangler* and denied a corporate officer's motion for summary judgment based on a failure to show piercing of the corporate veil without any discussion whatsoever about the officer's activities or plaintiff's complaint. *General Motors Acceptance Corp. v. Synergy Corp.*, Case No. 90CV3522, 1992 U.S. Dist Lexis 5670, at *2-3 (N.D. Ill. Apr. 7, 1992).

not properly considered in deciding upon a motion under Rule 12(b)(6) unless the district court converts the motion into one for summary judgment under Rule 56).[5]

## CONCLUSION

For all of the above reasons, Plaintiff's First Amended Complaint lacks any concrete allegations supporting the "special showing" required by the Seventh Circuit and it should be dismissed with prejudice as against Kushner for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

*/s/James J. Lukas, Jr.*
Jeffrey G. Mote
James J. Lukas, Jr.
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
Telephone: 312-456-8400
Fax: 312-456-8435

Counsel for Defendant
ROBERT KUSHNER

---

[5] If the Court decides to consider CSB's declaration then based on the current evidentiary record summary judgment should be entered in Kushner's favor as Mr. Schmeizer's declaration fails to show any genuine issue of material fact that Kushner is not personally liable for Urban Trend's alleged infringement.

## CERTIFICATE OF SERVICE

    I, James J. Lukas, Jr., certify that on July 15, 2008, a true and correct copy of Kushner's REPLY IN SUPPORT OF DEFENDANT ROBERT KUSHNER'S RENEWED MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6) was served electronically through the Northern District of Illinois CM/ECF electronic filing on:

| | |
|---|---|
| Steven H. Sklar, Esq.<br>Leydig, Voit & Mayer, Ltd.<br>Two Prudential Plaza<br>180 North Stetson Avenue, Suite 4900<br>Chicago, IL  60601-5600<br><br>Tel:  (312) 616-5600<br>Fax:  (312) 616-5700 | Lisa A. Ferrari, Esq.<br>Roger S. Thompson, Esq.<br>551 Fifth Avenue, Suite 1210<br>New York, NY  10176<br><br>Tel:  (212) 687-2770<br>Fax:  (212) 972-5487 |

                                              */s/James J. Lukas, Jr.*
                                              James J. Lukas, Jr.