**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

C.S.B. COMMODITIES, INC., a New York
corporation,

     Plaintiff,

v.

URBAN TREND (HK) LTD., a foreign
corporation, and ROBERT KUSHNER,
individually,

     Defendants.

**CASE NO. 08 CV 1548**

Judge Robert M. Dow, Jr.
Magistrate Judge Morton Denlow

**REPLY IN SUPPORT OF DEFENDANTS' RENEWED
MOTION TO DISMISS FIRST AMENDED COMPLAINT
<u>FOR LACK OF PERSONAL JURISDICTION</u>**

Defendants previously moved to dismiss the original complaint of Plaintiff C.S.B.

Commodities, Inc. ("CSB") for *inter alia* lack of personal jurisdiction.  Confirming its complaint

was defective, CSB filed a First Amended Complaint rather than respond to that motion.  In its

Response to Defendants' renewed motion CSB has failed to demonstrate the existence of

personal jurisdiction over Defendants Urban Trend (HK) Ltd. ("Urban Trend") and Robert

Kushner ("Kushner") (collectively "Defendants").  CSB attempts to rescue its First Amended

Complaint with a declaration from its president, asserting that Kushner's one-time attendance at

an international trade show in Chicago where he was served with the original complaint provides

sufficient basis for exercising personal jurisdiction over the Defendants.  CSB conveniently

ignores, however, abundant Illinois and Seventh Circuit case law holding that a foreign

defendant's attendance at a trade show in the forum is insufficient to establish the required

'minimum contacts' necessary under the Due Process Clause of the United States Constitution.

Because CSB has failed to establish a *prima facie* case of personal jurisdiction over the

Defendants as a matter of law, the Court should dismiss CSB's First Amended Complaint with prejudice.

## I.    ARGUMENT

Defendants renewed their motion to dismiss under Rule 12(b)(2) on the grounds that this Court does not have personal jurisdiction over the Defendants.  *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).   CSB acknowledges its burden to establish a *prima facie* case of personal jurisdiction (Pltf.'s Resp. at 3-4) and relies on the declaration of its president, Robert Schmeizer, in opposing dismissal.   But Schmeizer's declaration merely confirms that defendant Kushner's attendance at the 2008 International Home & Housewares Show in Chicago is the sole basis for the Court's alleged *in personam* jurisdiction.   As previously detailed by Defendants, this is not enough to establish jurisdiction over Defendants. (Defs.' Renewed Motion, Dkt. No. 31 at 12-13).

Initially, CSB disingenuously argues that its complaint "is not subject to challenge based on its alleged lack of pleading personal jurisdiction."  (Pltf.'s Resp. at 3-5).  Of course, CSB offers no legal support for this contention.  But that is exactly what the law authorizes in seeking dismissal for lack of personal jurisdiction under Rule 12(b)(2).  CSB also misquotes *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998) for the proposition that "a complaint need not include facts alleging personal jurisdiction."  But that case does not state nor even support the purported quote.  To the contrary, the Seventh Circuit in *Steel Warehouse*, applying Wisconsin law, affirmed the Wisconsin district court's dismissal of the plaintiff's lawsuit for lack of personal jurisdiction because the allegations of the complaint failed to establish the requisite connection between the defendants' activities and the forum.  *See id.* Like the *Steel Warehouse* plaintiff, CSB has failed to establish a *prima facie* case of personal jurisdiction under either general or specific jurisdiction principles.

Here, CSB argues that personal jurisdiction over both defendants exists because Kushner was served while attending an international trade show in Chicago in which Urban Trend offered the accused Throwzini product for sale.  As set forth herein, CSB has failed to meet its burden of establishing a *prima facie* case of personal jurisdiction because it concedes the absence of general jurisdiction and has failed to identify sufficient "minimum contacts" with Illinois to justify the exercise of specific jurisdiction.

## A.      CSB Concedes That The Court Lacks General Jurisdiction.

As a threshold matter, it is important to note that CSB's silence on the issue of general jurisdiction confirms that there is no dispute that the Defendants lack the "continuous and systematic" contacts with Illinois necessary to find general jurisdiction.[1]  Indeed, CSB admits that it cannot establish general jurisdiction.  (*See* Pltf.'s Resp. at 10, stating "…so long as they did not tarry so long as to establish 'continuous and systematic contacts' with any single state... .")  Accordingly, the Court need only focus on whether it has specific jurisdiction over the Defendants.  *See RAR*, 107 F.3d at 1277 (refusing to engage in a general jurisdiction analysis because plaintiff did not allege the contacts necessary to give rise to general jurisdiction); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) (where a plaintiff has not alleged general jurisdiction over the defendant, the court need only consider whether the exercise of specific jurisdiction is proper).

---

[1] Illinois law is clear that a defendant's presence at a trade show does not confer general personal jurisdiction.  *See, e.g. Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 194, 198 (Ill. 1981) (affirming dismissal for lack of general and specific personal jurisdiction where defendant appeared at three trade shows and conducted an interview in Illinois, and received orders totaling less than $50K during each trade show); *Berthold Types Ltd. v. European Mikrograf Corp.*, 102 F.Supp.2d 929, 934 (N.D. Ill. 2000) (granting motion to dismiss for lack of general and specific jurisdiction where defendant visited a trade show and educational seminar in Illinois and had a website); *Int'l Financial Services Corp. v. Ross Industries, Inc.*, Case No. 87CV8586, 1991 U.S. Dist. Lexis 3073, *9 (N.D. Ill. Mar. 14, 1991) (granting motion to dismiss for lack of general jurisdiction where defendant visited trade shows in Illinois aimed at a national audience) (**Ex. 6**); *Radosta v. Devil's Head Ski Lodge*, 172 Ill.App.3d 289, 295 (Ill. App. Ct. 1988) (affirming dismissal for lack of general jurisdiction where defendant participated at a ski trade show in Illinois); and *Stein v. Rio Parismina Lodge*, 296 Ill.App.3d 530, 523-24 (Ill. App. Ct. 1998) (participation in trade shows is not sufficient for general jurisdiction).

**B.      CSB Failed To Meet Its Burden Of Establishing Specific Jurisdiction Over The Defendants.**

**1.      Plaintiff Has Failed To Show That Defendants Purposefully Directed Their Activities Towards Illinois Through Defendants' Attendance At A Single International Trade Show In Illinois.**

Defendants argued that under Illinois law, a defendant's attendance at a single trade show directed to an international audience, not Illinois residents is, standing alone, insufficient contact with Illinois to establish specific jurisdiction over the defendant.[2]  CSB does not argue nor allege in either its First Amended Complaint, its Response, or Schmeizer's Declaration that Urban Trend **sold any accused products to residents of Illinois or deliberately aimed any conduct specifically at Illinois residents** at the trade show.  Thus, CSB cannot meet its burden of establishing that Defendants purposefully availed themselves of the benefits and obligations of Illinois law.

Schmeizer admits that the sole trade show that Defendants attended was called the "International Home and Housewares Show 2008," which simply happened to be "held in Chicago."  (Schmeizer Decl. at ¶ 9); *see also Int'l Financial Services*, 1991 U.S. Dist. Lexis 3073, at *9 ("trade shows, which are aimed at a national audience") (Ex. 6).  CSB does not even claim--nor can it--that the International trade show was specifically targeted at Illinois residents.[3]

---

[2] CSB also alleged in its Original and First Amended Complaint that Urban Trend's operation of a website that can be viewed in Illinois establishes jurisdiction but appears to have dropped that argument in its Response.  Regardless, as discussed in Defendants' renewed motion the maintenance of a website without any evidence that Illinois residents were targeted is not enough to establish jurisdiction, even when coupled with an isolated trip to an international trade show.  (Defs.' Renewed Motion, Dkt. No. 31 at 9-12); *See Neomedia Techs., Inc. v. Airclic, Inc.*, Case No. 04CV566, 2004 U.S. Dist. Lexis 6634, 13 (N.D. Ill. Apr. 15, 2004) (holding that defendant's website in combination with defendant's attendance at a tradeshow was not enough to establish specific and general jurisdiction) (Defs.' Renewed Motion, Ex. 5).
[3] According to the International Housewares Association, the 2008 International Home & Housewares Show at McCormick Place in Chicago, Illinois involved 2,100 exhibitors from 40 countries and was attended by more than 60,000 buyers from over 100 countries.   (See press release from the 2008 International Home & Housewares Show titled "A Fact Sheet", attached as **Exhibit 7**; see also www.housewares.org/show).

The facts do not support a finding that Defendants purposefully established 'minimum contacts' with Illinois such that they should reasonably anticipate being haled into court [in Illinois]" by attending a single trade show that was held in Illinois, and, thus, CSB has not met its burden of establishing specific personal jurisdiction over Defendants.  *See Burger King v. Ruddzewicz*, 471 U.S. 462, 474-475 (1985).

> **2.     Defendants' Attendance At A Single International Trade Show Located In Illinois Does Not Constitute "Transaction Of Any Business" Under The Illinois Long-Arm Statute.**

Relying solely on the "transaction of any business" section of the Illinois long-arm statute to establish a *prima facie* case of jurisdiction, 735 ILCS 5/2-209 (a)(i), CSB contends that "appearing at a trade show in Illinois for the purposes of drumming up sales of goods which the plaintiff claims are infringing constitutes the 'transaction of … business' within the meaning of the Illinois long-arm statute." (Pltf.'s Resp. at 5-6).  **CSB is wrong**.  Moreover, CSB **completely ignores** the case law cited by Defendants in their Motion, which explicitly holds that Defendants' attendance at a trade show in Illinois is insufficient to confer specific jurisdiction over Defendants.  (Defs.' Renewed Motion, Dkt. No. 31 at 12).

CSB relies entirely on *Westnofa USA Inc. v.  British Design (U.S.A.) Corp.*, Case No. 83CV7209, 1983 WL 420 (N.D. Ill., Nov. 8, 1993), a case that has never been cited by any court, in support of its meritless argument.  (Pltf.'s Resp. at 5-6; Pltf.'s Ex. 1).  But contrary to CSB's assertion, *Westnofa* does not hold that attendance at a trade show in Illinois without a completed sale is enough to establish specific personal jurisdiction.  Tellingly, CSB fails to disclose that in *Westnofa* the Court found that defendant's **sale of a sample of the infringing product to an Illinois resident coupled** with the solicitation of business at two trade shows led to a finding of personal jurisdiction.  *Westnofa*, 1983 WL 420 at *2.  Thus, the only case CSB cites to support

its argument that no sales of the accused product or completed business transactions with an Illinois resident are required to establish personal jurisdiction **actually found that defendant made an infringing sale to an Illinois resident**. *Id.*[4]  Here, CSB failed to allege or provide any evidence of a credible nexus between its claims and a resident of Illinois, through a sale to an Illinois resident.  *See Berthold,* 102 F.Supp.2d at 934 (finding no specific personal jurisdiction where plaintiff failed to allege that defendants sold any infringing products in Illinois); *see also* Defs.' Renewed Motion, Dkt. No. 31 at 10-13.

Moreover, the *Westnofa* court's analysis that jurisdiction was proper but not venue is suspect.  For example, the *Westnofa* court found that specific jurisdiction, which requires that the claim arise out of contacts with Illinois, applied, yet held that defendant's contacts with Illinois were too isolated and sporadic to satisfy the venue requirement that the claim arise in Illinois. *Id.* at \*4.  At most, the *Westnofa* holding is persuasive authority that Plaintiff's First Amended Complaint should also be dismissed for improper venue.

As demonstrated in the cases cited by Defendants, **Defendants' attendance at a single trade show does not amount to "transaction of any business" under the Illinois long-arm statute and is not sufficient to confer specific jurisdiction**:

- ***Cook Associates, Inc. v. Lexington United Corp.***, 87 Ill.2d 190, 194, 198 (Ill. 1981):  affirming dismissal for lack of specific personal jurisdiction where defendant appeared at three trade shows, received orders totaling less than $50K during each trade show, and conducted an interview in Illinois;

- ***Berthold Types Ltd. v. European Mikrograf Corp.***, 102 F.Supp.2d 929, 934 (N.D. Ill. 2000):  granting motion to dismiss for lack of specific jurisdiction in

---

[4] *See also, Fluid Mgmt. Ltd. Partnership v. H.E.R.O. Industries, Ltd.,* Case No. 95CV5604, 1997 U.S. Dist. Lexis 2728, at \*15-16  (N.D. Ill. Mar. 3, 1997) (granting motion to dismiss for lack of personal jurisdiction in patent and trademark infringement, and unfair competition case where defendant attended trade show in Illinois, exhibited the accused product, but made no sales) (**Ex. 8**); *Berthold Types Ltd.*, 102 F.Supp.2d at 934 (granting motion to dismiss for lack of personal jurisdiction in trademark infringement case where defendant visited a trade show in Illinois but plaintiff did not show that defendants sold any accused products in Illinois).

trademark infringement case where defendant visited a trade show in Illinois but plaintiff did not show that defendants sold any accused products in Illinois;

- ***Black & Decker, Inc. v. Shanghai Xing Te Hao Industrial Co.***, Case No. 02CV4615, 2003 U.S. Dist. Lexis 10127, *8 (N.D. Ill. June 13, 2003) (Defs.' Renewed Motion, Ex. 4): attendance at an international hardware trade show in Illinois where one of the allegedly infringing products was exhibited held to be insufficient to confer specific jurisdiction;

- ***Acrison, Inc. v. Control and Metering Ltd.***, 730 F.Supp. 1445, 1449 (N.D. Ill. 1990): granting motion to dismiss for lack of specific jurisdiction where visits to trade shows in Illinois did not qualify as transaction of any business under the Illinois long-arm statute;

- ***Ameritech Services, Inc. v. SCA Promotions, Inc.***, Case No. 99CV4160, 2000 U.S. Dist Lexis 3067, at *11 (N.D. Ill. Mar. 6, 2000) **(Ex. 9)**: granting motion to dismiss for lack of personal jurisdiction and holding that sporadic visits to Illinois to attend trade shows were insufficient to support specific personal jurisdiction;

- ***Neomedia Techs., Inc. v. Airclic, Inc.***, Case No. 04CV566, 2004 U.S. Dist. Lexis 6634, at *13 (April 15, 2004) (Defs.' Renewed Motion, Ex. 5): "Attendance at a trade show alone is not enough to establish specific jurisdiction"; and

- ***McKnelly v. Whiteco Hosp. Corp.***, 131 Ill.App.3d. 338, 341-42 (Ill. App. Ct. 1985): attendance and discussion at trade show did not constitute transacting business within state.[5]

As these cases clearly reflect, CSB has not identified sufficient grounds for this Court to exercise personal jurisdiction over Defendants.

> **3.    Service Of Process On Kushner At A Trade Show In Chicago Does Not Establish Personal Jurisdiction Over Kushner.**

Although no such allegation appears in its First Amended Complaint, CSB now claims that its service of process on Kushner while at the international trade show in Chicago is further support for personal jurisdiction over the Defendants. (Pltf.'s Resp. at 7.) But CSB's only

---

[5] *See also Fluid Mgmt.,* 1997 U.S. Dist. Lexis 2728, at *15-16 (granting motion to dismiss for lack of personal jurisdiction in patent and trademark infringement, and unfair competition case where defendant attended trade show in Illinois, exhibited accused product, but made no sales) (Ex. 8); *Geodetics Services, Inc. v. Metronor AS,* 55 U.S.P.Q.2d 1365, 1368 (M.D. Fla. 2000) (attendance at trade show in Florida where accused product was offered for sale insufficient to assert specific jurisdiction over foreign defendant).

support for its service argument as justifying personal jurisdiction against Kushner is *Burnham v. Superior Court of California,* 495 U.S. 604 (1990) (Scalia, J.).[6]

CSB's reliance on *Burnham* is misplaced. First, CSB cannot to rely on service of process to establish jurisdiction over Kushner because service was effected ***after*** CSB filed its original complaint. *See Sportmart, Inc. v. Frisch*, 537 F.Supp. 1254, 1259 (N.D. Ill. 1982) (contacts with the forum occurring after the filing of the complaint "go beyond the period involved in the complaint and are thus jurisdictionally irrelevant"); *United Phosporus, Ltd. v. Angus Chemical Co.*, 43 F.Supp.2d 904, 910-911 (N.D. Ill. 1999) (events occurring after the complaint is filed cannot support jurisdiction).[7]

Next, CSB fails to disclose that the *Burnham* decision was a plurality opinion in which four justices found that jurisdiction based on physical presence constituted due process. Importantly, another four justices held in a second plurality opinion that "an independent inquiry into the … fairness of the prevailing in-State service rule must be undertaken" to determine whether transient service satisfies due process. *Burnham*, 495 U.S. at 629 (Brennan, J., concurring). This second plurality opinion reaffirms United States Supreme Court precedent holding that all assertions of personal jurisdiction must satisfy the minimum contacts and fairness requirements of *International Shoe. Id.* at 629-630.[8]

---

[6] CSB does not contend that jurisdiction is established over Urban Trend simply based on service of process and transient jurisdiction has never applied to corporations. *International Shoe*, 326 U.S. at 316-319**.** CSB does argue without any legal support that the fact that Urban Trend was served in Illinois weighs in favor of holding Urban Trend to account for its acts in Illinois. (Pltf.'s Resp. at 7).

[7] CSB contends that Defendants did not address the fact that Kushner was personally served at the trade show in their Motion. (Pltf.'s Resp. at 3). But CSB did not allege that fact in its Original or First Amended Complaint. In fact, CSB specifically limited its jurisdictional allegations to those that occurred "prior to the filing of the Complaint," essentially confirming that only pre-filing activities can be considered in a jurisdictional analysis. (Am. Compl., Ex. 1, at ¶ 7).

[8] Interestingly, CSB apparently agrees that an *International Shoe* analysis is required here. (See Pltf.'s Resp. at 5-6 ("B. The *International Shoe* Test For 'Minimum Contacts' Is Satisfied As To Each Defendant")).

In addition, courts in this district have held that "mere service of process upon a defendant transient present in the jurisdiction does not vest a state with personal jurisdiction over defendant" and that a minimum contacts and fairness analysis must still be conducted. *See The Harold M. Pitman Co. v. Typecraft Software Ltd.*, 626 F.Supp. 305, 312 (N.D. Ill. 1986) (granting individual's motion to dismiss for lack of personal jurisdiction and holding that individual's transient presence at a trade show/exhibition where he was served failed to amount to minimum contacts).[9]   Based on such an analysis, CSB has not met its burden of establishing personal jurisdiction over Kushner.

Finally, Kushner's lone visit to Illinois as part of an international tradeshow was on behalf of Urban Trend.   But Illinois recognizes the fiduciary shield doctrine which bars the assertion of personal jurisdiction over a corporate employee when his only contact with Illinois is based on acts as a representative of a corporation.   Thus, to withstand Kushner's motion to dismiss for lack of personal jurisdiction, CSB was required, but failed, to sufficiently plead that Kushner's alleged activity within Illinois was performed in a capacity other than as an officer or employee of Urban Trend.   CSB failed to allege, let alone produce any evidence, that Kushner's Illinois contacts were other than as an employee of Urban Trend or that he acted solely for his personal interest when he attended the trade show.   *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1995) (fiduciary shield doctrine denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer); *Modern Aids, Inc. v. Lil' Drug Store Products, Inc.*, Case No. 93CV1714, 1993 U.S. Dist. Lexis 8693, at *7-8 (N.D. Ill. June 24, 1993) (granting individual's motion to dismiss for lack of jurisdiction because plaintiff did not present court with evidence that individual acted

---

[9] *See also Nehemiah v. Athletics Congress of USA*, 765 F.2d 42 (3rd Cir. 1985).

other than as an agent for corporate defendant or that he acted for his personal interest when he attended a trade show in Illinois) (**Ex. 10**).[10]

### C.    CSB Has Not Met Its Burden Of Showing That The Court's Exercise of Personal Jurisdiction Would Comport With Traditional Concepts Of Fair Play And Substantial Justice Required By The Due Process Clause.

CSB has also not satisfied its burden of showing that the Court's assertion of personal jurisdiction over Defendants based on their isolated visit to Illinois to participate in an international show would be reasonable and fair. *See, RAR*, 107 F.3d at 1276. Here, the record demonstrates that Defendants were not directing their activities at Illinois residents but, rather, at an international audience, and therefore CSB must make a strong showing of fairness. *See Andersen v. Sportmart, Inc.*, 57 F.Supp.2d 651, 661 (N.D. Ind. 1999) (requiring strong showing of fairness when minimum contacts supporting purposeful availment of the forum are weak). *CSB has made no such showing.*

CSB provides no evidence whatsoever that Defendants intended to target Illinois residents with any of their activities. *CSB does not even discuss the factors required to determine whether the exercise of jurisdiction is reasonable and fair*.[11] CSB's gross omission of evidence justifying how and why jurisdiction would comport with fair play and substantial justice can only interpreted as CSB's concession that the assertion of jurisdiction over Defendants would not be fair and reasonable and, by itself, should be grounds for dismissal of Plaintiff's First Amended Complaint. *See, RAR*, 107 F.3d at 1276.

---

[10] Kushner's concurrently filed 12(b)(6) motion to dismiss CSB's First Amended Complaint for failure to state a claim and his Reply address this issue in further detail as additional grounds for dismissal of CSB's First Amended Complaint as against Kushner.

[11] A court must determine whether the assertion of jurisdiction comports with "traditional [conceptions] of fair play and substantial justice." *Burger King*, 471 U.S. at 464. Factors considered in this inquiry are: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *World-Wide Volkswagen*, 444 U.S. at 292.

Application of the *World-Wide Volkswagen* factors demonstrate that the exercise of personal jurisdiction over the Defendants would not be reasonable and fair.  First, Urban Trend is a small Hong Kong Company that is not incorporated or licensed to do business in Illinois and, thus, has no registered agent in Illinois.  (Am. Compl., Ex. 1 at ¶ 2).  Defendant Kushner is a foreign citizen who resides in Hong Kong.  (Am. Compl., Ex. 1 at ¶ 3).  The record reveals Defendants have had no dealings with Illinois aside from one appearance at an international trade show that happened to be held in Chicago.  Furthermore, CSB has not alleged that Defendants have any offices, telephone lines, mailing addresses, or bank accounts  in Illinois; that Urban Trend's employees or agents reside or are domiciled in Illinois; that Urban Trend manufactures any goods or any parts of its products in Illinois; that Urban Trend directs or targets advertising or marketing specifically to residents of Illinois; and that Urban Trend has offered to sell or sold any goods or any parts of its products to residents of Illinois.  Consequently, the burden to litigate here is substantial and this factor weighs strongly against personal jurisdiction.  *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders").

Additionally, Illinois has no interest in being the forum for this litigation.  As alleged in CSB's First Amended Complaint, no parties are Illinois corporations or residents and there are no allegations that any Illinois residents purchased the accused product, were targeted by Defendants, or were otherwise harmed in any fashion by the Defendants' alleged activities.  This factor also favors dismissal.  Plaintiff is a New York corporation and this jurisdiction is not convenient to Plaintiff, whose witnesses and documents are likely located in New York.

11

Moreover, this federal unfair competition case involves federal law and closely related state law that will be applied uniformly, regardless of where the case is litigated. This factor also favors dismissal. The fourth factor, efficient administration of justice, is generally directed to considerations of where witnesses and evidence are likely to be located. Plaintiff's and Defendants' witnesses and evidence are likely located in New York and Hong Kong, respectively. Accordingly, this factor also weighs against this Court's exercise of jurisdiction over Defendants. The fifth factor also does not favor Illinois because CSB's case does not implicate Illinois-based substantive social policies. In sum, these five factors weigh heavily against the assertion of personal jurisdiction over Defendants.

## CONCLUSION

For all of the above reasons CSB has failed to meet its burden of establishing a *prima facie* case of personal jurisdiction over Defendants. Thus, this Court lacks personal jurisdiction over Defendants and Plaintiff's Amended Complaint should be dismissed with prejudice against Urban Trend and Kushner for want of personal jurisdiction under Fed.R.Civ.P. 12(b)(2).

/s/James J. Lukas, Jr.
Jeffrey G. Mote
James J. Lukas, Jr.
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
Telephone: 312-456-8400
Fax: 312-456-8435

Counsel for Defendants URBAN TREND
(HK) LTD. and ROBERT KUSHNER

## CERTIFICATE OF SERVICE

I, James J. Lukas, Jr., certify that on July 15, 2008, a true and correct copy of Defendants' REPLY IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION was served electronically through the Northern District of Illinois CM/ECF electronic filing on:

| | |
|---|---|
| Steven H. Sklar, Esq.<br>Leydig, Voit & Mayer, Ltd.<br>Two Prudential Plaza<br>180 North Stetson Avenue, Suite 4900<br>Chicago, IL  60601-5600<br><br>Tel:  (312) 616-5600<br>Fax:  (312) 616-5700 | Lisa A. Ferrari, Esq.<br>Roger S. Thompson, Esq.<br>551 Fifth Avenue, Suite 1210<br>New York, NY  10176<br><br>Tel:  (212) 687-2770<br>Fax:  (212) 972-5487 |

/s/James J. Lukas, Jr.
James J. Lukas, Jr.

# EXHIBIT 6

LEXSEE 1991 US DIST LEXIS 3073

**INTERNATIONAL FINANCIAL SERVICES CORPORATION, an Illinois corporation, Plaintiff, v. ROSS INDUSTRIES, INC., Defendant**

**Case No. 87 C 8586**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1991 U.S. Dist. LEXIS 3073*

**March 14, 1991**
**March 15, 1991, Docketed**

**JUDGES:** [*1] Ann Claire Williams, United States District Judge.

**OPINION BY:** WILLIAMS

**OPINION**

*MEMORANDUM OPINION AND ORDER*

This matter is before the court on the defendant's motion to vacate a default judgment pursuant to *Federal Rule of Civil Procedure 60(b)*, and to quash an emergency writ of execution. For the reasons explained below, the defendant's motions are granted.

*Background*

Plaintiff International Financial Services ("IFS") is an Illinois Corporation with its principal place of business in Glenview, Illinois. IFS is engaged in the business of leasing personal property. Defendant Ross Industries, Incorporated ("Ross") is a Virginia Corporation with its principal place of business in Midland, Virginia. Ross is engaged in the business of selling meat packaging equipment.

According to IFS' complaint, the events that led to this lawsuit were set in motion when IFS purchased some packaging equipment from Packaging Technologies, Inc. IFS subsequently attempted to lease the equipment to a third party. The equipment was not accepted by the third party, and was instead returned to Packaging

Technologies. Packaging Technologies attempted to sell the equipment on the plaintiff's behalf to another corporation, [*2] Ore-Ida Incorporated. Ore-Ida made a payment on the equipment to Packaging Technologies, which was forwarded to IFS.

Rosa attained an interest in Packaging Technologies in January, 1987. The plaintiff claims that after buying the corporation, IFS attempted to alter the packaging equipment which had been sold to Ore-Ida, in order to meet Ore-Ida's specifications. After making several unsuccessful attempts at modifying the equipment, Ross gave up on its attempt to meet Ore-Ida's specifications. IFS subsequently sued Ross for tortious interference with contract, alleging that the defendant's attempts at alterations caused it to lose the $ 37,006.06, which Ore-Ida still owed for the equipment. Plaintiff also sued for recovery of all payments it had previously made to Packaging Technologies.

Ross received notice of the lawsuit in October of 1987. The defendant apparently informed the plaintiff that it would not waste its resources fighting an action in Illinois, and would instead fight off the plaintiff's attempts to recover any judgment it received. True to its word, Ross never appeared to defend this action. On March 10, 1988, this court entered a default judgment against the defendants [*3] for $ 56,449.81. For the next two years, plaintiff was unable to collect on the default judgment. On November 15, 1990, IFS obtained a writ of execution from this court, in order to seize property owned by the defendant which was located at McCormick Place in Chicago, Illinois. On November 16, 1990, defendant brought an emergency motion to quash

the writ, and to vacate the default judgment pursuant to *Fed. R. Civ. P. 60(b)(4)*. Ross claims that the default judgment should be vacated because this court lacked personal jurisdiction over Ross Industries. For the reasons explained below, defendant's motions to vacate the default judgment, and to quash the writ of execution are granted.

*JURISDICTION AND RULE 60(B)(4)*

The defendant moves to vacate the default judgment pursuant to *Federal Rule of Civil Procedure 60(b)(4)*. *Rule 60(b)* provides that:

relief from judgment under *rule 60(b)* is an extraordinary remedy and is granted only in exceptional circumstances. The decision to grant relief under *rule 60(b)* is left to the sound discretion of the trial court, and review of the trial court's decision to grant or deny *rule 60(b)* relief is subject to an abuse of discretion standard.

[*4] *United States v. Zima, 766 F.2d 1153, 1157 (7th Cir. 1985)* (citing *C.K.S. Engineers Inc. v. White Mountain Gypsum Co., 726 F.2d 1202, 1204-5 (7th Cir. 1984))*. However, when the party seeking relief from judgment under *rule 60(b)* alleges that "the underlying judgment is void because the court lacked personal or subject matter jurisdiction," once the court decides that the allegations are correct "the trial judge has no discretion and must grant appropriate *Rule 60(b)* relief." *Bally Export Corp. v. Balicar, Ltd., 804 F.2d 398, 400 (7th Cir. 1986)* (quoting *Textile Banking Co. v. Rentschler, 657 F.2d 844, 850 (7th Cir. 1981)*. Hence, if the court finds that it lacks jurisdiction over Ross, the motion for relief from judgment must be granted. Finally, both parties recognize that Ross has the burden of proving lack of jurisdiction. *Bally, 804 F.2d at 401* ("If the defendant, after receiving notice, chooses to let the case go to a default judgment, the defendant must then shoulder the burden of proof when the defendant decides to contest jurisdiction in a post-judgment *rule 60(b)(4)* motion.")

The defendant argues that given the facts of this case, an Illinois court could [*5] not have properly exercised jurisdiction over Ross Industries, in 1988, because Ross' contacts with the state of Illinois were very limited. Ross has no offices or employees in Illinois, does not transact any business in Illinois, and does not use, own, or possess any real estate in Illinois. Ross further

points out that it is not alleged to have committed any tortious action, or to have taken any other action in Illinois out of which this cause of action arose. In response, plaintiff claims that the defendant is subject to jurisdiction in Illinois because it has been "doing business" in Illinois for years, as is made evident by its collective contacts with the state. Plaintiff notes that Ross advertises in Illinois, and attends national trade shows which are often held in Chicago. Finally, plaintiff claims that the defendants' meat processors are used in meat processing plants throughout the Chicagoland area.

After reviewing the parties' briefs, the court finds that the arguments against the court's exercising jurisdiction over the defendant are extremely compelling. The general rule is that a federal court has personal jurisdiction over a party in a diversity case only if a court [*6] of the state in which the district court is sitting would have jurisdiction. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp., 726 F.2d 1209, 1212 (7th Cir. 1984)*. A nonresident can be sued in Illinois if it performs one of the acts enumerated in the Illinois long-arm statute, or if it is "doing business" in Illinois. Either of these tests may be used to establish jurisdiction so long as the requirements of due process are met. In the instant case, IFS argues that this court has jurisdiction over Ross both under the Illinois long-arm statute, and because Ross was "doing business" in Illinois. The plaintiff's arguments are not persuasive. First, the court clearly does not have jurisdiction over the defendant under the Illinois long-arm statute. The only portion of the long-arm statute arguably relevant to this case provides that

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this State;

Ill. Rev. [*7] Stat. ch. 110, 2-209(a)(1) (1983).

Ross is not subject to jurisdiction in Illinois under the long-arm statute because this cause of action did not arise from the defendant's transaction of business in Illinois. Ross and IFS are presently in court because Ross allegedly damaged a meat processor which IFS owned. As the facts described above explain, the processor has never been in Illinois, and Ross' attempts at repairing it

did not take place in Illinois. [1]

> [1]  Plaintiff suggests that certain contractual negotiations concerning the cause of action did take place in Illinois. This argument is unpersuasive in that the "negotiations" plaintiff alludes to amount to nothing more than the exchange of a few phone calls and letters, and Ross' sending plaintiff a check for IFS' share of a payment on the machine at issue. The "transaction of business" provision of the Illinois long arm requires that the cause of action arise from defendant's business activities in the forum. See e.g., *Clements v. Barney Sporting Goods Store, 84 Ill. App. 3d 600, 406 N.E.2d 43, 45 (1st Dist. 1980)* (Only causes of action arising from the acts enumerated under the long arm serve as a basis for jurisdiction under the section. If a corporation chooses to transact business in a state it is not unjust to hold it answerable there for any damage stemming from its conducting business there.)

[*8]  In the instant case, plaintiff has brought a cause of action against a nonresident defendant, and plaintiff's cause of action does not stem from defendant's conduct in the state of Illinois. In Illinois, jurisdiction may be acquired over a nonresident for a cause of action unrelated to the corporation's activities in this state so long as the corporation is "doing business" in Illinois. *Braband v. Beech Aircraft Corp., (1978), 72 Ill.2d 548, 21 Ill. Dec. 888, 382 N.E.2d 652*. Illinois court have often stated that there is no all-inclusive test for determining whether a foreign corporation is doing business in the state, because the finding depends upon the specific facts of each case. *Cook Associates, Inc.. v. Lexington United Corp., (1981) 87 Ill.2d 190, 429 N.E.2d 847*. A finding that corporation is doing business, however, "generally requires that the corporation conduct business in Illinois of such a character and extent as to warrant the inference that it has subjected itself to the jurisdiction and laws of Illinois. *Maunder v. DeHavilland Aircraft of Canada, 68 Ill. Dec. 450, 445 N.E.2d 1303 (1983)*. See also, *Radosta v. Devil's Head Ski Lodge (1988), 122 Ill. Dec.* [*9] *302, 526 N.E.2d 561*.

Given the facts presented in this case, the court finds that the defendant was not "doing business" in Illinois in 1987, [2] and that the court did not have jurisdiction to enter a default judgement against the defendant. As was noted above, Ross has no offices or employees in Illinois.

Ross does not transact any business in Illinois, in that all orders for its meat processors are issued from Virginia. Ross does not use, own, or possess any real estate in Illinois. The defendant has no representatives selling its product in Illinois.

> [2]  See *Reeves v. Baltimore & Ohio R.R. Co. (1988), 122 Ill. Dec. 145, 526 N.E.2d 404, 408*. (Explaining that a court's focus for jurisdictional purposes must be upon whether the defendant was doing business in Illinois at the time the nonresident defendant became a party to the suit or was served with process.)

Except for trade shows, which are aimed at a national audience, Ross does not come to Illinois to promote its product. The company does not take orders for [*10] its meat processors at any of the trade shows it attends. Ross' advertisements, which are placed in "The National Provisor", a national journal, are not specifically directed at Illinois customers. Finally Ross' direct sales of equipment to Illinois residents are extremely limited. (Affidavit and supplemental affidavit of Henry Ross). A review of company records revealed that in 1987, only 1.3% of their sales of new machines were made to Illinois residents, in 1988 and 1990 no sales were made to Illinois residents, and in 1989 only .28% of sales were to Illinois residents.

IFS claims that the defendant is subject to jurisdiction in Illinois because it has been doing business here for years. According to the plaintiff, Nick Chura claimed to have sold as many as two dozen of the Ross' meat processors to Illinois customers during the mid 1970s and the early 1980s. (Affidavit of Robert Seeds, Jr.) The plaintiff claims that in 1988 Mr. Chura said his corporation, Hollymatic Corporation, had been distributing Ross' product for twenty years. Mr. Chura is finally credited with stating that there had been over 500 meat tendering machines manufactured by Ross Industries in the Chicago Metropolitan [*11] area, but that now there are approximately 100 machines located mainly at meat processing plants and stock yards. (Affidavit of Martin J. Specking). [3]

> [3]  Plaintiff also notes that Ross often attends national trade shows which are sometimes held in Chicago, and that the vice-president of Ross International, Brian Ross, has claimed to have been in Chicago "millions of times." (Affidavit of Linda Reed).

The court finds the plaintiff's arguments in support of jurisdiction unpersuasive for a number of reasons. First, most of plaintiff's suggestions that Ross present and "doing business" in Illinois are unsupported by any competent evidence. For example, while several of plaintiff's witnesses claim that Nick Chura said that he had sold Ross' product to Illinois clients in substantial numbers, Chura's own deposition does not support the witnesses' testimony. [4]

> 4    Chura claimed that he had no knowledge of making any statements regarding the number of Ross machines in Illinois. He did not know if Ross sold its product directly to an Illinois distributor. Finally, Chura was not at all certain about how many of the defendants machines he had personally sold. He described the assertion that he had sold between one and two dozen machines as "wishful thinking." (Chura deposition, p. 27).

[*12]    Chura acknowledged that he had been a distributor for Ross, but stated that this relationship existed some fifteen to twenty years ago, when he sold a couple of pieces manufactured by Ross. (Chura dep. at 8). Chura suggested that sold some meat packaging equipment which bought directly from Ross, but was unable to state how many machines were bought, or when they were bought. [5]

> 5    Henry Ross' affidavit states that the last machine purchased from Ross by Chura was bought in 1986, the court accepts this testimony. (Supplement to Henry Ross affidavit).

Many of the Ross machines which Chura purchased would appear to have been used machines, which he purchased from around the country and then resold in Illinois. (Dep. at 10). At any rate, the available evidence suggests that during the past twenty years, Chura never bought or sold more than a dozen of Ross' machines from the company, for sale in Illinois. More noteworthy, in terms of the court's determination of whether Ross is "doing business" in Illinois, Chura testified [*13] that he never sold products for Ross (Dep. at 7), that he was not an agent of Ross (Dep. at 7), that he never had a written agreement with Ross, and never received any commissions from Ross. (Dep. at 20). Hence, the record indicates that Chura never had a sustained business relationship with Ross.

Plaintiff's other proof that Ross has been "doing business" in Illinois is no more persuasive than the Chura deposition. Mr. Newman states that he has seen "many" Ross machines in Illinois. Newman's "many", however, is too vague to be of much use to plaintiff's case, since the court has no idea how many of the Ross machines Newman has seen, or even a suggestion of how many Chicagoland meat processors own a Ross meat processor. Newman's affidavit is further weakened by the fact that meat processors appear to last for a long time, and are sold across state lines on the "used" market. Indeed, even Newman admits that he bought a used meat processor, which he did not purchase directly from the defendant.

Given all of the above information regarding defendant's contacts with the forum, the court finds that Ross has not engaged in the sort of business activity which would subject a defendant to [*14] general jurisdiction in Illinois. The determination of whether a foreign corporation is doing business in Illinois depends on the nature and the quantity of contacts it maintains. *Japax, Inc. v. Sodick Co. Ltd. (1989), 134 Ill. Dec. 446, 542 N.E.2d 792*. Illinois courts agree that "doing business" means a "course of business" or a "regularity of activities," as opposed to isolated or sporadic acts. *Radosta, 526 N.E.2d at 564*. Ross has presented evidence which indicates that its business contacts with Illinois are isolated and sporadic, in that Illinois customers only occasionally contact the defendant in order to purchase its product. Plaintiff has presented nothing to counter the evidence that Ross' contacts with the forum are isolated and sporadic.

Finally, case law supports the court's conclusion that this is not a case in which an Illinois court would exercise general jurisdiction over the defendant. In most cases where Illinois courts have exercised personal jurisdiction over foreign corporations, the courts are said to have based their findings of jurisdiction on the existence of offices in Illinois, control over product distribution, or high sales in Illinois, all of [*15] which suggested a continuous and permanent presence in the forum. See e.g., *Braband v. Beech Aircraft Corp. (1978), 72 Ill.2d 548, 382 N.E.2d 252* (defendant held to be doing business in Illinois in part because it had supervisory control over its Illinois distributor pursuant to service and sales contract and had directed its sales and marketing program at Illinois). See also, *Maunder v. DeHavilland, 445 N.E.2d 1303 (1983)* (Court found evidence that defendant was doing business in Illinois where defendant's product

entered Illinois market by way of its wholly owned Illinois subsidiary and distributor); *Connelley v Uniroyal, Inc., (1979), 389 N.E.2d 155* (jurisdiction over the defendant was appropriate in a products liability suit where it was clear that the defendant's product regularly entered Illinois in substantial amounts); and *Colletti v. Crudele (1988), 120 Ill. Dec. 311, 523 N.E.2d 1222, 1229* (court found that Illinois courts had jurisdiction in a personal injury case, in which the defendant truck driving company had permission to operate its trucks in the state, and had always traveled through the state. The fact that defendant had consented to the court's [*16] jurisdiction in three other closely related cases also convinced the court that jurisdiction was proper.)

Hence, the court concludes that Illinois courts which have subjected corporate defendants to general jurisdiction have traditionally required some evidence that the defendant exercised some control over the sale or promotion of its product in Illinois, typically through a subsidiary, or product representative. The courts have also found evidence that the defendants product regularly entered Illinois in substantial amounts persuasive evidence that the defendant was doing business in the forum. In the instant case, defendant's business contacts with Illinois are isolated and sporadic. While Ross' product may be in Illinois, the record reveals that only a few direct sales of the machines have been made to Illinois residents. [6] Ross cannot be said to have solicited sales in Illinois, in that its only efforts at promoting business in Illinois are through advertisements in a national magazine, and its presence at a national trade show, when that show is in Chicago. [7]

> [6] Further, the court is unable to determine how many of the machines actually are in Illinois, and of those that are present, how many were bought used by a third party and sold to an Illinois resident.

[*17]

> [7] Moreover, the defendant takes no orders for its machines at any of the shows. The court is similarly unpersuaded that Ross "admission" that it had been to Chicago "millions of times" has any bearing on this decision. Defendant's limited sales in the Chicago area suggest that it has not been to Chicago "millions of times", and nothing else in the record even suggest that, aside from trade shows, that Ross has ever been to Chicago to promote its product. Ms. Reeds affidavit is also

weakened by the fact that it is not supported by Robert Seeds, who submitted two affidavits in this matter, despite the fact that she claims this conversation took place in his presence.

Finally, the court finds that this case is directly analogous to *Cook v. Lexington, 429 N.E.2d 847 (1981)*, a case in which the Illinois Supreme Court affirmed the Appellate Court's finding of no jurisdiction. In that case, the plaintiff also argued that Illinois courts could exercise general jurisdiction over the defendant because the defendant was doing business in the forum. In that case, like this one, the defendant had no offices [*18] in Illinois, no employees in Illinois, and no phone number in Illinois. Further, the defendant did not advertise in Illinois except in connection with its trade show, where it had on occasion sold as much as $ 50,000 in products to Illinois customers. Unknown quantities of the defendants product were sold by an independent manufacturer's representative in Illinois, to his Illinois accounts. That representative sold the merchandise of other manufacturers as well, worked strictly on a commission basis, and received no salary from the defendant. The Supreme Court of Illinois found that Illinois lacked jurisdiction over the defendant because it was not "doing business" in the forum, such that it should be found to have submitted itself to Illinois jurisdiction for all purposes. The Court explained that under the doing business standard, Illinois courts have consistently required a regularity of activities that was absent in Cook.

Like Cook, in the instant case, the evidence does not suggest that Ross exercised control over an Illinois representative, or that Ross engaged in a regularity of activities in Illinois at the time this cause of action arose. In sum, after a review of [*19] the facts of this case, and the controlling case law, the court finds that an Illinois court would not have jurisdiction over Ross International on the grounds that it was "doing business" in Illinois. Because the court finds that it lacked personal jurisdiction over the defendants at the time the default judgment was entered, the defendant's motion to vacate the default judgment and to quash the writ of execution are granted.

## Conclusion

For the foregoing reasons, defendant's motion to vacate the default judgment and quash the writ of execution are granted. This case dismissed for lack of personal jurisdiction over the defendants.

# EXHIBIT 7

**2008 International Home & Housewares Show**
*The global housewares and homegoods marketplace*
Sponsored by the International Housewares Association

<u>**A Fact Sheet**</u>

**Dates:**        March 16-18, 2008
Hours: Sunday, Monday 8:30 a.m.–5:30 p.m.; Tuesday 8:30 a.m.–5:00 p.m.

**Location:**     McCormick Place Exposition Center, Chicago, Illinois
*Online Show: http://www.housewares.org*

**Products:**     Thousands of housewares and homegoods products for every room in the house,
apartment or condo — and outdoor living, too. From high-end international design to
trend-setting basics, products range from kitchen electrics and small appliances to
gourmet specialty foods and cookware, from bakeware and kitchen tools to home decor,
space organizers and storage systems, home healthcare and home-office to pet supplies
and lawn and garden decor.

**Exhibitors:**   2,100 exhibitors — 500 new — with one-third coming from 40 countries outside the U.S.
Several international companies will exhibit in organized pavilions from Brazil, China,
Hong Kong, India, Taiwan, Thailand, Turkey and Vietnam.

**Exhibits:**     The Show features four product expos, organized as:
❑   Wired + Well Expo – Level 3, Lakeside Center
❑   Dine + Design Expo – Level 3, South Building, including GOHO, Cook + Bakeware
and Tabletop, Kitchen Essentials + Accents
❑   Clean + Contain Expo – Level 3, North Building, including Promotion in Motion
❑   Global Crossroads – Level 3, North Building, including International Pavilions

**Attendance:**   More than 60,000 buyers and sellers from over 100 countries. Thirty percent of an
expected 22,000 buyers come from outside the U.S., as do one-third of exhibitors. 75
percent of *all* U.S. buyers are specialty, independent retailers.

**Economics:**    One of top 10 trade events at McCormick Place, with an estimated $77 million economic
impact on Chicago.

**Sponsor:**      International Housewares Association – The Home Authority
*Voice of the $73 billion U.S. housewares (US$306.4 billion global) industry*
6400 Shafer Court, Suite 650
Rosemont, Illinois 60018 USA
1-847/292-4200
www.housewares.org

**Key Staff:**    Philip J. Brandl, President
Dean Kurtis, Vice President, Finance & Information Technology
Derek Miller, Vice President, International
Mia Rampersad, Vice President, Trade Show
Perry Reynolds, Vice President, Marketing & Trade Development

**Contact:**      Deborah A. Teschke, Manager, Media Relations & Communications
Direct: 847-692-0110; dteschke@housewares.org

**IHA - International Housewares Association:** *The Home Authority*
**Web:** www.housewares.org | **Ph:** 847-292-4200 | **Fax:** 847-292-4211

## IHA Press Releases

The International Housewares Association delivers timely news and event announcements about the International Home & Housewares Show as well as crucial Association updates.

Please select the type of release you would like to review:

- 2008 International Home & Housewares Show
- Press Kit: 2008 International Home & Housewares Show
- 2007/2008 International Housewares Association
- Archived Releases

---

**2008 INTERNATIONAL HOME & HOUSEWARES SHOW**                    (back to top)

| Title: | Release Date: |
| --- | --- |
| 25 Products Named 2008 Design Defined Honorees at International Home + Housewares Show | April 4, 2008 |
| Housewares Charity Foundation Raises $1.7 Million at 2008 Gala | March 27, 2008 |
| IHA Announces Record Buyer Participation at 2008 International Home + Housewares Show | March 26, 2008 |
| "RE" Themes Highlight Pantone's Color Forecast for 2009 | March 18, 2008 |
| **Forecasters Reveal That the Future of Color Is Not What It Used To Be** | March 18, 2008 |
| Tony Snow Cites a Climate of Optimism in Both International and U.S. Outlooks During His Industry Breakfast Address | March 18, 2008 |
| In The Green: Ganshirt and DeGarbo Look at Creating a Brand Experience That  Provides the Best Green Value | March 17, 2008 |
| Paula Deen Charms Audience with Her Charmed Consumer Keynote Address | March 16, 2008 |
| Wal-Mart Named Gia World Honoree | March 16, 2008 |
| 2007-2008 Global Gia National Winners and Trade Journal Sponsors (PDF) | March 16, 2008 |
| 2007-2008 Global Gia Honorees Announced at International Home + Housewares Show | March 16, 2008 |
| Record Buyer Attendance Expected for 2008 International Home + Housewares Show | March 5, 2008 |
| Housewares Industry Adds New Honorees for 11th Annual Charity Gala March 17 | February. 14, 2008 |
| Student Design Competition Showcases Creative Product Concepts at 2008 International Home + Housewares Show | February. 13, 2008 |

| | |
|---|---|
| Sizzling Line-up of Celebrity Chefs Headlines GOHO Cooking Theater at 2008 International Home + Housewares Show | January 29, 2008 |
| Former White House Press Secretary Tony Snow to Address Industry Breakfast at 2008 International Home + Housewares Show | December 11, 2007 |
| **Food Network Star Paula Deen to Keynote 2008 International Home + Housewares Show** | November 12, 2007 |

PRESS KIT -
2008 INTERNATIONAL HOME & HOUSEWARES SHOW

(back to top)

| **Title:** | **Release Date:** |
|---|---|
| Design Defines the Cutting Edge in Housewares Innovation Today (PDF) | January 2008 |
| Go Global with "GIA" and Special International Exhibits (PDF) | January 2008 |
| Consumers Warm to "Green" Products, want to Make Good Choices (PDF) | January 2008 |
| Industry Breakfast: Tony Snow Looks at Presidential Election, State of the World. (PDF) | January 2008 |
| Student Design Competition Celebrates 15 Years of Big Ideas (PDF) | January 2008 |
| Environmental Concerns, Healty Eating, Home Remodeling Key Trends in 2008 (PDF) | January 2008 |
| Special Exhibits and Events Tell the Housewares Story in 2008 (PDF) | January 2008 |
| Schedule at a Glance (PDF) | January 2008 |
| Show Fact Sheet (PDF) | January 2008 |
| Show Shopping Form (PDF) | January 2008 |

IHA - INTERNATIONAL HOUSEWARES ASSOCIATION

(back to top)

| **Title:** | **Release Date:** |
|---|---|
| China Expert Peter Navarro to Keynote 2008 Chief Housewares Executives SuperSession | May 2, 2008 |
| Siliconezone USA's Karyo Elected to IHA Board of Directors | January 18, 2008 |
| Housewares Remain Buoyant In Stormy Economic Seas | December 20, 2007 |
| Housewares Shippers Association Continues to Achieve Success for Members | December 18, 2007 |
| IHA Board of Directors Welcomes Four New Members | August 6, 2007 |
| Housewares Charity Foundation Welcomes Two New Board Members | August 5, 2007 |
| New Service Offers Streamlined, Innovative Approach to Patented Product Opportunities | June 3, 2007 |
| | February 21, |

| | |
|---|---|
| IHA *HomeStats*™ To Provide Industry Category Data | 2007 |
| **Housewares Industry Buoyed by 2006 Growth as Cost Pressures Stabilize Into 2007** | January, 2007 |
| KitchenAid's Armstrong Elected to IHA Board Of Directors | January 18, 2007 |
| 2006 IHA State-of-the-Industry Report Examines Global Housewares Market | December 21, 2006 |

# EXHIBIT 8

LEXSEE 1997 US DIST LEXIS 2728

**FLUID MANAGEMENT LIMITED PARTNERSHIP, an Illinois Limited Partnership, Plaintiff, v. H.E.R.O INDUSTRIES, LTD., a Canadian Corporation, FAST AMERICA, a New Jersey Corporation and FAST SpA, an Italian Corporation, Defendants.**

**No. 95 C 5604**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1997 U.S. Dist. LEXIS 2728*

**March 3, 1997, Decided
March 11, 1997, DOCKETED**

**DISPOSITION:** [*1] Fast America's and Fast Italy's motion to dismiss Plaintiff's Complaint for improper venue granted. Fast America's and Fast Italy's alternative request for transfer of this action to the District Court of New Jersey dismissed as moot.

**COUNSEL:** For FLUID MANAGEMENT LIMITED PARTNERSHIP, an Illinois limited partnership, plaintiff: Morgan Lewis Fitch, Jr., John F. Flannery, Mark Warren Hetzler, Fitch, Even, Tabin & Flannery, Chicago, IL.

For H.E.R.O. INDUSTRIES LTD, a Canadian corporation, defendant: Michael J. Wagner, Baker & McKenzie, Chicago, IL. For FAST AMERICA, a New Jersey corporation, defendant: Michael J. Wagner, (See above). Stephen L. Baker, Ben C. Friedman, Baker & Friedman, New York, NY. For FAST, an Italian corporation, defendant: Michael J. Wagner, (See above). Stephen L. Baker, (See above), Ben C. Friedman, (See above).

**JUDGES:** GEORGE M. MAROVICH, UNITED STATES DISTRICT JUDGE

**OPINION BY:** GEORGE M. MAROVICH

**OPINION**

MEMORANDUM OPINION AND ORDER

Plaintiff Fluid Management Limited Partnership ("Fluid Management") filed this action against Defendants H.E.R.O. Industries, Ltd. ("H.E.R.O."), FAST AMERICA, Inc. ("Fast America") and FAST SpA ("Fast Italy"), alleging various claims of patent [*2] infringement, trademark infringement, and unfair competition. Fast America and Fast Italy (collectively "Defendants") now move the Court to dismiss the Complaint for improper venue pursuant to *Fed. R. Civ. P. 12(b)(2) and (3)* or, in the alternative, to transfer the action to the District Court of New Jersey in the interest of justice and for the convenience of the parties and the witnesses. H.E.R.O. has not joined in the present motion. 1 For the reasons set forth below, this Court grants Defendants' motion to dismiss for improper venue.

1 Defendant H.E.R.O. has answered the present Complaint.

BACKGROUND

Fluid Management is an Illinois manufacturer and distributor with its principal place of business in Wheeling, Illinois.

Fast America is a New Jersey corporation with its only office and place of business in Ewing, New Jersey. It was started in 1994 for the purpose of selling in the United States the products of Fast Italy, an Italian corporation with its principal place of business in Milan, Italy. Fast [*3] Italy produces and distributes equipment for mixing and dispensing paint and paint colorants; other

than supplying products to Fast America, Fast Italy conducts no other business in the United States. Both Fast Italy and Fast America are wholly owned subsidiaries of Gecofin, another Italian corporation, and all three of these corporations are controlled by the family of Sergio Neri ("Neri"). Neri, a resident of New Jersey, is, and has been since its inception, the president and sole director of Fast America. Neri also has been, since 1990, a director of Fast Italy, and a director and shareholder of Gecofin.

Fluid Management holds the rights to *United States Patent No. 5,078,302 (the "302 Patent")*, "Paint Dispensing Apparatus", used for coloring paint-base material. The fully automatic device dispenses colorant into a paint-base product to achieve a desired color, thereby allowing a paint retailer to avoid having to maintain a separate inventory for numerous colors of paint. Fluid Management asserts that Fast America, Fast Italy, and their Canadian distributor, H.E.R.O, which is licensed to sell Fast products within the United States, have infringed on this patent with a product that [*4] they have advertised and marketed in the United States called the "Leonardo." The Leonardo is a decorative paint colorant dispenser, approximately the size of a refrigerator.

Neither Fast Italy nor Fast America are licensed to do business in Illinois, own or lease an office or place of business in Illinois, have any employees or salespeople in Illinois, or have any bank accounts or telephone listings in Illinois. Fast America has not made any sales of the allegedly infringing Leonardo device in Illinois, or anywhere in the United States. With the exception of a sale of paint can lids for a total price of $ 538.10 sold to a Fast America client in Ohio in May 1995, but shipped to an address in Illinois, Fast America has not made any sales in or to Illinois.

Fast America's alleged contact with Illinois primarily stems from its participation in the National Decorating Products Association trade show ("NDPA trade show") held in Chicago, Illinois in September 1995. The NDPA trade show is an annual event and provides manufacturers of paint and decorating products the opportunity to display their products and interact with other members of the industry. At the NDPA trade show, Fast America [*5] displayed two Leonardo devices in their exhibit booth, along with other Fast products. These displayed products were presented and arguably demonstrated with numerous attendees.

Prior to the NDPA show, Neri wrote to a number of prospective attendees. In one letter, to United Coatings, an Illinois distributor, Neri stated "We are an established manufacturer of paint mixing and paint dispensing equipment with facilities worldwide. We have been in business for over 30 years and recently opened a branch in Princeton, New Jersey." Neri invited the representative to "visit our booth [at the trade show] . . . so that we can demonstrate our products and discuss how Fast America, Inc. can best serve your mixing/dispensing equipment needs." (Pl.'s Ex. 3). Brochures illustrating and describing the Leonardos were distributed at the Fast booth, and an advertisement, including a toll-free number, was on the inside cover of the trade show program book. Fast America discussed their products with several attendees at the trade show, two of which left business cards. Following the show, Fast America sent letters to the two Illinois businesses which had left their business cards, and forwarded brochures [*6] of Fast equipment to them.

Fast America's other alleged contact with Illinois includes sending a sample of free paint can lids to one business in Niles, Illinois and adverting Fast equipment in Decorating Retailer, a trade magazine published monthly by the National Decorating Products Association for the decorating products industry.

In their present motion, both Fast America and Fast Italy claim that their respective relationships to Illinois are too attenuated to justify the exercise of this Court's jurisdiction. Specifically, they argue that Fast America's only contact was Illinois was its attendance at the NDPA show, where it made no sales and took no order for sales, and that Fast Italy's only contact with the United States is shipping its products to Fast America in New Jersey. Fluid Management, however, contends that Fast America and Fast Italy have unified ownership and control and are organized and operate as an integrated single entity--"Fast", and further that Defendants' contacts with Illinois do permit this Court to exercise jurisdiction over them.

DISCUSSION

A. Venue is Improper in this Judicial District

A patent infringement action "may be brought [*7] in the judicial district where the defendant resides, or where the defendant has committed acts of infringement

and has a regular and established place of business." *28 U.S.C. § 1400(b)*. Defendants here have no "regular and established business" in Illinois, a point that is not contested by Fluid Management. The question, therefore, is whether, for *§ 1400(b)* purposes, Fast America and Fast Italy "reside" in the Northern District of Illinois.

The term "resides" as used in *§ 1400(b)* is construed in conjunction with the general venue statute, *28 U.S.C. § 1391(c)*. *VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1584 (Fed. Cir. 1990)*, cert. denied, *499 U.S. 922, 113 L. Ed. 2d 248, 111 S. Ct. 1315 (1991)*. Pursuant to *§ 1391(c)*, a corporate defendant resides in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. Id. Thus, to establish proper venue in this case, Fluid Management must show that Defendants are amenable to personal jurisdiction in this Court. See *North Am. Philips Corp. v. American Vending Sales, Inc., 35 F.3d 1576, 1577 n.1 (Fed. Cir. 1994)*("The venue issue is subsumed in the personal [*8] jurisdiction issue.").

A federal district court in Illinois has personal jurisdiction over a non-resident party "only if an Illinois state court could have such jurisdiction." *Braden Shielding Sys. v. Shielding Dynamics, 812 F. Supp. 819, 822 (N.D. Ill. 1992)*. The burden of demonstrating the existence of personal jurisdiction rests with the plaintiff. *McIlwee v. ADM Indus., 17 F.3d 222, 223 (7th Cir. 1994)*. To assert personal jurisdiction over a non-resident defendant, both the Illinois long-arm statute and constitutional due process standards must be satisfied. Id.

Under Illinois' long-arm statute, non-resident defendants are subject to personal jurisdiction if they meet any of the conditions enumerated in the statute. *735 ILCS § 5/2-209*. For example, the statute vests an Illinois court with power over a defendant "as to any cause of action arising from . . . the transaction of business" in Illinois, or from the "commission of a tortious act" in Illinois. *735 ILCS § 5/2-209(a)(1)* and *(2)*. In addition, a court may exercise jurisdiction on any other basis permitted by the Illinois or United States Constitutions. *735 ILCS § 5/2-209(c)*. The effect of this provision of [*9] the statute is that the reach of the Illinois long-arm statute extends to the limits of federal due process. *Dehmlow v. Austin Fireworks, 963 F.2d 941, 945 (7th Cir. 1992)*; *FMC Corp. v. Varonos, 892 F.2d 1308, 1311 n.5 (7th Cir. 1990)*.

Fluid Management contends that the exercise of

jurisdiction over Defendants is permissible under § 2-209(a)(2)--because Defendants have committed patent infringement within Illinois--, or § 2-209(c)--because jurisdiction is permitted under the Illinois and United States Constitution. On the facts of this case as pled, however, the Court finds that the exercise of personal jurisdiction over Fast America and Fast Italy is improper.

1. "Tortious Act"

Fluid Management argues that Fast America and Fast Italy are subject to personal jurisdiction pursuant to § 2-209(a)(2) of the Illinois long-arm statute because they committed a tortious act within the state--the alleged patent infringement pursuant to *35 U.S.C. § 271(a)*. It is well-established that infringement of a patent constitutes tortious activity. See, e.g., *Energy Absorption Sys., Inc. v. Roadway Safety Serv., Inc., 1994 U.S. Dist. LEXIS 1115, 1994 WL 33966*, at *2 (N.D. Ill. Feb. 4, 1994). Thus, the exercise [*10] of personal jurisdiction over the defendants satisfies § 2-209(a)(2) of the long-arm statute provided that they could be deemed to have committed an act of infringement in Illinois.

Pursuant to *35 U.S.C. § 271(a)*, "whoever without authority makes, uses or sells any patented invention, within the United States during the time of the patent therefor, infringes the patent." Although it is undisputed that no Leonardos have been sold anywhere in the United States, Fluid Management argues that Defendants' presence and display of the Leonardo at the NDPA trade show, coupled with their attempted solicitation in Illinois is sufficient to constitute an "act of infringement." (Pl.'s Opp'n Mem. at 12-13). This Court disagrees.

Courts have held that "the mere demonstration or display of an accused product, even in an obviously commercial atmosphere" is not an act of infringement within the ambit of *§ 271(a)*. *Intermedics, Inc. v. Ventritex, Inc., 775 F. Supp. 1269, 1286 (N.D. Cal. 1991)*, aff'd, *991 F.2d 808, 1100 (Fed. Cir. 1993)*(referring to the demonstration of an accused product at a scientific trade show); see *Bradshaw v. Igloo Prods. Corp., 912 F. Supp. 1088, 1101 (N.D. Ill. [*11] 1996)*; *Knapp-Monarch Co. v. Casco Prods., 342 F.2d 622, 626 (7th Cir.)*, cert. denied, *382 U.S. 828, 15 L. Ed. 2d 73, 86 S. Ct. 64 (1965)*; *Brennan v. Mr. Hanger, Inc., 479 F. Supp. 1215 (S.D.N.Y. 1979)*. Furthermore, "in cases directly addressing the question of whether promotional activity involving an infringing device, but not culminating into a sale of the infringing device,

constitutes a violative 'use' under [ ] *§ 271(a)*, courts have generally held to the contrary." *Bradshaw, 912 F. Supp. at 1100.*

In *Intermedics*, the court was asked to determine whether the defendant's acts, including the demonstration of the accused device at a trade show, was an act of infringement under *§ 271(a)*. The *Intermedics* court's discussion regarding the trade show demonstration is particularly helpful in the instant case:

> All of the cases which plaintiff cites in support of the assertion that trade show demonstrations can constitute acts of infringement under *§ 271(a)* were concerned with defining "acts of infringement" in the context of deciding whether venue was proper.
>
> * * *
>
> Even those cases which apply the less strict standard for "acts of infringement" applicable [*12] to venue disputes have generally required not only demonstration of the accused device, but also some other activity culminating in a sale of that device as a prerequisite to formally resolving the venue issue.
>
> * * *
>
> From these cases and others, we conclude that even under the less strict test of infringement applied to venue disputes, demonstration of an accused device does not constitute an act of infringement unless the "totality of the circumstances" also reveal concurrent "sales oriented" activity which results in, or at least substantially advances, an actual sale of the accused device. We conclude that the mere demonstration or display of an accused product, even in an obviously commercial atmosphere, does not constitute an infringing use under *§ 271(a).*

*775 F. Supp. at 1285-86* (citations omitted)(emphasis added).

In this case, is undisputed that the display of the Leonardos at the NDPA show, even combined with Defendants' solicitation and limited sales-related activity, did not result in any sale, or sale order, of the Leonardos in this judicial district or elsewhere in the United States. Further, it appears that Defendants' actions in Illinois did not substantially [*13] advance an actual sale of the product. Thus, viewing the totality of the circumstances, the Court finds that Defendants' alleged acts of infringement in Illinois cannot form the basis for personal jurisdiction under § 2-209(a)(2).

2. Due Process

Even absent the commission of a tort in Illinois (or any other act specified in the long-arm statute), personal jurisdiction still can be obtained over Defendants if the constitutional due process requirements are satisfied. *Duplitronics, Inc. v. Custom Tape Duplicators, Inc., 1993 U.S. Dist. LEXIS 374, 1993 WL 11854*, at *1 (N.D. Ill. Jan. 15, 1993). However, Plaintiffs here have not shown that the exercise of jurisdiction over Defendants would comport with due process guarantees.

Federal due process requires that a court in Illinois exercise *in personam* jurisdiction over a defendant only if the defendant has "'certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. at *2 (citing *International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*(internal citations omitted)). Such "minimum contacts" exist in two situations: [*14] when either the cause of action before the court relates to or arises out of the defendant's contacts with that forum state, see *Shaffer v. Heitner, 433 U.S. 186, 204, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977)*, or defendant has sufficient general contacts with the forum which, although unconnected to the cause of action, can be described as "contacts of a continuous and systematic nature." *Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408, 416, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)*. Moreover, a defendant must have purportedly directed his activities at residents of the forum state and the litigation results from those activities. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)*. The principal factor in the analysis is whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson, 444*

*U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)*. A defendant may not be haled into a jurisdiction "solely as a result of random, fortuitous or attenuated contacts." *Burger King, 471 U.S. 462, 471,* [*15] *85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)*.

Applying these principles to the present action, this Court finds that it would be unreasonable to exercise jurisdiction over Fast America, a New Jersey corporation, and Fast Italy, an Italian corporation. First, Defendants' relationship to Illinois cannot be described as contacts of a continuous or systematic nature. It is apparent that neither Fast America nor Fast Italy reside, have a regular and established place of business, own any interest in real estate, or have a telephone listing, bank account or mailing address in Illinois. Defendants are not licensed to do business in Illinois or have any employees or salespeople in Illinois. The only sale that Fast America has made to Illinois was for paint can lids sold to a Fast America client in Ohio and shipped to Illinois. The paint can lids were sold for $ 538.10, representing less than one tenth of one percent of Fast America's yearly sales of over $ 678,227.00 in 1995.

Fast America's contacts with Illinois arise from their display and arguable demonstration of their products at the NDPA trade show, which happened to be held in Chicago, and their presumable attempt to market their products, [*16] including the Leonardo, to several Illinois customers who were planning to attend and/or did attend, the trade show. Significantly though, as discussed above, despite Fast America's limited efforts to promote their products in connection with the trade show, they did not make any sales (direct or indirect), or take any orders for sales, for any of their products at the trade show, nor have they sold any of the infringing devices in Illinois or elsewhere in the United States. Considering the nature and quality of these acts, this Court does not find that Fast America purposefully availed themselves of the privilege of conducting business within Illinois such that they should have reasonably anticipated that they might be haled into court in Illinois. See *World-Wide Volkswagen, 444 U.S. at 297*; I.B. Diffusion L.P. v. Lands' End, Inc. v. Missbrenner, 1995 WL 257871, at *2-3 (N.D. May 1, 1995); cf *Duplitronics, 1993 U.S. Dist. LEXIS 374, 1993 WL 11854*, at *2 (personal jurisdiction found in patent infringement case where defendants advertised in four publications distributed in Illinois, sent sales representatives into the state to market products, and sold goods to Illinois residents each year

for three [*17] years).

Similarly, the Court does not find Fast America's listing in a national trade magazine to amount to purposeful contact with Illinois that satisfies due process guarantees, as Plaintiff contends. A listing in a trade magazine that finds its way into a forum state does not subject a defendant to personal jurisdiction in that state. See *Hall's Specialties, Inc. v. Schupbach, 758 F.2d 214, 216 (7th Cir. 1985)*(no minimum contacts where seller of defective product advertised product in forum state magazine and sold the product to resident in that state); see also *Singletary v. B.R.X., Inc., 828 F.2d 1135, 1136-37 (5th Cir. 1987)*(insufficient jurisdictional contacts where defendant had de minimis sales in forum state and advertised in national trade magazine circulated in forum state); Fidelity v. *Cas. Co. v. Philadelphia Resins Corp., 766 F.2d 440, 446-47 (10th Cir.), cert. denied, 474 U.S. 1082, 88 L. Ed. 2d 893, 106 S. Ct. 853 (1985)*.

This Court concludes, therefore, that the facts of this case do not establish adequate minimum contacts such that the exercise of personal jurisdiction over Fast America in Illinois is consistent with fair play and substantial justice. [*18] [2] Accordingly, although Defendants may be subject to personal jurisdiction in New Jersey, where Fast America is located and where Fast Italy ships its paint products, Defendants are not subject to personal jurisdiction in this district and thus, venue here is improper. See *28 U.S.C. § 1400(b)*; *28 U.S.C. § 1391(c)*.

> 2  Fluid Management argues that Fast America's "department- like inter-relationships" with Fast Italy indicates, at a minimum, a principal-agent relationship between the two "Fast" companies and, thus, that Fast Italy's contacts with Illinois through its agent Fast America warrant this Court's exercise of jurisdiction over Fast Italy. Even if Plaintiff is correct, however, because Fast America's connections with Illinois are insufficient to establish personal jurisdiction over Fast America in this district, personal jurisdiction over Fast Italy likewise is lacking here.

B. Motion to Transfer is Dismissed

As an alternative to their motion to dismiss for lack of personal jurisdiction, [*19] Fast America and Fast Italy sought to transfer this case to the District of New

Jersey. [3] However, because this Court lacks jurisdiction over the movants, the motion to transfer is dismissed as moot. [4]

3     Transfer is appropriate under *28 U.S.C. § 1404(a)* where the moving party demonstrates (1) that venue is proper in the transferor district; (2) that venue is proper in the transferee district; and (3) that the balance of convenience and the interests of justice strongly favor transfer. *Haymon v. Ply Gem Indus., Inc., 1996 U.S. Dist. LEXIS 3702, 1996 WL 145845*, at *1 (N.D. Ill. Mar. 27, 1996); Von Holdt, Sr. v. *Husky v. Injection Molding Sys., Ltd., 887 F. Supp. 185, 188 (N.D. Ill. 1995)*

4     Because Defendant H.E.R.O. has filed its Answer to Plaintiff's Complaint, this Court has jurisdiction over all matters in this action relating to H.E.R.O. Should Plaintiffs elect to--and be permitted to--refile their Complaint against Fast America and Fast Italy in New Jersey, it may be appropriate for this Court to transfer the remainder of this action to New Jersey at that time.

[*20] CONCLUSION

For the foregoing reasons, Fast America's and Fast Italy's motion to dismiss Plaintiff's Complaint for improper venue is granted. Fast America's and Fast Italy's alternative request for transfer of this action to the District Court of New Jersey is dismissed as moot.

ENTER:

GEORGE M. MAROVICH

UNITED STATES DISTRICT JUDGE

DATED: March 3, 1997

# EXHIBIT 9

3 of 3 DOCUMENTS

**AMERITECH SERVICES, INC., a Delaware corporation, Plaintiff, vs. SCA
PROMOTIONS, INC., a Texas corporation, Defendant.**

**No. 99 C 4160**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*2000 U.S. Dist. LEXIS 3067*

**March 3, 2000, Decided
March 6, 2000, Docketed**

**DISPOSITION:**    [*1] Defendant's motion to dismiss
granted.

**COUNSEL:** For AMERITECH SERVICES, INC.,
plaintiff: Michael M. Lorge, Laser, Pokorny, Schwartz,
Friedman & Economos, P.C., Chicago, IL.

For SCA PROMOTIONS, INC., defendant: Brian W.
Lewis, Devlin Joseph Schoop, Samuel Seth Cohen,
Wildman, Harrold, Allen & Dixon, Chicago, IL.

**JUDGES:** JAMES B. MORAN, Senior Judge, U. S.
District Court.

**OPINION BY:** JAMES B. MORAN

**OPINION**

**MEMORANDUM AND ORDER**

Plaintiff Ameritech Services, Inc. (Ameritech) brings
this action against SCA Promotions, Inc. (SCA) alleging
breach of contract and failure to insure. For the reasons
set forth below, we grant defendant's motion to dismiss
the complaint for lack of personal jurisdiction.

**BACKGROUND**

Ameritech is a telecommunications company
organized under the laws of Delaware and based in
Illinois. In early 1998, Ameritech was in the process of
developing a promotional campaign in which it planned

to offer pre-paid phone cards free of charge to customers
who purchased eligible Ameritech products and services.
While designing the campaign, Ameritech became
concerned that the cost of its promotion might exceed its
budget. In January 1998, an Ameritech representative
attended [*2] a conference in Florida at which he learned
that SCA, a Texas corporation based in Dallas, was in the
business of helping companies avoid budgetary overruns
in connection with promotional campaigns (Hamman
Aff. at PP 15-16). An Ameritech official telephoned SCA
within a few weeks after the conference and asked SCA
to prepare a proposal for Ameritech's planned phone-card
promotion. Over the course of the next several weeks
representatives of the two companies negotiated via
telephone, fax, and mail communications (Hamman Aff.
at P 17). The two companies eventually reached an
agreement by which SCA would be responsible for cost
overruns if Ameritech distributed more than 400,000
phone cards in the course of its promotion. The
agreement took the form of two short contracts (Cplt.
Exhs. 1 & 2). On April 6, 1998, an agent of Ameritech
signed the contracts and then sent them to Dallas, where
an SCA official completed the deal by executing the
contracts on April 8, 1998 (Hamman Aff. at P 19).

Ameritech distributed 570,853 phone cards during its
promotional campaign. Having exceeded its budget for
the promotion, Ameritech asked SCA to fulfill its
contractual duties and cover the cost overrun. [*3] SCA
refused, claiming that Ameritech's method of distributing
the phone cards was not authorized by the terms of the
contracts and therefore the excess costs fell outside the
scope of SCA's obligations. Ameritech filed suit in state

court in Illinois to enforce the contracts. On June 23, 1999, the complaint was removed to federal court pursuant to *28 U.S.C. §§ 1332, 1441* and *1446*. Counts I and II of the complaint allege breach of contract, and Count III alleges failure to insure on the part of SCA. SCA has moved to dismiss the complaint for lack of personal jurisdiction. *See Fed.R.Civ.P. 12(b)(2)*. In the alternative, SCA seeks to dismiss Count III for failure to state a claim. *See Fed.R.Civ.P. 12(b)(6)*. We dismiss the complaint in its entirety for want of jurisdiction.

**DISCUSSION**

On a motion to dismiss the plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997)*. In determining whether personal jurisdiction exists, we may receive and consider affidavits from both parties. *Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987)*. [*4] We must resolve factual disputes in the pleadings and affidavits in favor of the plaintiff, but take as true those facts in defendant's affidavits that are unrefuted. *Jamik, Inc. v. Days Inn of Mount Laurel, 74 F. Supp. 2d 818, 821 (N.D. Ill. 1999)*.

In a diversity action a federal court has personal jurisdiction if a court in the state in which it sits would have such jurisdiction. *See Klump v. Duffus, 71 F.3d 1368, 1371 (7th Cir. 1995); cert. denied, 518 U.S. 1004, 135 L. Ed. 2d 1047, 116 S. Ct. 2523 (1996)*. In this case we look to Illinois' long arm statute to determine whether we have personal jurisdiction over SCA. *See 735 ILCS 5/2-209*. The Illinois statute, in turn, provides that a court may exercise personal jurisdiction on any basis permitted by the Illinois Constitution and the Constitution of the United States. *735 ILCS 5/2-209(c); RAR, 107 F.3d at 1276*. Under the Illinois Constitution's due process clause, personal jurisdiction "is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which [*5] affect interests located in Illinois." *Rollins v. Ellwood, 141 Ill. 2d 244, 565 N.E.2d 1302, 1316, 152 Ill. Dec. 384 (Ill. 1990)*. Unfortunately, the Illinois courts have provided little guidance as to how Illinois due process differs from federal due process. *See RAR, 107 F.3d at 1276; Jamik, 74 F. Supp. 2d at 821-22*. Therefore, we will focus our inquiry on the federal constitutional requirements for personal jurisdiction.

Ameritech argues that personal jurisdiction over SCA is constitutionally permissible because the claims underlying this lawsuit arise out of SCA's specific contacts with Illinois. [1] *See 735 ILCS 5/2-209(a); NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572, 580 (7th Cir. 1994)*. Ameritech's argument invokes the concept of specific jurisdiction. [2] In RAR, the Seventh Circuit elucidated the constitutional standards applicable in such cases:

> In specific jurisdiction cases, we must decide whether a defendant has "purposefully established minimum contacts within the forum State" and consider whether, by traditional standards, those contacts would make personal jurisdiction reasonable and fair [*6] under the circumstances. Crucial to the minimum contacts analysis is showing that the defendant "should reasonably anticipate being haled into court [in the forum State]," because the defendant has "purposefully availed itself of the privilege of conducting activities" there.

*RAR, 107 F.3d at 1277* (citations omitted). The Seventh Circuit also admonished that specific jurisdiction requires that the lawsuit "arise out of" or "be related to" a defendant's minimum contacts with the forum state. *Id.* "We cannot simply aggregate all of a defendant's contacts with a state -- no matter how dissimilar in terms of geography, time or substance -- as evidence of the constitutionally-required minimum contacts." *Id.* With these standards in mind, we examine SCA's specific contacts with Illinois to determine whether this lawsuit arises out of those contacts in a manner sufficient to warrant exercising personal jurisdiction over SCA.

1  Specifically, Ameritech argues that SCA transacted business in Illinois, contracted to insure a risk located in Illinois, and entered into a contract substantially connected to Illinois, thereby giving rise to the claims alleged in the complaint. See *735 ILCS 5/2-209(a)(1), (4)* and *(7)*.

[*7]

2  Ameritech does not, and cannot, rely on a theory of general jurisdiction. The Illinois long arm statute authorizes jurisdiction over corporations "organized under the laws" of Illinois or "doing business" in Illinois regardless

of whether the lawsuit arises out of the company's Illinois contacts. *735 ILCS 5/2-209(b)(3)* and *(4)*. SCA is a Texas corporation based in Dallas, Texas; it is not licensed to do business in any other state. SCA has no physical presence -- no office, mailbox, or telephone -- in Illinois, and its employees rarely make business-related visits to this state. (Hamman Aff. at PP 2-14). SCA does not have "continuous and systematic general business contacts" with Illinois and therefore is not subject to general jurisdiction in this state. See *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)*.

It is well settled that a non-resident defendant, like SCA, does not subject itself to personal jurisdiction in Illinois simply by entering into a contract with an Illinois resident. See *RAR, 107 F.3d at 1277* (*citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985))*. [*8] Instead, courts consider a number of factors as relevant to the question of specific jurisdiction, including who initiated the transaction, where the negotiations were conducted, where the parties executed the contract, and where the defendant would have performed the contract. *RAR, 107 F.3d at 1277*; see *Dillon Enterprises, Ltd. v. Breland Builders, Inc., 1998 U.S. Dist. LEXIS 12989, 1998 WL 525173*, at *2 (N.D. Ill. Aug. 19, 1998) All of these factors weigh against exercising personal jurisdiction over SCA. First, the evidence indicates that Ameritech initiated the discussions which led to the contractual relationship. Ameritech telephoned SCA after an Ameritech official learned of SCA's business at the January 1998 trade show in Florida (Hamman Aff. at PP 15-16). This fact is not disputed by Ameritech and therefore we take it as true.

Second, the contracts between Ameritech and SCA were not negotiated in Illinois. After Ameritech's initial telephone inquiry to SCA, both parties engaged in further discussions regarding the deal via telephone, fax, and mail communications (Hamman Aff. at P 17). Significantly, the negotiations were not conducted in person, and no representative [*9] of SCA traveled to Illinois to meet with Ameritech officials. Ameritech argues that by making calls to Illinois telephone numbers and sending faxes and mailings into Illinois, SCA purposefully availed itself of the benefits and protections of Illinois law. This is incorrect. All of SCA's communications with Illinois followed from Ameritech's

initial inquiry into the possibility of a deal with SCA. Even when aggregated, SCA's telephone calls, faxes, and mailings to Ameritech's Illinois offices did not amount to minimum contacts with Illinois. See *Dillon, 1998 U.S. Dist. LEXIS 12989, 1998 WL 525173*, at *3; *Buske Lines, Inc. v. Thermo King Michigan, Inc., 960 F. Supp. 170, 171-72, 174 (C.D. Ill. 1997)*; *Cherry Communications, Inc. v. Coastal Telephone Co., 906 F. Supp. 452, 455 (N.D. Ill. 1995)*.

Third, the contracts at issue here were made in Texas. Ameritech signed the proffered written agreements on April 6, 1998, and then sent them to SCA's office in Dallas. On April 8, 1998, SCA signed the agreements, concluding the deal (Hamman Aff. at P 19). Under Illinois law the "place where the last act necessary to give validity to the contract is done is the place [*10] where the contract is made." *Gordon v. Tow, 148 Ill. App. 3d 275, 498 N.E.2d 718, 722-23 (Ill. App. 5 Dist. 1986, 101 Ill. Dec. 394)* (quoting *Youngstown Sheet & Tube Co. v. Industrial Commission, 79 Ill. 2d 425, 404 N.E.2d 253, 257, 38 Ill. Dec. 829 (Ill. 1980))*. Therefore, since SCA completed the deal by signing the contracts on April 8, 1998, the contracts were made in Texas. See *Gordon, 498 N.E.2d at 722-23* (no personal jurisdiction in Illinois where final signature to contract was affixed in Rhode Island); see also *Jamik, 74 F. Supp. 2d at 823*.

Finally, performance of the contract, if any, would take place in Texas. If obligated to perform under the contract, SCA would draw a check in Texas from a Texas bank and send it to Illinois (Hamman Aff. at P 20). Ameritech argues that the budgetary overrun occurred in Illinois, where it is based, and therefore the place of performance is Illinois. Ameritech's performance, however, is irrelevant. *Helicopteros, 466 U.S. at 416-17, 80 L. Ed. 2d 404, 104 S. Ct. 1868*; *Cherry, 906 F. Supp. at 455*. The personal jurisdiction analysis focuses on where the non-resident defendant would perform the contract. In this case, SCA's performance would occur [*11] in Texas.

Ameritech argues that personal jurisdiction nevertheless is appropriate because SCA has engaged in a strategy of soliciting business in Illinois. Ameritech faces an uphill battle -- as demonstrated above, the initiation, negotiation, execution, and performance of the contracts all direct us away from exercising jurisdiction in Illinois. In order to have a chance of success, Ameritech must demonstrate that the contracts at issue arose from SCA's

solicitation of Illinois business. Ameritech hangs this tenuous argument on two factual pegs: SCA employees' visits to Illinois and SCA's internet website. Neither supports its argument.

SCA officials have attended trade shows in Illinois in the past and employees of the company have traveled to Illinois for business-related reasons on rare occasions (Hamman Aff. at P 8). These sporadic visits, however, are insufficient to support personal jurisdiction over SCA. *See Fluid Management Ltd. Partnership v. H.E.R.O Industries, Ltd., 1997 U.S. Dist. LEXIS 2728, 1997 WL 112839*, at *6 (N.D. Ill. Mar. 11, 1997). Moreover, nothing in the record suggests that the contracts at issue in this lawsuit arose out of SCA's participation in trade shows or [*12] other events in Illinois. Ameritech does not claim that it attended the same Illinois trade shows as SCA, let alone assert that its relationship with SCA began during one SCA's rare ventures into Illinois. On the contrary, the unrefuted evidence is that Ameritech's contracts with SCA stemmed from the January 1998 trade show in Florida (Hamman Aff. at PP 15-19). In breach of contract claims, only those dealings between the parties that pertain to the disputed contracts are relevant to the minimum contacts analysis. *RAR, 107 F.3d at 1278*. SCA's other sparse contacts with Illinois are not significant.

Ameritech similarly fails to establish that this lawsuit arose out of SCA's internet activity. There is no evidence that SCA solicited Ameritech's business through its website. Indeed, it is unclear whether Ameritech even accessed SCA's website prior to entering into the contracts in April 1998 (Moy Aff. at PP 2-6). In any event, when tested against the sliding scale approach commonly applied in this circuit, [3] it is clear that SCA does not operate a jurisdiction-conferring website. *See Ty Inc. v. Clark, 2000 U.S. Dist. LEXIS 383, 2000 WL 51816*, at *3-4; *International Star Registry v. Bowman-Haight Ventures, Inc., 1999 U.S. Dist. LEXIS 7009, 1999 WL 300285*, [*13] at *4-5. SCA's website advertises the company's services and provides means to e-mail company officials and obtain price quotes; however, the website does not enable customers to buy and sell SCA services on-line (Moy Aff. Exh. 2). With these characteristics, SCA's website falls, at most, within the "middle ground" of the sliding scale model, "occupied by interactive Web sites where a user can exchange information with the host computer." *Ty Inc., 2000 U.S. Dist. LEXIS 383*, at *9, 2000 WL 51816, at *3 (quoting

*Zippo, 952 F. Supp. 1119 at 1124*). Compared to other websites in the "middle ground," SCA's website supports a relatively low level of interactivity. Therefore, it cannot serve as the basis for exercising personal jurisdiction over SCA in Illinois. *See Ty Inc., 2000 U.S. Dist. LEXIS 383*, at *9, 2000 WL 51816, at *4; *Scherr v. Abrahams, 1998 U.S. Dist. LEXIS 8531, 1998 WL 299678*, at *4-5 (N.D. Ill. May 29, 1998).

3    On one extreme of the sliding scale are websites that enable the host to transact business with users from foreign jurisdictions. On the other extreme are entirely passive websites on which the host merely posts information or advertisements. Hosts of the first sort of website generally are subject to personal jurisdiction in foreign jurisdictions, but hosts of the second sort of website generally are not. In between the two extremes are interactive websites which allow for some exchange of information between users and the host. Personal jurisdiction over hosts of these types of websites depends on the level of interactivity supported by the site and the commercial nature of the information exchanged. See *Ty Inc. v. Clark, 2000 U.S. Dist. LEXIS 383, 2000 WL 51816*, at *3-4 (N.D. Ill. Jan. 14, 2000); *International Star Registry of Illinois v. Bowman-Haight Ventures, Inc., 1999 U.S. Dist. LEXIS 7009, 1999 WL 300285*, at *4-5 (N.D. Ill. May 6, 1999); *Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)*.

[*14] The vast majority of SCA's business activity took place in Texas. More importantly, SCA's specific contacts with Illinois are unrelated to its contractual relationship with Ameritech. As the Supreme Court has stated, due process ensures "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)*. SCA could not have foreseen being haled into Illinois courts by virtue of its dealings with Ameritech. Therefore, SCA is not subject to personal jurisdiction in our state.

**CONCLUSION**

For the reasons set forth above, defendant's motion to dismiss is granted.

2000 U.S. Dist. LEXIS 3067, *14

JAMES B. MORAN                                    March 3, 2000.

   Senior Judge, U.S. District Court

# EXHIBIT 10

LEXSEE 1993 US DIST LEXIS 8693

**MODERN AIDS, INC., Plaintiff, v. LIL' DRUG STORE PRODUCTS, INC., a corporation and DENNIS OLDORF, an individual, Defendants.**

**93 C 1714**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1993 U.S. Dist. LEXIS 8693*

**June 24, 1993, Decided**
**June 25, 1993, Docketed**

**JUDGES:** [*1] Kocoras

**OPINION BY:** CHARLES P. KOCORAS

**OPINION**

***MEMORANDUM OPINION***

CHARLES P. KOCORAS, District Judge:

In this opinion, we consider two motions to dismiss.

The first motion is brought by defendant Lil' Drug Store Products ("Lil' Drug Store"). On March 22, 1993, the plaintiff, Modern Aids, Inc. ("Modern Aids"), filed a multi-count lawsuit against the defendants, seeking, *inter alia,* a declaratory judgment that certain patents held by Lil' Drug Store are invalid and that Modern Aids' products do not infringe those patents. In response, Lil' Drug Store filed its motion alleging lack of subject matter jurisdiction. For the reasons stated below, this Court grants Lil' Drug Store's motion.

The second motion to dismiss is brought by the defendant, Dennis Oldorf. He moves to dismiss the complaint against him based on lack of personal jurisdiction and improper venue. Oldorf's motion is also granted.

I. *The Motion to Dismiss for Lack of Subject Matter Jurisdiction*

Lil' Drug Store argues that Modern Aids cannot establish an actual case or controversy as to Counts VII through X of its complaint, and therefore, these counts must be dismissed for lack of subject matter jurisdiction. We agree, [*2] and accordingly, Counts VII through X are dismissed.

The exercise of judicial power under Article III depends at all times on the existence of an actual case or controversy. In cases involving a declaratory judgment of patent noninfringement or invalidity, an actual controversy exists where the patent holder's conduct creates an objectively reasonable apprehension on the part of the accused infringer that the patent holder will initiate suit if the allegedly infringing activity continues. *Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 634 (Fed. Cir. 1991)* (citations omitted), *cert. denied, 116 L. Ed. 2d 749, 112 S. Ct. 658 (1991).* The burden of proving the existence of facts showing an actual controversy lies on the plaintiff. *Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 883 (Fed. Cir. 1985)* (citing *Jervis B. Webb Co. v. Southern Systems, Inc., 742 F.2d 1388, 1398-99 (Fed. Cir. 1984)), cert. denied, 479 U.S. 820 (1986).* An actual controversy is established on the "totality of the circumstances." *Spectronics, 940 F.2d at 634* [*3] (citations omitted).

A. Count VII: The *'022 Patent*

In Count VII, Modern Aids seeks a declaratory judgment of noninfringement of Lil' Drug Store's *Patent Number 4,767,022 ("Patent '022").* In light of the facts presented by the parties, it is the view of this Court that it is not objectively reasonable for Modern Aids to fear an imminent patent-infringement suit by the defendants as to

1993 U.S. Dist. LEXIS 8693, *3

*Patent '022*. Thus, we find that Modern Aids cannot establish an actual controversy as to Count VII, and the count must be dismissed.

*Patent '022* was mentioned by Lil' Drug Store in a letter it sent to Modern Aids on October 7, 1988. [1] Although the October 7, 1988 letter may have led Modern Aids to believe that it was being accused of infringing *Patent '022*, as evidenced by its letter of November 22, 1988, Lil' Drug Store subsequently denied any such accusation in a letter sent on November 29, 1988. The November 29 letter explained that Lil' Drug Store charged Modern Aids only with trade dress copying regarding *Patent '022*, not with patent infringement. Having been explicitly told in November of 1988 that it was not charged with patent infringement, it seems to this Court objectively unreasonable [*4] for Modern Aids to have believed that in Lil' Drug Store's letter of March 15, 1993, it implicitly accused Modern Aids of infringing *Patent '022*. In that letter, Lil' Drug Store specifically listed several patents on which it intended to sue Modern Aids for infringement. Noticeably not included in this list was *Patent '022*. Because we do not discern a "real and concrete clash of interests" between the parties concerning the infringement of *Patent '022*, we must dismiss Count VII for failure to establish an actual controversy. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 739 (Fed. Cir. 1988)*.

   1   The October 7 letter merely stated that *Patent '022* was enclosed with the letter. It was enclosed at the request of Modern Aids' attorney.

B. Counts VIII through X: The Design Patents

In Counts VIII through X, Modern Aids seeks to have declared noninfringed and invalid U.S. Patents Numbers D 316,638; D321,647; D327,991; D329,343; and D329,159 (collectively referred to as "the [*5] Design Patents"). On May 12, 1993, Lil' Drug Store delivered to Modern Aids and filed with this Court a covenant not to sue, affirmatively stating that Modern Aids is not liable for infringement of, and will not be sued by Lil' Drug Store, on the Design Patents.

The Court of Appeals for the Federal Circuit has held that a declaratory judgment action shall be dismissed for failure to establish an actual controversy where the defendant/patent holder files with the court a covenant not to sue after the accused infringer files the complaint. *Spectronics, 940 F.2d at 635*. Accordingly, Counts VIII

through X of Modern Aids' complaint are dismissed for lack of jurisdiction. *See also Grain Processing Corp. v. American Maize-Products Co, 840 F.2d 902, 905 (Fed. Cir. 1988)* (holding a declaratory judgment action could not lie where patent holder charged infringement of certain claims of a patent, but abandoned the charge prior to trial and steadfastly refused thereafter to assert infringement).

Having determined that Modern Aids' counts regarding patent infringement cannot stand for lack of subject matter jurisdiction, we now turn [*6] to defendant Dennis Oldorf's motion to dismiss for lack of personal jurisdiction.

II. *The Motion to Dismiss for Lack of Personal Jurisdiction*

Defendant Lil' Drug Store is an Iowa corporation, which distributes and sells nonprescription drugs and condoms, packaged in individual, single dosage packets and placed in counter displays and dispensers. Defendant Dennis Oldorf is a shareholder and the chairman of Lil' Drug Store. Oldorf asks this Court to dismiss the complaint against him for lack of personal jurisdiction.

Oldorf resides in Nevada, owns no real estate in Illinois, and maintains no office or place of business in Illinois. Although Oldorf is the inventor of the counter displays and dispenser products that are the subject of this litigation, he invented and designed the dispensers while in Iowa, not in Illinois.

The burden to establish jurisdiction is on the party asserting it. *E.J. McGowan & Assoc., Inc. v. Biotechnologies, Inc., 736 F. Supp. 808, 809 (N.D. Ill. 1990)* (citations omitted). In attempting to establish jurisdiction, Modern Aids points the Court to two trips Dennis Oldorf made to Illinois in order to market the products at [*7] issue in this case. Oldorf visited Illinois once in 1988 and once in 1991. Both visits entailed his attending trade shows during which Lil' Drug Store's products were showcased and customer contact was made.

Oldorf claims that he attended the trade shows in Illinois as a representative of Lil' Drug Store. He claims that under the fiduciary shield doctrine, this Court may not maintain personal jurisdiction over him.

Where an individual's contact with a forum state is

limited to acts performed in a representative capacity, the fiduciary shield doctrine directs that personal jurisdiction over that individual is improper. *Torco Oil Co. v. Innovative Thermal Corp., 730 F. Supp. 126, 134 (N.D. Ill. 1989); Rollins v. Ellwood, 141 Ill. 2d 244, 565 N.E.2d 1302, 1313-18, 152 Ill. Dec. 384 (Ill. 1990)*. Modern Aids does not present the Court with information sufficient to persuade us that Oldorf acted as something other than an agent for Lil' Drug Store when he visited Illinois. Furthermore, we cannot conclude that Oldorf acted solely for his personal interest in attending the Illinois trade shows, rather than for the corporate interest of Lil' Drug Store. Because [*8] we find that Oldorf's visits to Illinois were made as a representative of Lil' Drug Store, the fiduciary shield doctrine prohibits us from considering these visits in our jurisdictional analysis.

Modern Aids attempts to expand the range of Oldorf's activities in Illinois, and therefore establish personal jurisdiction, by suggesting that Lil' Drug Store is the alter ego of Oldorf. Modern Aids contends that Lil' Drug Store's substantial Illinois activities, including sending letters to Modern Aids in Illinois warning it of its infringement and selling products in Illinois, should be attributed to Oldorf for the purposes of the jurisdictional analysis. We find Modern Aids falls short in arguing that Lil' Drug Store is an alter ego or a "sham corporation." *Torco Oil, 730 F. Supp. at 136* (stating that the jurisdictional alter ego test is satisfied with a showing that the corporation is a sham). Nowhere in its complaint does Modern Aids allege that Lil' Drug Store is the alter ego of Oldorf for the purpose of liability, and we cannot discern persuasive evidence showing that Lil' Drug Store has failed to comply with corporate formalities or fails to possess [*9] separate corporate assets. Although Oldorf's and Lil' Drug Store's interests may be compatible, this does not necessitate our finding that Lil' Drug Store is a sham corporation, nor do the defendants' shared interests preclude the applicability of the fiduciary shield doctrine to Oldorf.

Charles P. Kocoras

United States District Judge

Dated: June 24, 1993