**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| C.S.B. COMMODITIES, INC.,<br>a New York Corporation, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08 cv 1548 |
| v. | ) | |
| | ) | |
| URBAN TREND (HK) LTD., a foreign | ) | Hon. Robert M. Dow, Jr. |
| Corporation, and ROBERT KUSHNER, | ) | |
| individually | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff C.S.B. Commodities, Inc. ("CSB") filed a three count first amended complaint against Urban Trend (HK) Ltd. ("Urban Trend") and Robert Kushner ("Kushner") (collectively "Defendants") alleging:  I - Federal Unfair Competition under 15 U.S.C. § 1125(a); II – Unfair Competition under Illinois common law; and III – Unfair Competition under 815 ILCS § 510. This matter is now before the Court on Defendants' renewed motion to dismiss Plaintiff's complaint for lack of personal jurisdiction [30] pursuant to Federal Rules of Civil Procedure 12(b)(2) and Defendant Kushner's renewed motion to dismiss for failure to state a claim [27] pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated below, the Court grants the motion to dismiss for lack of personal jurisdiction as to Defendant Urban Trend, denies the motion to dismiss for lack of personal jurisdiction as to Defendant Kushner [30] and denies Defendant Kushner's motion to dismiss for failure to state a claim [27].

# I.    Background

CSB is a New York Corporation having a principal place of business in New York.  Pl. Amend. Compl. at ¶ 1.  Urban Trend is a Hong Kong corporation, having a principal place of business in Hong Kong.  *Id*. at ¶ 2.  Kushner is a resident of Hong Kong.  *Id*. at ¶ 3.

CSB is in the business of selling housewares and household goods.  Pl. Amend. Compl. at ¶ 8.  In August of 2005, CSB began selling a new product, specifically a knife holder that incorporates the configuration of a stylized figure which Plaintiff terms a "Human Figure Design."  *Id*. at ¶ 9.  This knife holder featuring the Human Figure Design is sold under the trademark "The Ex" in the United States and under the trademark "Voodoo" elsewhere throughout the world.  *Id*.  Although the "Ex/Voodoo" is manufactured in a range of colors, it is most popular and well-known in red.  *Id*.  From its initial introduction, the "Ex/Voodoo" was popular in the marketplace and garnered a great deal of press coverage and attention through word-of-mouth.  *Id*. at ¶ 12.  CSB has promoted the "Ex/Voodoo" knife holder and the Human Figure Design in advertisements and through other marketing channels.  *Id*.  As a result, CSB asserts that the Human Figure Design has acquired secondary meaning.  *Id*.  CSB owns the trademark rights associated with the Human Figure Design.  *Id*. at ¶ 11.

Urban Trend is in the business of selling novelty items.  Pl. Amend. Compl. at ¶ 14.  Kushner has responsibility for selecting the products that Urban Trend manufactures and/or markets.  *Id*. at ¶ 15.  Kushner also stands to benefit personally from the decisions to manufacture and/or market any particular product.  *Id*.  After CSB began advertising and selling the "Ex/Voodoo," Urban Trend, without authorization from CSB, began marketing, selling, and using in interstate commerce a knife holder called the "Throwzini".  *Id*. at ¶ 16.  The "Throwzini" has been shown in advertisements in the same red color that is utilized by CSB in

its most popular version of the "Ex/Voodoo" knife holder. *Id*. CSB alleges that the "Throwzini": (i) utilizes a design that is confusingly similar to the Human Figure Design; and (ii) misappropriates the distinctive trade dress and product configuration of the "Ex/Voodoo" knife holder. *Id*.

CSB alleges that Defendants knew of the "Ex/Voodoo" knife holder, the Human Figure Design, and the popularity of the "Ex/Voodoo" at the time that they began to develop the "Throwzini" knife holder. Pl. Amend. Compl. at ¶ 17. CSB further alleges that the selection and shape of the "Throwzini" knife holder was made with the knowledge that the chosen shape was confusingly similar to the "Ex/Voodoo" knife holder and the Human Figure Design. *Id*. at ¶ 18. The choice also was made to select the shape of the "Throwzini" in the most popular color of the "Ex/Voodoo" with the intention of trading on the good will and product recognition that CSB has developed in the "Ex/Voodoo" knife holder and the Human Figure Design. *Id*. at ¶ 19.

CSB alleges that Kushner made the decision to manufacture and/or market the "Throwzini". *Id*. at ¶ 20. In so doing, he sought to trade on the goodwill established by CSB in the "Ex/Voodoo" knife holder. *Id*. at ¶ 21. Kushner also is alleged to have personally directed others at Urban Trend to manufacture or have manufactured the "Throwzini" knife holder and to market the "Throwzini" in this District and elsewhere. *Id*. at ¶ 22. Kushner has been personally present in this District to offer the "Throwzini" knife holder for sale. *Id*. at ¶ 23. Defendants have begun marketing and promoting the "Throwzini" in the United States and have promised customers to deliver the "Throwzini" knife holders shortly. *Id*. at ¶ 25. Finally, CSB alleges that Kushner stands to gain personally from sales of the "Throwzini." *Id*. at ¶ 24.

In CSB's response to Defendants' motion to dismiss for lack of personal jurisdiction, CSB stated that not only had Kushner been personally present in this District to offer the

"Throwzini" for sale, but he had in fact been served with the summons and complaint for this case. In early March of 2008, CSB learned that Urban Trend was scheduled to appear at a trade show in Chicago and would offer for sale the "Throwzini" knife holder. Pl. Resp. at 2; Declaration of Robert Schmeizer at ¶ 9.[1] CSB went to the trade show and learned that Kushner and Urban Trend were present and were offering the "Throwzini" for sale. Pl. Resp. at 3; Schmeizer Decl. at ¶ 11. CSB filed the initial complaint in this matter and served Kushner on the trade show floor with the summons and complaint. Pl. Resp. at 3; Schmeizer Decl. at ¶ 12.

## II.     Motion to Dismiss for Lack of Personal Jurisdiction

Kushner's motion to dismiss for lack of personal jurisdiction must be considered first. See *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998). If the court finds it lacks personal jurisdiction over Kushner, it will become unnecessary to consider his motion to dismiss for failure to state a claim upon which relief can be granted.

### A.     Legal Standard on Motion to Dismiss for Lack of Personal Jurisdiction

An action against a party over whom the Court lacks personal jurisdiction must be dismissed. Fed. R. Civ. P. 12(b)(2). A complaint need not include facts alleging personal jurisdiction. *Steel Warehouse of Wisconsin, Inc., v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). If defendants move to dismiss for lack of personal jurisdiction, plaintiff has the burden of establishing a *prima facie* case where, as here, there are no facts in dispute and thus no need to convene an evidentiary hearing. See *id.*; *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The Seventh Circuit has cautioned that "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the

---

[1] The declaration attached to Plaintiff's response to the personal jurisdiction motion will be considered only for purposes of that motion. Consideration of affidavits or declarations, introduced in support of or contesting 12(b)(2) motions, is permissible without conversion to summary judgment. That is not necessarily the case for 12(b)(6) motions, so the Court will not consider the affidavit in that context.

plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found.*.338 F.3d at 783. The Court resolves factual disputes in the pleadings and affidavits in favor of the party asserting jurisdiction, but takes as true those facts contained in defendant's affidavits that remain unrefuted by the plaintiff. *Jamik, Inc. v. Days Inn of Mount Laurel*, 74 F. Supp. 2d 818, 821 (N.D. Ill. 1999).

The allegations pertinent to personal jurisdiction are, as follows: (i) Defendants, prior to the filing of the Complaint, offered, in person, to sell the products described below in this district; (ii) Defendants own and operate a website accessible in this district; (iii) Defendants have offered for sale goods under the mark at issue in this district through the website and in person; (iv) Defendants have thereby committed the acts of infringement and unfair competition complained of in this district; (v) Kushner, president of and present on behalf of Urban Trend, was served with a copy of the complaint and summons while present within this district; (vi) Kushner was the individual at Urban Trend who made the decision to go forward with the manufacture and/or marketing of the Throwzini; and (vii) Kushner stands to gain personally from the sale of the Throwzini knife holder.

### B.    Discussion

In federal question cases, personal jurisdiction analysis has both a constitutional and statutory element. The court must determine that: (1) haling the defendant into court accords with the Due Process Clause of the Fifth Amendment; and (2) that defendant is amenable to service of process from the court. *Lifeway Foods, Inc. v. Fresh Made, Inc.*, 940 F. Supp. 1316, 1318 (N.D. Ill. 1996) (citing *United States v. De Ortiz*, 910 F.2d 376, 381-82 (7th Cir. 1990); *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987)). Due process in federal question cases requires that each party have sufficient contacts with the United States as a whole

rather than any particular state. See *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001). "The due process clause protects persons from being haled into a court unless they have 'minimum contacts with the sovereign that established that court. The jurisdiction whose power federal courts exercise is the United States of America, not the State of Illinois." *Id.* Defendants usually have sufficient contacts with the nation as a whole, and therefore "most federal question cases * * * proceed to the amenability of service inquiry." *Am. Farm Bureau Fed'n v. Alabama Farm Bureau Fed'n*, 2005 WL 1667802, *2 (N.D. Ill. July 12, 2005) (citing *Boston Chicken v. Market Bar-B-Que, Inc.*, 922 F. Supp. 96, 97 (N.D. Ill. 1996)). However, that is not the case here, because neither Defendant is a citizen of, nor incorporated in, the United States and the allegations are limited to contacts with one state, Illinois.

Assuming the defendant is exposed to the jurisdiction of the United States, the question becomes whether the federal court has been authorized to exert the full power of the nation. *ISI Int'l, Inc.*, 256 F.3d at 552. To answer this question the court looks to the applicable federal statute; in this case, the Lanham Act. See *Omni Capital Int'l*, 484 U.S. at 104. The Lanham Act does not permit nationwide service of process and thus Rule 4(k)(1)(D) is unavailable. See, *e.g.*, *ISI Int'l, Inc.*, 256 F.3d at 551. When the federal statute does not provide for nationwide (or worldwide) service, the statutory basis for jurisdiction is generally provided by Rule 4(k)(1)(A) which ties jurisdiction to the forum state's long-arm statute. See *Janmark v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997); see also *Digisound-Wie, Inc., Bestar Techs., Inc.*, 2008 WL 2096505 (N.D. Ill. May 16, 2008).

In limited circumstances, there is a third option which may provide the statutory basis of jurisdiction. Rule 4(k)(2) "functions as a sort of federal long-arm statute." *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir. 1999). The rule provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Fed. R. Civ. P. 4(k)(2).  Although Rule 4(k)(2) is not mentioned by either party, this Court may consider whether the rule applies in the circumstances of this case.  See *ISI Int'l, Inc.* 256 F.3d at 551-552 ("although the parties did not alert the district judge to Rule 4(k)(2), and [plaintiff] did not rely on that rule in its appellate brief, it is best to excuse the forfeiture.  Federal courts are entitled to apply the right body of law, whether the parties name it or not.").

On the facts presently before the Court, Rule 4(k)(2) does not appear to provide a statutory basis for jurisdiction in this case.  It was enacted to cover situations where a defendant has "ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction." *ISI Int'l, Inc.* 256 F.3d at 551 (citing *Omni Capital Int'l*, 484 U.S. at 111).  In this case, Defendants' only alleged contacts are with Illinois.  Therefore, if those contacts are insufficient to meet the due process standard under the Fourteenth Amendment, Rule 4(k)(1)(A), and the Illinois long-arm statute, Defendants would not have the contacts necessary to make jurisdiction "consistent with the Constitution and laws of the United States."

The question to be asked of Kushner and Urban Trend thus simplifies to whether they are amenable to service by an Illinois court, and if so, whether jurisdiction would be consistent with the federal Constitution.  See *Cent. States, SE and SW Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934 (7th Cir. 2000).[2]

---

[2] Although Plaintiff has included state claims as well, if the court finds personal jurisdiction proper on the federal claim, it need not necessarily proceed to the issue of personal jurisdiction pursuant to the state claims.  "Under the doctrine of pendent personal jurisdiction, a court may hear claims as to which personal jurisdiction is lacking if those claims arise out of a common nucleus of operative fact with

### 1.     Service on Kushner While He Was Present in the Forum

Plaintiff argues that pursuant to *Burnham v. Superior Court of California, County of Marin*, 495 U.S. 604 (1990), personal service of process on Kushner while he was present in the district is sufficient to assert personal jurisdiction over him.[3]  While present in Illinois, Kushner clearly was amenable to service of process.  "A court may exercise jurisdiction in any action arising within or without this State against any person who is a natural person present within this State when served."  735 ILCS 5/2-209(b)(1).  Kushner is a natural person served with process within Illinois and thus jurisdiction is proper under the Illinois long-arm statute. The only issue as to Kushner is whether in-forum service is sufficient to allay due process concerns.[4]

In addressing the due process issue, the Court first turns to *Burnham*.  In that case, the defendant, a resident of New Jersey, was served with a summons in a divorce action while he was physically present in California for business purposes and to visit his children who lived with his ex-wife.  The defendant challenged the jurisdiction of the California state courts on the ground that he lacked minimum contacts with that state.  The Supreme Court unanimously

---

[3] claims as to which personal jurisdiction exists."  *Arkansas Blue Cross and Blue Shield, v. Philip Morris, Inc.*, 1999 WL 202928, *2 (N.D. Ill. Mar. 31, 1999) (citations omitted).  Because the state claims in this action do in fact arise out of the same nucleus of operative fact – Defendants' alleged infringement of the Ex/Voodoo – the court will limit its analysis to the federal question.  Finally, because Kushner individually and Urban Trend as a corporate entity present different arguments against the exercise of personal jurisdiction, the court will analyze them independently.

[3] Defendants briefly argue that CSB cannot rely on service of process to establish jurisdiction over Kushner because service was affected after CSB filed its original complaint.  While *contacts* with the forum after the filing of the complaint may be jurisdictionally irrelevant, this is not a minimum contacts issue.  Transient jurisdiction is based on service of process that necessarily occurs after a complaint has been filed.

[4] *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310 (1945), its progeny, and *Burnham* were decided in the diversity jurisdiction context while this case pertains to federally created rights.  However, "[t]he Seventh Circuit has held that there is no operative difference between the concept of due process as applied to the states through the Fourteenth Amendment and due process applied through the Fifth Amendment for federal claims."  *Technical Concepts, L.P. v. Zurn Indus., Inc.*, 2002 WL 31027962, *3 n.4 (N.D. Ill. Sept. 10, 2002) (citing *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1143 (7th Cir. 1975)).

agreed, under the facts of that case, that jurisdiction based on personal service of process on an individual while physically present in the state is constitutional.

On its face, *Burnham* would appear to foreclose any argument that Kushner might have that defending this lawsuit in this court would violate his due process. However, Defendants note that the Court's decision in *Burnham* lacked a majority opinion and argue that minimum contacts analysis is still required to test due process. The dispute within the Court in *Burnham* arose over the justification for upholding the constitutionality of transitory jurisdiction. Justice Scalia (joined by Justice Kennedy, Chief Justice Rehnquist and largely Justice White) based his opinion on the historical pedigree:

> Among the most firmly established principles of personal jurisdiction in American tradition is that the courts of a State have jurisdiction over nonresidents who are physically present in the State. The view developed early that each State had the power to hale before its courts any individual who could be found within its borders, and that once having acquired jurisdiction over such a person by properly serving him with process, the State could retain jurisdiction to enter judgment against him, no matter how fleeting his visit.

*Burnham*, 495 U.S. at 610-611 (Scalia, J.).

According to Justice Scalia, this was the understanding shared by American courts at the crucial time period, adoption of the Fourteenth Amendment. Therefore, he saw no reason to independently analyze other contacts the defendant had with the state. The decline of *Pennoyer v. Neff*, 95 U.S. 714 (1878), and its power theory of jurisdiction, and the concordant rise in *International Shoe* and its progeny, merely permitted "minimum contacts" to replace physical presence as the sole basis for jurisdiction. *International Shoe* made physical presence *unnecessary* but it did not render presence *insufficient*. "[J]urisdiction based on physical presence alone constituted due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial

justice.' That standard was developed by *analogy* to 'physical presence,' and it would be perverse to say it could now be turned against that touchstone of jurisdiction." *Burnham*, 495 U.S. at 619.

Justice Brennan (joined by Justice Marshall, Justice Blackmun and Justice O'Connor), while agreeing with the result, would not agree that tradition was "the *only* factor such that all traditional rules of jurisdiction are, *ipso facto*, forever constitutional." *Burnham*, 495 U.S. at 629. He stated that "all rules of jurisdiction, even ancient ones, must satisfy contemporary notions of due process." *Id.* Despite Justice Brennan's less bright-line approach, his opinion hints that rare (if ever) would be the situation when transient jurisdiction would not satisfy due process.[5] "The transient rule is consistent with reasonable expectations and is entitled to a strong presumption that it comports with due process." *Burnham*, 495 U.S. at 637 (Brennan, J.). Justice Brennan noted that an individual travelling to a jurisdiction assumes the risk that the jurisdiction will exercise its power over the individual while there. *Id.* (citing *Shaffer v. Heitner*, 433 U.S. 186, 218 (1987)) (Stevens, J., concurring in judgment).

> That the defendant has already journeyed at least once before to the forum – as evidenced by the fact that he was served with process there – is an indication that suit in the forum likely would not be prohibitively inconvenient. Finally, any burdens that do arise can be ameliorated by a variety of procedural devices. For these reasons, *as a rule* the exercise of personal jurisdiction over a defendant based on his voluntary presence in the forum will satisfy the requirements of due process."

*Id.* at 638-639 (emphasis added).

Defendants have made no argument that their presence in the forum was either involuntary or unknowing. Therefore, even under Justice Brennan's test, service of process would satisfy due process. Since *Burnham* was decided, there does not appear to be a single

---

[5] In a footnote, Justice Brennan seemingly limited the instances in which service of process would not satisfy due process to instances of a "defendant's involuntary or unknowing presence." *Burnham*, at 637 n.11.

published opinion in which a court has found jurisdiction lacking where an individual was served in the forum.[6] This court sees no reason to break from that apparently unbroken line of precedent. Finally, and unlike in *Burnham*, Kushner was served while in the forum solely for the activities leading to the complaint. In these circumstances, service alone satisfied due process as to Defendant Kushner.

### 2. Fiduciary Shield Doctrine

While the preceding discussion generally would conclude the personal jurisdiction analysis, Kushner has raised what amounts to a defense to jurisdiction. Amenability to service requires reference to state statutory grounds when the federal statute at issue does not provide for nationwide service. In this case, service must be established under the Illinois long-arm statute. Under the Illinois fiduciary shield doctrine, Illinois courts lack personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were *solely on behalf of his employer or other principal*. *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1995) (citing *Rollins v. Ellwood*, 141 Ill. 2d 244 (1990)). Courts in this district consistently have applied the fiduciary shield doctrine in federal question cases, although it appears to be the only instance in which Illinois and federal due process may not be co-extensive.[7] See, e.g., *Robinson v. Sabis Educ. Sys., Inc.*, 1999 WL 412642 (N.D. Ill. May 28, 1999) (Coar, J.) (§§ 1981, 1985); *Modern Aids v. Lil' Drug Store Prods., Inc.*, 1993 WL 239054 (N.D. Ill. June 25, 1993) (Kocoras, J.) (patent); *Jones v. Sabis Educ. Sys., Inc.*, 52 F. Supp. 2d 868 (N.D. Ill. 1999) (Gettleman, J.) (§§ 1981, 1983, and 1985); *Consumer Benefit Servs., Inc. v. Encore Mktg. Int'l,*

---

[6] The Seventh Circuit has only cited to *Burnham* once, in an unpublished decision without analysis. See *Paulus v. Hoster*, 7 F.3d 238, 1993 WL 376508 (7th Cir. Sept. 24, 1993) (unpublished)

[7] "The fiduciary shield doctrine, as a creation of state law regulating the limits of process in their own courts, does not apply when jurisdiction rests on Rule 4(k)(2)." *ISI Int'l, Inc.*, 256 F.3d 548. Although Plaintiff has not pressed jurisdiction on the basis of Rule 4(k)(2), the Court has considered and rejected its applicability on the current record.

*Inc.*, 2002 WL 31427021 (N.D. Ill. Oct. 30, 2002) (St. Eve, J.) (Lanham Act); *Brujis v. Shaw*, 876 F. Supp. 975 (N.D. Ill. 1995) (Moran, C.J.) (FDCPA).

Application of the doctrine is discretionary or equitable, not absolute. See *Consumer Benefit Servs., Inc.*, 2002 WL 31427021, at *3. In evaluating whether it is equitable to apply the doctrine in the circumstances of a particular case, courts consider whether (i) the individual's personal interests motivated his actions and presence and (ii) the individual's actions are discretionary.[8] *Id.* (collecting cases).

Some courts have held that discretionary action by the defendant alone is enough to negate the protection of the fiduciary shield. See *Jones*, 52 F. Supp. 2d at 884 (quoting *Brujis*, 876 F. Supp. at 978) ("The shield generally should not apply where the 'employee has the power to decide what is to be done and chooses to commit the acts that subject him to [jurisdiction].'"); Other courts have found that while an individual's position within the company is relevant to the "discretionary" assessment, it is not dispositive. See *Int'l Fin. Servs. Corp. v. Didde Corp.*, 2002 WL 398513, *5 (N.D. Ill. Mar. 14, 2002). The extent to which the individual seeking protection under the doctrine is a shareholder or has a direct financial stake in the corporation's health also may bear on the court's inquiry. See *Cont'l Casualty Co. v. Marsh*, 2002 WL 31870531, *7 (N.D. Ill. Dec. 23, 2002) (citing *Plastic Film Corp. of America, Inc. v. Unipac, Inc.*, 128 F. Supp. 2d 1143, 1147 (N.D. Ill. 2001)) ("[t]he determinative factor is the individual's status as a shareholder, not merely as an officer or director.")); *Interlease Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc.*, 254 F. Supp. 2d 1028, 1037 (N.D. Ill. 2003) (applying fiduciary shield doctrine despite position as officers and directors because plaintiff failed to provide factual support for claim they possessed substantial ownership interests in company); *Margulis v.*

---

[8] Although not pertinent based on the allegations in this case, courts have also found relevant whether the defendant is the alter ego of the corporation for which he is acting as fiduciary. See *Clipp Designs, Inc. v. Tag Bags, Inc.*, 996 F. Supp. 766, 768 (N.D. Ill. 1998).

*Med. Parts Int'l, Inc.*, 1999 WL 183648, at *5 (N.D. Ill. Mar. 25, 1999) (citing *Plymouth Tube Co. v. O'Donnell*, 1995 WL 387595 (N.D. Ill. June 28, 1995)) ("the fiduciary shield defense is unavailable to high-ranking company officers and shareholders [because they] have a direct financial stake in the company's health and therefore can be subjected to personal jurisdiction for actions that result in both personal and corporate benefit").

One court attempted to resolve these differences by focusing on the holding of *Rollins* that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a non-resident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Brujis*, 876 F. Supp at 979 (quoting *Rollins*, 141 Ill. 2d at 275). The different approaches may reflect a reading of *Rollins* that "suggests a broader approach to the fiduciary shield doctrine than merely asking whether the defendant exercised discretion or whether he was acting in an individual or representative capacity." *Id*. "Decisions that turn on the representative nature of the defendant's actions emphasize the unfairness of subjecting someone to jurisdiction whose conduct in Illinois was not of his own choosing. Similarly, those that turn on the defendant's use of discretion emphasize that it would not be unfair to exercise jurisdiction over someone acting in a representative capacity when he was in a position to decide whether or not to perform acts in Illinois." *Id*.

The Court must resolve the applicability of the fiduciary shield doctrine on a limited record. On that record, the "court must construe all reasonable inferences in favor of the plaintiff." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 783 n.14 (7th Cir. 2003). In addition, "in evaluating whether the *prima facie* standard has been satisfied, the district court is not acting as a factfinder; rather it accepts properly supported proffers of

evidence by a plaintiff as true and makes its ruling as a matter of law." *Id*. Here, the critical allegations of the complaint are that Kushner has "responsibility for selecting the products that Urban Trend manufactures and/or markets" and that he "stands to benefit personally from the decisions to manufacture and/or market any particular product" offered for sale by Urban Trend. First Amend. Compl. ¶ 15; see also *id*. ¶ 24 ("Kushner also stands to gain personally from the sales of the Throwzini knife holder"). The Court also must accept the statement of Plaintiff's declarant, Mr. Schmeizer, that Kushner holds the position as "President of Urban Trend." Schmeizer Decl. ¶ 12. Defendant has not presented any contrary affidavits or evidence.

Marketing and selling the product at an international trade show certainly would redound to the benefit of Urban Trend. And it is more than a fair assumption that Kushner, as President of the corporation, would share in that benefit independently of the corporation. See *Margulis v. Med. Parts Int'l, Inc.*, 1999 WL 183648, at *5 (N.D. Ill. Mar. 25, 1999) (citing *Plymouth Tube Co. v. O'Donnell*, 1995 WL 387595 (N.D. Ill. June 28, 1995)) ("the fiduciary shield defense is unavailable to high-ranking company officers and shareholders [because they] have a direct financial stake in the company's health and therefore can be subjected to personal jurisdiction for actions that result in both personal and corporate benefit").

It also stands to reason that, as the President of the company, Kushner had sufficient control over the company's marketing strategies to control whether to market the Throwzini anywhere in the United States, including in Chicago. One of the concerns of due process is allowing "potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). When an employee is forced to enter a forum or risk losing his or her job, they are not free to structure their conduct. In that instance, protection

from suit is understandable. Courts have applied the fiduciary shield doctrine where the employee's actions were taken "on behalf of" the corporate defendant. See, *e.g.*, *Jones v. Sabis Educ. Sys., Inc.*, 52 F. Supp. 2d 868; *Robinson*, 1999 WL 412642, at *3 n.3 (plaintiff's own allegations indicated that individual defendants were ordered to take the actions); *Int'l Fin. Servs. Corp.*, 2002 WL 398513 at *4 (applying doctrine in part because individual was instructed to take action subjecting him to liability); *Glass v. Kempter Corp.*, 930 F. Supp. 332, 342 (N.D. Ill. 1996) (applying fiduciary shield where defendant was acting at employer's direction when he committed fraud). But Kushner's position with Urban Trend belies any suggestion that he was compelled to enter the forum.

For all of the reasons explained above, the Court respectfully rejects the application of the Illinois fiduciary shield doctrine on the facts of this case.

## 2. Urban Trend

### A. Service of Process on Kushner

Kushner not only was served individually, but also as a representative of Urban Trend. Plaintiff's make an initial argument, premised on *Burnham*, that service was sufficient to confer general personal jurisdiction over Urban Trend as well. Although in-state service was sufficient as to Kushner individually, *Burnham* left unresolved whether the same service on corporations satisfies due process. If *Burnham* does not apply, Plaintiff argues in the alternative that Urban Trend is nonetheless amenable to specific personal jurisdiction based on its contacts with the forum. If service was sufficient to confer jurisdiction, there is no need to delve into minimum contacts analysis and therefore its applicability will be analyzed first.

The only mention of corporations in *Burnham* was in a footnote in Justice Scalia's opinion. He pointed out that corporations "have never fitted comfortably in a jurisdictional

regime based primarily upon 'de facto power over the defendant's person.'" *Burnham*, at 610 n.1 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. at 316). Even that brief aside was made in response to a different question – whether individual defendants can ever be subject to general jurisdiction based on their "continuous and systematic" contacts in a state and in any event Justice Scalia made clear that the Court was expressing no views on the matter. *Id*. Attempting to resolve this question of first impression in this district, the Court believes application of *Burnham* to corporate defendants to be improper. Even if a representative of the corporation is served with process in forum, minimum contacts with the forum remain necessary for this court to exercise personal jurisdiction.

The problem which first gave rise to the minimum contacts test was determining where corporations were "present" under the power theory of jurisdiction which prevailed under *Pennoyer v. Neff*. In lieu of legal fictions that the states were creating to ensure corporations could be subject to jurisdiction (*e.g.* registered agents), the Court held in *International Shoe* that "minimum contacts" are the ultimate touchstone. The Court succinctly summarized the problem created by corporations in a jurisdictional framework as follows:

> [I]t is clear that unlike an individual its 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. To say that the corporation is so far 'present' there as to satisfy due process requirements, for purposes of taxation or the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there.

*Int'l Shoe Co.*, 326 U.S. at 316-317 (citing *Hutchinson v. Chase & Gilbert*, 45 F.2d 139, 141 (2d Cir. 1930)) (L. Hand, J.).

Permitting service on any employee or agent of a corporation to create general jurisdiction on the theory that a corporation is therefore "present" would create the same issues minimum contacts hoped to resolve. A traditional minimum contacts analysis removes the necessity of drawing bright but arbitrary lines of where a non-physical entity is present and ensures that due process is satisfied.

Basing their decisions on the reasons noted above, the few courts to have considered this issue in depth have come to the conclusion that service of process on an agent of a foreign corporation is insufficient, by itself to confer personal jurisdiction. See, *e.g.*, *Republic Props. Corp. v. Mission West Props., LP*, 895 A.2d 1006 (Ct. App. Md. Apr. 10, 2006); *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179 (5th Cir. 1992); *Conner v. Conticarriers and Terminals, Inc.*, 944 S.W.2d (Ct. App. Tex. Jan. 30, 1997); *Estate of Yaron Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 553 (S.D.N.Y. 2005) ("'tag' jurisdiction – personal service on an individual within the state - remains a valid method of acquiring personal jurisdiction over an individual, though not over a corporation through the persons of its officer.")

Plaintiff failed to point to any instances in which the rule in *Burnham* was applied to corporations served with summons and complaint. The court has found two. In *Northern Light Tech., Inc v. Northern Lights Club*, 236 F.3d 57 (1st Cir. 2001), the individual defendant was the president and principal shareholder of one of the corporate defendants (of which it appears he was the only employee) as well as the president of an unincorporated association defendant (with no members). The court's analysis of transient jurisdiction's applicability was cursory (it was entirely contained in a footnote) and in fact stated that any argument that *Burnham* did not apply had been *waived*. *Id*. at 63 n.10. In addition to the brief analysis and waiver issue, the court may have viewed the corporation as an alter ego of the individual defendant since there were

apparently no other employees. However, there have been no allegations that the corporate entity is a shell or alter ego of Kushner and the size of Urban Trend is unclear on the record. *Northern Lights* thus provides little support for applying *Burnham* to Urban Trend. Nor is the second case persuasive. *Oyuela v. Seacor Marine (Nigeria), Inc.*, 290 F. Supp. 2d 713 (E.D. La. 2003) relied on *Northern Lights* and in any event proceeded with a minimum contacts analysis to determine that jurisdiction was proper over the corporate defendant. Neither case thus provides much support for the application of *Burnham* without a minimum contacts analysis.

Although it was decided before *Burnham*, one court noted "it is undisputed that mere service on a corporate agent cannot establish personal jurisdiction without a minimum contacts inquiry." *Nehemiah v. Athletics Cong. of the U.S.A.*, 765 F.2d 42, 47 (3d Cir. 1985). This would exist, the court observed "[e]ven if the Court were to acknowledge the historical entrenchment of the [transient jurisdiction] doctrine and thereby carve a *sui generis* niche over the individual who purposefully enters the jurisdiction and is served" as it eventually did in *Burnham*. *Id*.

## B. Due Process/Minimum Contacts Analysis

Because the Court has determined that service of process is insufficient, by itself, to confer personal jurisdiction over Urban Trend in this Court, the Court must proceed with the traditional test for personal jurisdiction in federal question cases. Urban Trend is a foreign corporation and all of its alleged contacts in the United States took place in Illinois. Therefore, efficiency dictates that the Court first determine whether Urban Trend is amenable to service under the Illinois long-arm statute. The inquiry thus is whether haling Urban Trend into this Court based on its contacts with Illinois comports with due process. See *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).

Two sections of the Illinois long-arm statute may apply to Urban Trend. Under the first, 735 ILCS 5/2-209(a)(1), a defendant submits to the jurisdiction of Illinois courts if it was "transacting business within the state." Under the second, the "catch-all" provision in 735 ILCS 5/2-209(c), Illinois state courts may assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. See *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714 (7th Cir. 2002). As noted above, although the United States and Illinois Constitutions do not contain identical due process guarantees, the Seventh Circuit has opined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l*, 302 F.3d at 715.[9] Given this direction, the Court moves directly to the federal constitutional inquiry – whether exercising personal jurisdiction over Defendant Urban Trend comports with federal due process protections. *Id.* at 714-15.

Under the Due Process Clause, before an out-of-state defendant may be required to defend a case in the forum state, it must have "minimum contacts" with the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.,* 326 U.S. at 316 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This "purposeful availment" standard ensures that a nonresident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff. *Burger King v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

---

[9] As noted above, the fiduciary shield doctrine appears to be the sole exception.

There are two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 (1984); see also *Hyatt Int'l*, 302 F.3d at 713. General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 416; *Hyatt Int'l*, 302 F.3d at 713. If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt Int'l*, 302 F.3d at 713. On the other hand, specific jurisdiction is more limited and exists for controversies that "arise out of" or "relate to" a defendant's forum contacts. *Id.* Plaintiff has not argued that the Court has general jurisdiction over Defendant, and therefore the Court moves directly to the specific jurisdiction inquiry.

A court may assert specific jurisdiction over a foreign defendant when the minimum contacts standard is met and the plaintiff's cause of action arises out of or relates to the defendant's contacts with the forum state. See *e.g., Helicopteros Nacionales de Colombia S.A.,* 466 U.S. at 414. The defendant's contacts with the forum state must be of a nature and quality such that the defendant has fair warning that it could be required to defend a suit there. *Burger King Corp.,* 471 U.S. 462. This ensures that jurisdiction over a defendant is "not based on fortuitous contacts, but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue" and that "the defendant retains sufficient, albeit minimal, ability to structure its activities so that it can reasonably anticipate the jurisdictions in which it will be required to answer for its conduct." *Purdue Research Found.,* 338 F.3d at 780. "Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Id.* Finally, even if the defendant has minimum

contacts with Illinois, requiring the defendant to appear in Illinois must comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

According to CSB's amended complaint, the only contacts that Urban Trend had with Illinois related to its website and its attendance at a trade show in Chicago. In fact, the Court's "contacts" analysis can be limited even further because Plaintiff has abandoned its argument that any contacts through Urban Trend's website can give rise to specific personal jurisdiction under the sliding scale approach set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123-1124 (W.D. Pa. 1997); see also *Berthold Types Ltd. v. European Mikrograf Corp.*, 102 F. Supp. 2d 928 (N.D. Ill. 2000).[10] Thus, the trade show visit is the only pertinent "contact" for purposes of the specific jurisdiction inquiry.

The essence of Plaintiff's argument is that by purposefully travelling to Illinois to garner business and sales for the allegedly infringing product, Urban Trend was "transacting business" under the Illinois long-arm statute (735 ILCS 5/2-209(a)(1)) or, in the alternative, that Urban Trend's actions satisfied the minimum contacts test such that it could not be surprised to be haled into court in this district. Defendants counter that mere presence at an *international* trade show not directed at residents of the forum, and in which there were no alleged sales to Illinois residents, is insufficient to find the requisite "causal nexus" between the litigation and the forum. Plaintiff disputes that completed sales in Illinois are required.

On the question of "purposeful availment," Urban Trend's attendance at the trade show presents a close question. On one hand, Urban Trend made the choice to come to Chicago to market the Throwzini. By displaying a product that they had been warned not to sell, Urban Trend reasonably could have anticipated being haled into court in Illinois if they infringed

---

[10] The complaint stated that Defendants own and operate a website accessible in the district and that they offered the Throwzini for sale through the website. Defendants' argued in their initial brief that their website did not target Illinois residents and Plaintiff concedes that point by not responding.

Plaintiff's rights while present.  On the other hand, if Urban Trend did not sell the product while at the show, it may have firmly believed that it was not amenable to suit in this district because no rights were infringed in this district and CSB was both incorporated and had its principal place of business in New York.

It was fortuitous that Chicago was the chosen location for the trade show.  In that regard, CSB makes no allegation that Urban Trend specifically targeted Illinois residents at the trade show.  And the international nature of the trade show can be analogized to national advertising campaigns, which many courts have determined not to be directed at a specific forum.  See, *e.g.*, *Hot Wax, Inc v. Stone Soap, Co. Inc.*, 1999 WL 183776 (N.D. Ill. Mar. 25, 1999) ("Without evidence that defendant uses the national advertising to encourage contacts in Illinois or specifically target Illinois residents, the court will not subject that defendant to personal jurisdiction"); *Transcraft Corp. v. Doonan Trailer Corp.*, 1997 WL 733905, *9 (N.D. Ill. Nov. 17, 1997) ("As a general rule, national advertisements * * * are insufficient to subject a defendant to jurisdiction in Illinois").  As in *Hot Wax*, CSB has failed to allege any facts suggesting that Urban Trend specifically targeted Illinois residents at the trade show.

A closely related issue is whether the lawsuit even arose from or relates to Urban Trend's trade show visit – a necessity for the contacts Plaintiff seeks to use as a basis for specific jurisdiction.  See *RAR*, 107 F.3d 1277.  In trademark infringement cases where personal jurisdiction has been challenged, the courts of this district repeatedly have found that the claim "arose" in-state if the plaintiff was injured there.  See *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824 (N.D. Ill. 2000); *Indianapolis Colts v. Metro. Baltimore Football Club, Ltd. P'ship*, 34 F.3d 410, 411 (7th Cir. 1994).   However, there appears to be a dispute as to the exact location of a plaintiff's injury in these situations – the place of the infringing sales or

the location of plaintiff's business. Some courts state that "intellectual property infringement takes place in the state of the infringing sales, rather than the state of the trademark owner's domicile for purposes of tort provisions of the Illinois long-arm statute." *Berthold Types Ltd.,* 102 F. Supp. 2d at 932; *see also Lifeway Foods, Inc. v. Fresh Made, Inc.*, 940 F. Supp. 1316, 1319-1320 (N.D. Ill. 1996); *Amba Mktg. Sys., Inc. v. Jobar Int'l Inc.*, 551 F.2d 784, 787-788 (9th Cir. 1977). Others maintain that "[i]n intellectual property law cases, like those brought under the Lanham Act, a corporation's location of injury, is its place of business." *Hot Wax, Inc. v. Stone Soap, Co. Inc.*, 1999 WL 183776, *5 (N.D. Ill. Mar. 25, 1999) (citing *Transcraft Corp. v. Doonan Trailer Corp.*, 1997 WL 733905 (N.D. Ill. 1997)). The Court need not choose which line of cases to follow, because CSB cannot claim injury in Illinois on the state of the current record. Simply put, there were no alleged sales in Illinois or to Illinois residents,[11] and CSB is incorporated and has a principal place of business in New York.

CSB nonetheless argues, relying on a single unpublished decision, that *attempting* to sell an infringing product at a trade show in Illinois constitutes the "transaction of business" under the Illinois long-arm statute. See *Westnofa USA Inc. v. British Design (U.S.A.) Corp.*, 222 U.S.P.Q. 136, 1983 WL 410, at *2-3 (N.D. Ill. Nov. 8, 1983). The defendant in that case participated in a trade show in Illinois where it "solicited business." *Id.* at *1-3. The court held that "when a party solicits sales in Illinois, the solicitation can confer personal jurisdiction under the transaction of business clause." *Id.* at *2 (citing *Morton v. Envtl. Land Sys.*, 55 Ill. App. 3d 369, 372 (1st Dist. 1977)). *Westnofa*'s reliance on *Morton* for that proposition is not persuasive. It was clear in *Morton* that the cause of action arose from the solicitation. The defendants in *Morton* directed their solicitation at Illinois residents (a factor also lacking in the present case),

---

[11] The Schmeizer Declaration states that Urban Trend was attempting to sell the Throwzini or at least create awareness of the product, but does not attest to any actual sales, nor is there anything else in the record of any such sales.

which eventually led to a contract. Moreover, *Westnofa* appears to be an anomaly in that it is the only case brought to the attention of the Court in which jurisdiction was found on the basis of the mere generic solicitation of sales at a trade show. *Westnofa* fails to explain why display and solicitation, without sales, at a trade show provides a sufficient basis for concluding that a cause of action "arises from" that kind of contact.

To counter *Westnofa*, Urban Trend cites a litany of cases that stand for the proposition that attendance at a trade show is insufficient to support specific jurisdiction. In several of the cases, the cause of action did not arise out of attendance at the trade show. Instead, the plaintiff sought to use the defendant's attendance at the trade show simply as a "contact" for a general jurisdiction argument. See, *e.g.*, *Cook Assocs., Inc. v. Lexington United Corp.*, 87 Ill.2d 190 (1981); *Acrison, Inc. v. Control and Metering Ltd.*, 730 F. Supp. 1445 (N.D. Ill. 1990) (noting that even if the visits could be considered "doing-business," the cause of action did not arise from the trade show visit and therefore there was no specific jurisdiction).

In one fairly recent case, *Black & Decker, Inc. v. Shanghai Xing Te Hao Indus. Co.*, 2003 WL 21383325 (N.D. Ill. June 12, 2003), the defendant, a Chinese corporation, allegedly was selling products that infringed plaintiff's patent. The plaintiff alleged that the defendant visited Chicago for an international trade show in which it displayed the product along with other products, but the offending product never was included as part of any demonstration. *Id*. at *2. The court refused to exercise specific jurisdiction in those circumstances.[12]

Although not cited by either party, the Seventh Circuit has addressed this issue. In *Scovil Mfg. Co. v. Dateline Elec. Co.*, 461 F.2d 897, 900 (7th Cir. 1972), two out of state parties met at a trade show in Illinois and formed a contract that later became the subject of a dispute. The

---

[12] It is important to note that the court was applying federal circuit law, *id*. at 1 n.1., and it is unclear whether Black & Decker is an Illinois corporation.

court stated a "defendant who sends an agent into Illinois to solicit or negotiate a contract is transacting business within the statutory definition" and thus is subject to personal jurisdiction. *Scovil*, 461 F.2d at 900. However, the *Black & Decker* court found *Scovil* distinguishable in view of the quantity and quality of contacts with Illinois – in *Scovil*, seven trips to Illinois for negotiations and post-contract discussions – and in view of the fact that the contract at issue in *Scovil* was breached in Illinois. 2003 WL 21383325, at *3. By contrast, in *Black & Decker* there was no evidence of "any sales, uses, or offers to sell the accused product in Illinois." *Id*.

*Berthold Types*, 102 F. Supp. 2d 928, also contains a fact pattern the closely parallels the facts before this Court. In that case, the defendants' alleged contacts with Illinois included a website and a trip to a trade show in Chicago. Although it is unclear whether defendants displayed the infringing product at the trade show, the court stated that "plaintiff does not allege that defendants sold any infringing products in Chicago, or that the contacts otherwise caused the harm complained of." *Id*. at 934. But perhaps the most instructive case – and the one that best reconciles *Scovil* and *Morton* with the cases cited by Defendants – is *Fluid Mgmt. Ltd. P'Ship v. H.E.R.O. Indus., Ltd.*, 1997 WL 112839 (N.D. Ill. Mar. 11, 1997). In that case, the defendants attended a trade show where they displayed and demonstrated the offending product and left their business cards with two Illinois attendees. *Id*. at *2. Defendants then followed up with letters to those Illinois businesses. *Id*. Defendants argued the court lacked jurisdiction because the trade show was the only pertinent contact and they made no sales and took no orders for sales. The court held that "the mere demonstration or display of an accused product, even in an obviously commercial atmosphere, does not constitute an infringing use [under the patent statute]." *Id*. at *4. The court required " 'sales oriented' activity which results in, or at least substantially advances, *an actual sale of the accused device*." *Id*. The court did not believe

defendants' actions met that standard. The court also found the trade show actions insufficient to meet due process standards. *Id*. at \*6 ("they did not make any sales (direct or indirect), or take any orders for sales, for any of their products at the trade show, nor have they sold any of the infringing devices in Illinois \* \* \*. Considering the nature and quality of these acts, this Court does not find that [defendant] purposefully availed themselves of the privileges of conducting business within Illinois such that they should have reasonably anticipated that they might be haled into court in Illinois").

Notwithstanding the fact that CSB need only make out a *prima facie* case of personal jurisdiction, the Court concludes that, under the weight of authority, Plaintiff's allegations are insufficient to show that Urban Trend "purposefully availed [itself] of the privileges of conducting business within Illinois such that they should have reasonably anticipated that they might be haled into court in Illinois." *Fluid Mgmt.*, 1997 WL 112839, at \*3. At most, CSB has established in its declaration that Urban Trend was "actively engaging in selling the Throwzini" at the trade show. But there are no allegations that the trade show was directed specifically at Illinois residents, nor are there allegations that any sales to Illinois residents were made, either during or as a result of the trade show. In these circumstances, mere presence in the forum is insufficient to confer personal jurisdiction. In most of the trade show cases cited above, if there were no sales, then the plaintiff at least was located in the forum and the defendant's actions targeted the plaintiff in that forum. Neither of those circumstances is present here on the record before the court, and the mere fortuity of an international trade show in this district in which no sales were made is not enough to satisfy due process. For all of these reasons, this Court lacks personal jurisdiction over Urban Trend, and Defendants motion to dismiss Urban Trend therefore is granted.

**III.    Kushner's Motion to Dismiss for Failure to State a Claim**

   **A.    Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit.  See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true.  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic*, 127 S.Ct. at 1965, 1973 n.14).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic*, 127 S.Ct. at 1969.  The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom.  See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

   **B.    Discussion**

Kushner argues that CSB's first amended complaint is devoid of any factual allegations supporting individual liability against him and therefore must be dismissed.    While acknowledging that corporate officers can be liable for infringement for acts of the corporation,

Kushner argues that the complaint does not meet the "special showing" mandated by the Seventh

Circuit in the seminal case of *Dangler v. Imperial Mach. Co.*, 11 F.2d 945 (7th Cir. 1926):[13]

> [I]n the absence of some special showing, the managing officers of a corporation
> are not liable for the infringements of such corporation, though committed under
> their general direction. [ ]  It is when the officer acts willfully and knowingly –
> that is, when he personally participates in the manufacture or sale of the infringing
> article (acts other than as an officer), or when he uses the corporation as an
> instrument to carry out his own willful and deliberate infringements, or when he
> knowingly uses an irresponsible corporation with the purpose of avoiding
> personal liability – that officers are held jointly with the company."

*Id.* at 947.

Plaintiff initially argues that *Dangler* cannot be employed to determine pleading

requirements because it was decided: (i) after a trial on the merits; and (ii) prior to the

introduction of the Federal Rules of Civil Procedure.  See *Do It Best Corp. v. Passport Software,

Inc.*, 2004 WL 1660814 (N.D. Ill. July 23, 2004).  It might be argued that requiring a special

showing at the pleading stage places infringement claims against corporate officers within the

category of actions that are subject to the heightened requirements enumerated in Fed. R. Civ. P.

9(b).[14]  Despite that concern, the Seventh Circuit has cited *Dangler* with approval since the

Federal Rules of Civil Procedure were enacted. See, *e.g.*, *Panther Pumps & Equip. Co., Inc. v.

Hydrocraft, Inc.*, 468 F.2d 225 (7th Cir. 1972).  In addition, numerous courts from this district

---

[13] Although *Dangler* arose in the patent infringement context, it since has been applied in trademark
infringement cases.  See *Peaceable Planet, Inc. v. Ty, Inc.*, 185 F. Supp. 2d 893, 896 (N.D. Ill. 2002)
(collecting patent and trademark cases).

[14] "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.  Rule
9(b), for example, provides for greater particularity in all averments of fraud or mistake.  This Court,
however, has declined to extend such exceptions to other contexts." *Swierkiewicz v. Sorema N.A.*, 534
U.S. 506 (2002).  "[T]he Federal Rules do address in Rule 9(b) the question of the need for greater
particularity in pleading certain actions, but do not include among the enumerated actions any reference to
complaints alleging municipal liability under § 1983. *Expressio unius est exclusio alterius*." *Leatherman
v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993).  Although
unfair competition claims are not one of the enumerated 9(b) actions, the Lanham Act protects against
fraud which is one of the enumerated 9(b) actions.  See *Packman v. Chicago Tribune Co.*, 267 F.3d 628,
638 (7th Cir. 2001); see also *Zangerle & Peterson Co. v. Venice Furniture Novelty Mfg. Co.*, 133 F.2d
266, 269 (7th Cir. 1943) ("The essence of unfair competition is fraud").

have relied on *Dangler*, concluding that "[d]espite its vintage, *Dangler* remains the law of this circuit." See, *e.g.*, *Syscon, Inc. v. Vehicle Valuation Servs., Inc.*, 274 F. Supp. 2d 975 (N.D. Ill. 2003). Consistent with the weight of authority, the Court will apply the "special showing" requirement from *Dangler* here at the motion to dismiss stage.

Although CSB initially resists the special showing requirement, ultimately it appears to argue in the alternative that the complaint nonetheless satisfies that standard. In fact, most of the cases on which CSB relies cite *Dangler* and apply its test. The "special showing" can be made in three possible ways with respect to corporate officers: (i) personal participatation in the manufacture or sale of the infringing article; (ii) use of the corporation as an instrument to carry out the officer's own willful and deliberate infringements; or (iii) knowing use of an irresponsible corporation with the purpose of avoiding personal liability. Only the first avenue appears viable in this case. The question thus simplifies to whether Plaintiff has sufficiently alleged that Kushner personally participated in the manufacture or sale of the Throwzini.

Kushner's motion enumerates the allegations made against him individually. They include that Kushner: (i) was the individual at Urban Trend with the responsibility for selecting the products that Urban Trend manufactures and/or markets; (ii) stood to benefit personally from the decisions to manufacture and/or market any particular product including the Throwzini; (iii) made the decision to go forward with the manufacture and/or marketing of the Throwzini; (iv) personally selected the configuration of the Throwzini and deliberately sought to trade on the goodwill established by CSB in the EX/VOODOO knife holder; (v) personally directed others at Urban Trend to manufacture the Throwzini and to market the Throwzini; and (vi) was personally present in this district to offer the Throwzini for sale. Viewing these allegations in light of

*Dangler* and its progeny, the Court finds that Plaintiff's complaint sufficiently alleges that Kushner personally participated in the manufacture or sale of the Throwzini.

The cases on which Kushner relies are distinguishable. In each case, the plaintiffs' claims either rested on vague allegations or conclusory assertions or relied solely on the fact that the defendants were corporate officers. *The Drink Group, Inc. v. Gulfstream Commc'ns, Inc.*, 7 F. Supp. 2d 1009 (N.D. Ill. 1998) illustrates both deficiencies in Kushner's argument. In that case, the plaintiff's complaint tried to hold the executive vice presidents of the defendant magazine liable for copyright infringement on the grounds that they were "a principal of and driving force behind" the allegedly infringing magazine. *Id.* at 1009. The court noted that the mere fact that the individual defendants incorporated the magazine was insufficient and that the "principal" and "driving force" allegations were "conclusory statements" which, "standing alone, run afoul of Plaintiff's obligation to adumbrate a claim with some supporting facts." *Id.* at 1011 (citation omitted).

The allegations in *Dev Indus., Inc. v. Rockwell Graphic Sys., Inc.*, 1992 WL 100908 (N.D. Ill. May 4, 1992), similarly included statements that the individual defendants were "engaged in a complex and integrated scheme," were "the moving, conscious, and dominant force behind Rockwell's offending conduct," and knew about and/or encouraged the allegedly offending conduct. *Id.* at *3. In dismissing the individual defendants, the court stated that personal liability cannot be imposed upon an individual *merely* because that person is an officer of the defendant corporation, yet that is precisely what the plaintiff was attempting to do. *Id.* The court further stated that the verbiage was "insufficiently indefinite" and "no substitute" for the identification of specific activity. *Id.* The court properly summarized plaintiff's allegations

as a "conclusion one might reach after being apprised of the conduct in which an individual has engaged." *Id.*[15]

Kushner also cites *Cinema Concepts Theatre Serv. Co. v. Filmack Studios*, 1989 WL 55092 (N.D. Ill. May 17, 1989),[16] in which the court granted the individual defendants' motion to dismiss because the complaint contained no "factual allegations to establish that either individual knowingly participated in the alleged infringement." *Id.* at *2. The Court faulted the plaintiff's for not alleging that the individual defendants "supervised or influenced the infringing activity" or derived financial benefit from it. *Id.* Finally, Kushner's reliance on *FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, 2007 WL 4335264 (N.D. Ill. Dec. 5, 2007) is misplaced. The court granted the individual defendant's motion to dismiss because the allegations that the defendants engaged in unauthorized infringement as "agents servants and employees" of the corporate defendant pertained solely to their acts as corporate officers. *Id.* at *4. That conclusory statement seemingly was the only allegation against the individual defendants.

Although not detailed, CSB's first amended complaint suffers from none of the deficiencies identified above. It contains more than the vague language and conclusory statements and does not rest solely on the fact that Kushner was a corporate officer. Instead it alleges that he was personally involved in choosing to sell and in fact personally marketed the Throwzini. Finally, and unlike the complaint in *Cinema Concepts*, CSB's complaint does allege that Kushner supervised and influenced the infringing activity.[17]

---

[15] Notably, the court did not cite to *Dangler* or require a "special showing." In fact, the court stated that "[w]hile federal rules do not require more than notice pleading, Dev's complaint has failed to meet even that minimal threshold." *Dev Indus., Inc.*, 1992 WL 100908, at *4.

[16] *Dangler* was not cited in *Cinema Concepts*.

[17] He "personally directed others at Urban Trend to manufacture the Throwzini and to market the Throwzini."

In the more factually analogous cases from this district, courts have denied motions to dismiss similar claims. *Syscon, Inc.*, 274 F. Supp. 2d 975 (N.D. Ill. 2003), is representative of such cases. In suing the corporate officer individually, the plaintiff alleged that the officer (i) personally authorized the infringement, (ii) personally directed and authorized the unlawful conduct, (iii) personally profited from the infringement, and (iv) offered for sale the copyrighted product. *Id.* at 976-77. The court distinguished those allegations from the facts in *Drink Group* and found the allegations sufficient to reveal personal participation and direction. *Id.* at 977. CSB has made nearly identical allegations against Kushner.

The *Syscon* court found the allegations before it similar in scope to those in another case cited by CSB, *Peaceable Planet, Inc.*, 185 F. Supp. 2d 893 (N.D. Ill. 2002). In *Peaceable Planet*, the plaintiff alleged that the officer (i) was the founder, president, CEO and sole shareholder of the corporation, (ii) was responsible for overseeing the development, marketing and sales of the allegedly infringing product, (iii) personally participated in the design and naming of the product, (iv) directed and approved the final design, (v) approved and authorized the corporation's actions, and (vi) personally promoted, offered for sale and sold the product. *Id.* at 896-97. Again, those allegations track closely the allegations in CSB's complaint. Without question the allegations against the officer in *Peaceable Planet* were more extensive than the allegations set forth in CSB's complaint and in fact were sufficient to satisfy all of the methods of making the "special showing" under *Dangler*. However, a complaint need only satisfy one of those methods to survive a motion to dismiss.

There are other cases from this district in which courts have denied motions to dismiss where the allegations were similar to and often less specific than those contained in CSB's complaint. See *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 2003 WL 21475905 (N.D.

Ill. June 20, 2003) (allegations included that the individual was the co-founder and president and may be doing business with respect to the infringing product, was personally importing, manufacturing and offering the product for sale, and personally appeared on television to promote the product); *Kohler Co. v. Kohler Int'l, Ltd.*, 196 F.Supp.2d 690 (N.D. Ill. 2002) (allegations that defendants "own, direct, control, authorize, and operate" the firm and that "the adoption and use of [plaintiff's] marks by defendants was willful, wanton, malicious, and fraudulent" and the defendants conspired to violate the rights of the plaintiff).

Kushner contends that even if CSB has alleged that he participated in the infringement, Plaintiff failed to allege the actions were taken outside his role as an officer. At this stage, based on CSB's allegations, this Court cannot agree. Kushner appears to interpret *Dangler* to mean that even if an officer personally participates in the manufacture or infringement, such acts cannot lead to liability unless they fall outside of the officer's job description. Under that reasoning, an officer could remove himself from potential liability by defining his or her duties at a higher level of generality. That cannot be the correct interpretation. In fact, the courts appear to have viewed the "acts of an officer" as those that are removed from any involvement in day-to-day activities. See *Powder Power Tool Corp. v. Powder Actuated Tool Co.*, 230 F.2d 409 (7th Cir. 1956) (individual defendant was president of the company but merely provided capital for its formation and otherwise acted in an advisory role. He "did nothing beyond the scope of his duties as president of the defendant company.").

Many corporate officers have no direct role in the manufacture or sale of the products sold by their companies. In fact, that is almost always true of larger corporations. But it is not the case with many smaller, start-up firms including – on the allegations here – Urban Trend. When Courts have denied officers' motions to dismiss, the allegations have included more

active, hands-on roles. See, *e.g.*, *Nordstrom Consulting, Inc v. M & S Techs., Inc.*, 2006 WL 2931677 (N.D. Ill. Oct. 12, 2006) (individual defendant was president but also allegedly took active role in infringing activities); *Syscon, Inc.*, 274 F. Supp. 2d 975 (president allegedly personally authorized and contributed to the infringing activity and the promotion of the product); *For Your Ease Only, Inc.*, 2003 WL 21475905 (president allegedly "personally imported, manufactured, and offered the allegedly infringing product for sale" as well as personally appearing on television to promote the product.); *Do It Best Corp.*, 2004 WL 1660814 (corporate counsel allegedly knew about, directed and participated in acts that furthered infringement sufficient); *Peaceable Planet, Inc*, 185 F. Supp. 2d 893 (president allegedly authorized and approved the infringing design in addition to promoting and offering for sale sufficient to remove actions from those of officer).

Here, too, Kushner is alleged to have had personal involvement in the manufacture or sale of the infringing product, and thus was not simply acting as an officer of his company. Contrary to Kushner's argument, none of the pertinent cases requires "extraordinary participation by the individual corporate officer outside the scope of his employment." Rather, under *Dangler* and more recent cases in this district and circuit, allegations of personal participation in the manufacture or sale of a company's product are adequate at this stage of the case. CSB sufficiently makes such allegations pertaining to Kushner's role in the manufacture and sale of the Throwzini.[18]

---

[18] In regard to Defendants' argument that CSB failed to allege that Kushner acted "willfully and knowingly", the Court does not observe such a separate requirement. It is true that *Dangler* required the officer to act "willfully and knowingly". However, in defining that term, the Court then enumerated how that standard could be satisfied. The possibilities included personal participation in the manufacture or sale of the infringing article. If the plaintiff alleges personal participation, he has alleged "willful and knowing."

**III.	Conclusion**

For the reasons stated above, the Court grants the motion to dismiss [30] for lack of personal jurisdiction as to Defendant Urban Trend, denies the motion to dismiss [30] for lack of personal jurisdiction as to Defendant Kushner and denies Defendant Kushner's motion to dismiss [27] for failure to state a claim.


Dated:  January 7, 2009

_____
Robert M. Dow, Jr.
United States District Judge